

KELLEY DRYE & WARREN LLP
  Michael J. O'Connor (State Bar No. 090017)
  David E. Fink (State Bar No. 169212)
10100 Santa Monica Boulevard, Twenty-Third Floor
Los Angeles, California 90067-4008
Telephone:  (310) 712-6172
Facsimile:  (202) 342-8451
moconnor@kelleydrye.com
dfink@kelleydrye.com

```
┌─────────────────────────────────┐
│            FILED                │
│  CLERK, U.S. DISTRICT COURT     │
│                                 │
│       SEP 2 5 2013              │
│                                 │
│  CENTRAL DISTRICT OF CALIFORNIA │
│  BY                    DEPUTY   │
└─────────────────────────────────┘
```

KELLEY DRYE & WARREN LLP
  Laurence J. Lasoff (*Pro Hac Vice Application Forthcoming*)
  Ira T. Kasdan (*Pro Hac Vice Application Forthcoming*)
  Joseph D. Wilson (*Pro Hac Vice Application Forthcoming*)
Washington Harbour, Suite 400
3050 K Street, N.W.
Washington, DC  20007
Telephone:  (202) 342-8400
Facsimile:  (202) 342-8451
jwilson@kelleydrye.com
llasoff@kelleydrye.com
ikasdan@kelleydrye.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

MAYFAIR HOUSE INC., a California Corporation

                    Plaintiff,

        v.

THE CITY OF WEST HOLLYWOOD, CALIFORNIA

                    Defendant.

Case **CV13-07112** GHK CRZ

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF BASED ON:**

**1.  VIOLATION OF CAL. CONST., ART. IV, § 20;**

**2. PREEMPTION BY STATE LAW;**

**3. VIOLATION OF THE DUE PROCESS CLAUSE IN CAL. CONST., ART. I, § 7;**

**4.  VIOLATION OF THE DUE PROCESS CLAUSE OF THE U.S. CONST., AMEND. XIV; AND,**

**5.  VIOLATION OF 42 U.S.C. § 1983**

LA01\FinkD\505246.4

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

1    Plaintiff Mayfair House Inc. ("Mayfair"), by and through their attorneys,

2    Kelley Drye & Warren LLP, alleges as follows:

3                    **NATURE OF THE CASE**

4        1.     This action by Plaintiff Mayfair challenges the legality of Ordinance

5    No. 11-877 ("the Ordinance") of the City of West Hollywood, California ("West

6    Hollywood" or the "City"), under both the State of California and The United States

7    Constitutions.

8        2.     On November 21, 2011, West Hollywood's City Council adopted the

9    Ordinance.  Subject to certain exemptions, the Ordinance makes "it unlawful for

10    anyone to sell, import, export, trade or distribute" any new clothing product made

11    wholly or partly of animal fur by any means anywhere in the City on or after

12    September 21, 2013.  Violators of the Ordinance are subject both to administrative

13    penalties and fees, and misdemeanor criminal sanctions of fines, jail time, or both.

14        3.     The City has touted the Ordinance as "one of the first of its kind in the

15    United States."  Upon information and belief, the Ordinance is, in fact, the first and,

16    to date, the only regulation by a city or county in the country that bans the sale of fur

17    clothing products.

18        4.     Most animals used to provide fur for clothing products *e.g.*, the fox,

19    mink, beaver, and coyote, are recognized, at least under California law, as being

20    wild animals, regardless of whether they come directly from the wild and are taken

21    by hunting or trapping or are born and raised on farms for their fur.  Because the

22    Ordinance seeks to protect animals that are used to provide fur, most of which are

23    wild animals, by restricting the market for clothing products made of the fur of such

24    animals, the Ordinance, therefore, is fundamentally a wildlife regulation.

25        5.     The Ordinance is unlawful and void under the California Constitution

26    because it constitutes an *ultra vires* act of the City.  California's Constitution vests

27    the state legislature with the *exclusive* authority to enact legislation relating to the

28    protection of wildlife, and that authority includes the power to pass laws regulating

1  the market for products of wildlife.  Thus, the City had no authority under the

2  California Constitution to enact the Ordinance.

3      6.      Even if the state legislature does not have the exclusive authority under

4  the California Constitution to enact legislation relating to wildlife, the Ordinance is

5  still unlawful and void under the California Constitution because it conflicts with,

6  and thus is preempted by, state law.  The Ordinance contradicts various California

7  statutes permitting the trade in products made of the fur of certain animals.  The

8  Ordinance also conflicts with state law in that it duplicates still other state statutes

9  that prohibit the trade in products made of the fur of only certain but not other

10 animals, unlike the Ordinance which is more sweeping in its ban.  The State of

11 California has also preempted the Ordinance by "occupying the field" in which the

12 Ordinance attempts to regulate:  the state legislature has enacted various laws and

13 regulations that, *inter alia*, protect fur bearing animals; provide for their humane

14 treatment; and regulate the trade in animal furs.

15     7.      If that were not enough, the Ordinance also runs afoul of the Due

16 Process Clause of the Fourteenth Amendment to the United States Constitution, as

17 well as the Due Process Clause of the California Constitution, because, among other

18 things, various aspects of the Ordinance, such as its definition of "fur" and "fur

19 product," make its prohibitions vague.

20     8.      Mayfair prays for a judgment that:  (a) declares, pursuant to 28 U.S.C.

21 § 2201, that the Ordinance is unlawful and void under the both the State of

22 California and United States Constitutions; (b) permanently enjoins the City from

23 enforcing and threatening to enforce the Ordinance; (c) declares, pursuant to 42

24 U.S.C. §§ 1983 and 2201, that the City has deprived Mayfair of its right secured by

25 Due Process Clause of the Fourteenth Amendment by enacting and/or threatening to

26 enforce the Ordinance; and (d) awards attorney's fees and costs, pursuant to 42

27 U.S.C. § 1988.

28 / / /

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

1

**THE PARTIES**

2    9.    Plaintiff Mayfair House Inc. ("Mayfair") is a corporation organized

3    under the laws of the State of California with a principal place of business at 8844

4    Beverly Boulevard, West Hollywood, California 90048.  At all times since on or

5    about May 2007, Mayfair has owned and operated a retail store at the

6    aforementioned address.  At that store, Mayfair has sold at retail, and intends to

7    continue to sell at retail, new clothing products made wholly or partly of fur.

8    10.    Defendant, the City of West Hollywood, California is a general law city

9    under California law that is located within Los Angeles County, California.  The

10   City covers approximately 1.9 square miles – virtually all of it urban – in Los

11   Angeles County.  The population of the City was 34,399 according to the 2010 U.S.

12   Census.

13

**JURISDICTION AND VENUE**

14   11.    The Court has subject matter jurisdiction over this case pursuant to 28

15   U.S.C. §§ 1331, 1343(a)(3), 1367(a), and 2201.  The Court can assert personal

16   jurisdiction over Defendant because it is located in this judicial District. Venue is

17   proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant

18   resides in this District and a substantial part of the relevant events underlying this

19   action occurred in this District.

20

**GENERAL ALLEGATIONS**

21   I.    **FURS AND FUR CLOTHING**

22   **IN GENERAL AND IN WEST HOLLYWOOD**

23   12.    With the exception of fur made from artificial fibers, fur that is used to

24   make clothing most often comes from animals, specifically various species of

25   mammals, that are taken from the wild by hunting or trapping or that are raised on

26   farms.

27   13.    There are hunters and trappers who take animals from the wild in

28   California so their furs can ultimately be used for commercial purposes.  Likewise,

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

1   there are fur farms in California that raise animals so their fur can be used

2   commercially.

3       14.   West Hollywood consists of only approximately 1.9 square miles,

4   virtually all of which is urban in nature.  Upon information and belief, there is no

5   known habitat in West Hollywood today that would sustain, in the wild, animals that

6   are commonly used to provide fur for clothing; there is no hunting or trapping of

7   animals that are commonly used to provide fur for clothing that occurs in West

8   Hollywood; and there are no farms in West Hollywood on which animals are raised

9   for their fur.

10  **II.   THE ORDINANCE**

11      **A.   The Genesis Of The Ordinance**

12      15.   The idea for an ordinance in the City banning the sale of fur clothing

13  began as a campaign promise by then–City Council candidate John D'Amico no

14  later than, upon information and belief, January 2011.  Animal rights advocates

15  campaigned vigorously for Mr. D'Amico, and he was elected, and still is, a

16  councilman in the City.  Upon his election, the fur ban became one of his priorities,

17  and he has been its chief architect.

18      16.   In speaking in the City Council hearing at which the Ordinance was

19  adopted, Councilman D'Amico highlighted, while discussing the Ordinance, the

20  ability of the laws that the City passes to have profound impacts on other

21  communities.  Similarly, Councilman D'Amico, in speaking about the Ordinance,

22  has said that, "[i]t is not about what to wear, it's not about shame, and it's not about

23  name-calling" but that "[i]t's about how we live now . . . and our impact on the

24  world."

25      17.   Upon information and belief, prior to the adoption of the Ordinance in

26  November 2011, neither the City nor the City Council had completed a study

27  regarding the economic impact that the Ordinance would have.

28  / / /

B.  **The Provisions Of The Ordinance**

18.    The Ordinance, which is codified at Sections 9.051.010 and .020 of the City's Municipal Code, makes it unlawful "to sell, import, export, trade, or distribute any fur product by any means anywhere within [the City] on or after September 21, 2013."  West Hollywood Municipal Code § 9.51.020(b).  A copy of the Ordinance, as codified, is attached hereto as Exhibit 1 and incorporated herein by reference.

19.    The Ordinance defines a "fur product" as "any article of wearing apparel made in whole or in part of fur; excluding dog or cat fur product to which Section 308 of the Tariff Act of 1930 applies."  *Id.*, § 9.51.020(a)(2).

20.    "Fur," in turn, is defined as "any animal skin or part thereof with hair, fleece, or fur fibers attached thereto, either in its raw or processed state, but shall not include such skins as are to be converted into leather or which in processing shall have the hair, fleece, or fur fiber completely removed."  *Id.*, § 9.51.020(a)(1).

21.    The Ordinance's ban on the sale, import, *etc.* of fur clothing products does not apply to non-profit organizations; pelts or skins preserved through taxidermy or for the purpose of taxidermy; and "[u]sed fur products [sold] by a private party (excluding a retail transaction), nonprofit organization or second-hand store, including a pawn shop."  *Id.*, § 9.51.020(c).

22.    Violators of the Ordinance are subject to an administrative penalty of up to $800.00 plus an administrative fee of $50.00.  If a person has committed three violations of the Ordinance in a twelve month period, each subsequent violation of the Ordinance in that same period constitutes a misdemeanor for which the person can have to pay a fine of up to $1,000.00, be imprisoned in the county jail for up to six months, or both.  *See id.* § 1.08.010(e)-(g).  *See also* Exhibit 2 hereto (July 2, 2013 Letter from City's Code Compliance Mgr. Ltr. to West Hollywood Business Owners), at attachment, p. 2.

///

1  **C.   The Overarching Purpose Of The Ordinance**

2     23.   The City explains the purpose of the Ordinance as follows:

3          The City of West Hollywood believes that

4  eliminating the sale of fur apparel products will promote community awareness of animal welfare and, in turn, will

5  foster a consciousness about the way we live in the world and create a more humane environment in the City. The

6  current state of the sale of fur apparel products in the City of West Hollywood is inconsistent with the City's goal to

7  be a community that cares about animal welfare and the City's reputation as a Cruelty Free Zone for animals.

8  *E.g.*, City of West Hollywood Website, "Fur Ban Information,"

9  http://www.weho.org/index.aspx?page=1267, *last accessed* September 11, 2013;

10  Exhibit 2 hereto (July 2, 2013 Letter from City's Code Compliance Mgr. Ltr. to

11  West Hollywood Business Owners), at attachment, p. 2. *See also* Ordinance (as

12  codified), §§ 9.51.010(k)-(m).

13     24.   As demonstrated by the City's explanatory statement as well as the

14  findings contained in the Ordinance itself, the Ordinance's overarching purpose is to

15  protect animals from being killed for their fur by regulating (*i.e.*, trying to eliminate)

16  the market for new fur clothing products.

17     25.   Notably in this regard, the Ordinance provides that:

18     •  "The City Council finds that animals that are slaughtered for their fur,

19  whether they are raised on a fur farm or trapped in the wild, endure

20  tremendous suffering.  Animals raised on fur farms typically spend

21  their entire lives in cramped and filthy cages.  Fur farmers typically use

22  the cheapest killing methods available, including suffocation,

23  electrocution, gas and poison." And,

24     •  "Considering the wide array of alternatives for fashion and apparel, the

25  City Council finds that the demand for fur products does not justify the

26  unnecessary killing and cruel treatment of animals."

27  Ordinance (as codified), §§ 9.51.010(g) and (j).

28  / / /

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

**D.    The City Has Expressed An Intent To Enforce The Ordinance**

26.    The City has expressed its intent to enforce the Ordinance since its adoption.  For example, the City Attorney in a letter dated April 11, 2013 responded to a question about how the City intends to enforce the Ordinance by stating, in pertinent part, that:

> The City intends to enforce the Ordinance utilizing City resources, including regular inspections by the Code Compliance Division and the L.A. County Sheriff's department.

*See* Ex. 3, at Response to FAQ # 7.

27.    By way of another example, less than 90 days before the Ordinance's effective date, the City's Commercial Code Compliance Manager sent a letter to owners of businesses in West Hollywood dated July 2, 2013, a copy of which is attached hereto as Exhibit 2.   That letter, the subject line of which is "City of West Hollywood Fur Ban," states, *inter alia*, that, "If your business does not sell fur apparel, then please disregard this letter.  However, if your business does sell fur, please cease this activity no later than September 20, 2013."  Ex. 2 at 1.

**C.    THE PLAINTIFF**

28.    At the retail store that Mayfair has owned and operated in West Hollywood since approximately May 2007, Mayfair offers for sale, and has offered for sale, to retail customers high-end clothing products for men, women, and children; wearing apparel accessories; and home furnishings.

29.    At its West Hollywood store, Mayfair has offered for sale and sold to retail customers – and intends to continue to offer for sale and sell – new men's and women's clothing products made wholly or partly of animal fur.  For example, at its West Hollywood store, Mayfair has offered for sale and sold to retail customers – and intends to continue to offer for sale and sell – men's and women's parkas that are trimmed with coyote fur.

30.     At its West Hollywood store, Mayfair has also offered for sale and sold to retail customers – and intends to continue to offer for sale and sell – various new clothing products for men, women, and children that are made wholly or partly of shearling.  These products include earmuffs, gloves, slippers, and boots, many of which are branded under the highly popular UGG© label.  Shearling is sheepskin to which trimmed down fibers of the fleece remain on the skin and the skin of which is converted into leather.

31.     From its West Hollywood store, Mayfair has consummated online retail transactions in which it has sold new fur clothing products made wholly or partly of fur and new clothing products made of shearling and shipped the purchased product to an address outside of West Hollywood as part of the transaction.  Mayfair intends to continue to consummate online retail sales transactions like these in the future.

32.     In light of the City's expressed intent to enforce the Ordinance, Mayfair is at imminent risk of the City enforcing the Ordinance against it, and Mayfair anticipates that the City will, in fact, enforce the Ordinance against it imminently.

## FIRST CLAIM FOR RELIEF

(Declaratory Judgment and Permanent Injunction –

*Ultra vires* Act In Violation of Art. IV, § 20 of the California Constitution)

33.     Mayfair re-alleges and incorporates by reference the allegations contained in all the preceding paragraphs as though set forth fully herein.

34.     Article IV, § 20 of the California Constitution  provides in full that:

(a) The Legislature may provide for division of the State into fish and game districts and may protect fish and game in districts or parts of districts.

(b) There is a Fish and Game Commission of 5 members appointed by the Governor and approved by the Senate, a majority of the membership concurring, for 6-year terms and until  their  successors  are  appointed  and  qualified.

1        Appointment to fill a vacancy is for the unexpired portion

2        of the term. The Legislature may delegate to the

3        commission such powers relating to the protection and

4        propagation of fish and game as the Legislature sees fit. A

5        member of the commission may be removed by concurrent

6        resolution adopted by each house, a majority of the

7        membership concurring.

8   Section 20(a) was first added to the state constitution in 1902 (and at that time was

9   known as § 25 1/2); section 20(b) was first added to the state constitution in 1940;

10   and both provisions have been amended slightly since their initial adoption.

11       35.    The purpose of Article IV, § 20(a) was to remove from local authorities

12   the right to regulate the fish and wildlife of the State of California and to invest such

13   power exclusively in the state legislature. In so doing, the powers of the state

14   legislature to protect the fish and wildlife of the State of California were increased

15   over those previously entrusted to it. In other words, it is most apparent that the

16   purpose of Article IV, § 20(a) was to clothe the state legislature with ample power to

17   adequately protect the fish and wildlife of the State of California. Prior to the

18   addition of what is now Article IV, § 20(a), it was within the competence of the city

19   and county governments in California to regulate the matter of taking and hunting

20   fish and wildlife within their respective territorial jurisdictions.

21       36.    The authority vested by Article IV, § 20(a) in the state legislature

22   remains exclusively vested in it, such that the legislature's unwillingness or failure

23   to adopt legislation regulating fish or wildlife within the State of California does not

24   thereby create a void which gives a local government the authority to enact

25   legislation in that area.

26       37.    Therefore, the City had no power to enact legislation like the

27   Ordinance, the overarching purpose and/or effect of which is to protect wild

28   animals, such as those trapped, hunted, or raised domestically for their fur, by

1   prohibiting the trade in products of such animals in the state (or elsewhere).

2       38.   As a result, the Ordinance is a void, *ultra vires* act by the City under the

3   California Constitution.

4       39.   Accordingly, Mayfair seeks a judgment pursuant to 28 U.S.C. §§ 2201,

5   *et seq.*, that:  declares the Ordinance to be unlawful and void; permanently enjoins

6   the City from enforcing, or threatening to enforce, the Ordinance; and provides

7   Mayfair with such other and further relief as the Court deems to be just and proper.

8   **SECOND CLAIM FOR RELIEF**

9   (Declaratory Judgment and Permanent Injunction –

10   Violation of the California Constitution Due to Preemption By State Law)

11       40.   Mayfair re-alleges and incorporates by reference the allegations

12   contained in all the preceding paragraphs as though set forth fully herein.

13       41.   Even assuming arguendo that the authority to enact legislation like the

14   Ordinance did not rest exclusively in the hands of the California legislature pursuant

15   to Art. IV, § 20(a) of the California Constitution, the Ordinance is nevertheless void

16   under the California Constitution as it is preempted by state law.

17       42.   Article VII, § 11 of the California Constitution provides that "[a]

18   county or city may make and enforce within its limits all local, police, sanitary, and

19   other ordinances and regulations not in conflict with general laws."  A local

20   ordinance conflicts with the general laws, and is thus preempted by state law and

21   void, if the local ordinance either contradicts state law, duplicates state law, or

22   regulates in a field in which the state has occupied.

23       43.   California's state statutes and regulations relating to wildlife are

24   pervasive.  *See generally* Cal. Fish & Game Code, §§ 1-16541; Cal. Code Regs., tit.

25   14, div. 1.

26       44.   Notably, these laws and regulations provide, among other things:

27           (a)   For the humane taking of fur-bearing animals from the wild, *see,*

28       *e.g.*, Cal. Fish & Game Code §§ 3003.1 and 4002-4004;

1          (b)     Regulations on the trade in fur from fur-bearing and nongame

2  mammals, *see, e.g.,* Cal. Fish & Game Code §§ 4005-4009 and 4030-4043;

3          (c)     For the maintenance of animals, including various kinds of

4  mammals, commonly found in the wild in California, *see, e.g., id.,* § 2116.5

5  ("The Legislature finds and declares . . . that some keepers of wild animals

6  lack sufficient knowledge or facilities for the proper care of wild animals . . . .

7  It is the intention of the Legislature that the . . . possession of wild animals

8  shall be regulated to protect the health and welfare of wild animals captured,

9  imported, transported, or possessed, . . . to protect the public health and safety

10  in this state."); Cal. Code Regs., tit. 14, § 671.2 (humane treatment standards);

11  *id.* § 671.3 (minimum facility and caging standards for wild animals housed at

12  permanent facilities); and,

13          (d)     A prohibition on the sale, possession, or propagation of live

14  mammals that are commonly found in the wild in California, for the purpose

15  of killing such mammals for gain, *see id.* § 2124.

16        45.     Furthermore, there are various sections in the California Fish & Game

17  Code which provide that products made of certain animals with fur can be sold. *See*

18  Cal. Fish & Game Code, § 3039(b) ("Products or handicraft items made from

19  furbearing mammals and nongame mammals, their carcass or parts thereof, lawfully

20  taken under the authority of a trapping license, may be purchased or sold at any

21  time."). *See also id.,* § 2082 (permitting the sale of "any part or product of an

22  endangered or threatened species listed under state law if such part or product was in

23  the seller's possession before the species was listed as endangered or threatened on

24  January 1, 1985); *id.* § 4303 (providing in pertinent part that "[t]he skin or hide of

25  any deer lawfully taken may be sold, purchased, tanned, or manufactured into

26  articles for sale"); *id.,* § 4800 (permitting the sale of "any part or product" of a

27  mountain lion that was in the seller's possession prior to June 6, 1990).

28        46.     There are also various statutes in the California Fish & Game Code that

1  make it unlawful to sell "parts or products" of various kinds of animals, many of

2  which have fur. *See* Cal. Fish & Game Code, § 2080 (prohibiting the sale of "any

3  part or product" of an animal listed as endangered or threatened under state law,

4  subject to certain exceptions); *id.* § 4800 (prohibiting the sale of "any part or

5  product" of a mountain lion, subject to certain exceptions).

6       47.    Under California state law and regulations, a person can be assessed a

7  civil penalty for having sold, imported, or exported, in violation of the Fish & Game

8  Code or regulations adopted pursuant to it, a mammal that has been taken or sold in

9  violation of that Code or those regulations. *See, e.g.*, Cal. Fish & Game Code, §

10  2582(a)(3).  Civil penalties are to be imposed for each "item" that is unlawfully

11  sold, *etc*. *See* Cal. Code Regs., tit. 14, § 747(c)(4).  Importantly, "item" is defined

12  as "an animal or its carcass in its entirety, or if the carcass is no longer maintained in

13  its entirety, any part *or product thereof*." *Id.*, § 747(b)(5) (italics added).  In other

14  words, a person can be assessed a civil penalty based on unlawfully selling,

15  importing or exporting a fur product that comes from a mammal that has been

16  unlawfully taken or sold.

17       48.    And, except as expressly provided in the Fish & Game Code, any

18  violation of that code, or of any rule, regulation, or order made or adopted under it,

19  is a misdemeanor, and, unless otherwise provided for, punishable by a fine of up to

20  $1,000, imprisonment in county jail for up to six months, or by both that fine and

21  imprisonment. *See* Cal. Fish & Game Code, §§ 12000(a), 12002(b).  Violations of

22  certain provisions of the Fish & Game Code are punishable by a fine of up to

23  $2,000, imprisonment in county jail for up to a year, or by both that fine and

24  imprisonment. *See id.* § 12000(b)

25       49.    In light of these state laws and regulations, the Ordinance conflicts with

26  the general law of the State of California, and, therefore, it is preempted and void.

27       50.    Accordingly, Mayfair seeks a judgment pursuant to 28 U.S.C. §§ 2201,

28  *et seq.*, that:  declares the Ordinance to be unlawful and void; permanently enjoins

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

1   the City from enforcing, or threatening to enforce, the Ordinance; and provides

2   Mayfair with such other and further relief as the Court deems to be just and proper.

3   **THIRD CLAIM FOR RELIEF**

4   (Declaratory Judgment and Permanent Injunction –

5   Violation of the Due Process Clause in Art. I, § 7 of the California Constitution)

6       51.    Mayfair re-alleges and incorporates by reference the allegations

7   contained in all the preceding paragraphs as though set forth fully herein.

8       52.    The Due Process Clause of the California Constitution provides in

9   pertinent part that "[a] person may not be deprived of life, liberty, or property

10   without due process of law . . . ." *See* CAL. CONST., ART. I, § 7.

11       53.    Under this clause, an ordinance is void for vagueness if, among other

12   things, it fails either of these two tests: (a) it fails to give a person of ordinary

13   intelligence a reasonable opportunity to know what the ordinance prohibits, or (b) it

14   impermissibly delegates basic policy matters to policemen, judges, and juries for

15   resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary

16   and discriminatory application.  The Ordinance cannot pass either test.

17       54.    To begin with, the Ordinance fails the first test because it does not

18   reasonably inform one person whether it prohibits the sale, *etc.* of clothing products

19   made of shearling.    The Ordinance's definition of "fur," in pertinent part, "means

20   any animal skin or part thereof with hair, fleece, or fur fibers attached thereto . . . but

21   shall not include such skins as are to be converted into leather . . . ."  The second

22   clause (the one after the ellipsis) appears to exclude from the definition of "fur"

23   animals skins on which the hair is attached that are converted to leather.  Shearling

24   is sheepskin to which trimmed down fibers of the fleece remain on the skin *and the*

25   *skin of which is converted into leather*, and thus would not seem to come within the

26   Ordinance.  The City Attorney, however, has opined that the Ordinance's definition

27   of "fur" does encompass shearling.  *See* Exhibit 2 attached hereto.

28       55.    Moreover, the Ordinance also fails the first test because it does not

1  reasonably inform a person as to what is meant by the undefined term "wearing

2  apparel" within the Ordinance's definition of "fur product." "Wearing apparel" by

3  its nature is a broad and amorphous term. Highlighting this vagueness is a statement

4  from the City Attorney (see Exhibit 3 hereto) that the term "wearing apparel"

5  encompasses blankets with sleeves, because those are designed to be worn.

6  However, blankets with sleeves, such as the Snuggie,® are commonly advertised to

7  the public as blankets and not as wearing apparel.

8      56.    Finally, the Ordinance fails this first test because it does not reasonably

9  inform a person as to whether its prohibition on selling, exporting, trading, and

10  distributing new fur clothing products by any means anywhere within the City

11  applies to transactions consummated online for a particular item of fur clothing that

12  is shipped a place located outside of the City or in which the online purchaser is

13  located at a place outside of the City.

14      57.    These vague aspects of the Ordinance necessarily leave it to the persons

15  who enforce the Ordinance, and persons who decide whether the Ordinance has

16  been violated (such as jury members) to determine these vagaries of the Ordinance

17  on an *ad hoc* and subjective basis; as a result, the Ordinance fails the second – in

18  addition to the first – test for vagueness.

19      58.    Accordingly, Mayfair seeks a judgment pursuant to 28 U.S.C. §§ 2201,

20  *et seq.*, that: declares the Ordinance to be unlawful and void; permanently enjoins

21  the City from enforcing, or threatening to enforce, the Ordinance; and provides

22  Mayfair with such other and further relief as the Court deems to be just and proper.

## FOURTH CLAIM FOR RELIEF

(Declaratory Judgment and Permanent Injunction –

Violation of the Due Process Clause in Amend. XIV of the U.S. Constitution)

26      59.    Mayfair re-alleges and incorporates by reference the allegations

27  contained in all the preceding paragraphs as though set forth fully herein.

28      60.    The Due Process Clause of the Fourteenth Amendment to the United

1  States Constitution provides that no state or local government shall "deprive any

2  person of life, liberty, or property, without due process of law[.]" *See* U.S. CONST.,

3  14TH AMEND.

4      61.    Under the Due Process Clause of the Fourteenth Amendment, an

5  ordinance is void for vagueness if, among other things, it fails either of the

6  following two tests:  (a) it fails to give a person of ordinary intelligence a reasonable

7  opportunity to know what the ordinance prohibits, or (b) it impermissibly delegates

8  basic policy matters to policemen, judges, and juries for resolution on an ad hoc and

9  subjective basis, with the attendant dangers of arbitrary and discriminatory

10  application.  The Ordinance cannot pass either test based on the allegations set forth

11  with respect to Mayfair's Third Claim for Relief, *supra*.

12      62.    Accordingly, Mayfair seeks a judgment pursuant to 28 U.S.C. §§ 2201,

13  *et seq.*, that:  declares the Ordinance to be unlawful and void; permanently enjoins

14  the City from enforcing, or threatening to enforce, the Ordinance; and provides

15  Mayfair with such other and further relief as the Court deems to be just and proper.

16  **FIFTH CLAIM FOR RELIEF**

17  (Declaratory Judgment, Permanent Injunction,

18  Costs of Suit and Attorney's Fees – Violation of 42 U.S.C. § 1983)

19      63.    Mayfair re-alleges and incorporates by reference the allegations

20  contained in all the preceding paragraphs as though set forth fully herein.

21      64.    42 U.S.C. § 1983 provides a civil cause of action to any person who is

22  deprived of rights secured by, among other things, the United States Constitution by

23  another acting under color of state law.

24      65.    The City, acting under color of state and local law, and through its

25  enactment and /or threatened enforcement of the Ordinance has deprived Plaintiff of

26  their rights secured by the Due Process of the Fourteenth Amendment to the United

27  States Constitution, as set forth above.

28      66.    Pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983, Mayfair is entitled

1   to a declaration that the City by its enactment and threatened enforcement of the

2   Ordinance has deprived Mayfair of its rights secured by the Due Process Clause of

3   the Fourteenth Amendment to the United States Constitution.

4          67.    Pursuant to 42 U.S.C. § 1983, Mayfair is entitled to permanent

5   injunctive relief prohibiting the City from threatening to enforce or enforcing the

6   Ordinance against Mayfair.

7          68.    As a result of the City's violation of Mayfair's rights secured by the

8   Due Process Clause of the Fourteenth Amendment to the United States Constitution,

9   there is an entitlement to an award of costs of suit, including attorney's fees,

10  pursuant to 42 U.S.C. § 1988.   Prior to filing this lawsuit, Mayfair's counsel

11  advised the City that it intended to seek costs and attorney's fees, should a lawsuit

12  be filed.

13         69.    Accordingly, Mayfair seeks a judgment pursuant to 28 U.S.C. §§ 2201,

14  *et seq.*, and 42 U.S.C. § 1983 that:  declares that the City by its enactment and

15  threatened enforcement of the Ordinance has deprived Mayfair of its rights secured

16  by the Due Process Clause of the Fourteenth Amendment to the United States

17  Constitution; permanently enjoins the City from enforcing, or threatening to enforce,

18  the Ordinance; and provides Mayfair with such other and further relief as the Court

19  deems to be just and proper; and,  Mayfair also seeks a judgment for costs of suit

20  and attorney's fees pursuant to 42 U.S.C. § 1988 on this claim for relief.

21                              **PRAYER FOR RELIEF**

22         WHEREFORE, Plaintiff Mayfair House Inc. prays for relief against

23  Defendant, The City of West Hollywood, California as set forth below.

24                      **ON THE FIRST CLAIM FOR RELIEF**

25         1.     For a judgment declaring that the Ordinance violates Article IV,

26  Section 20 of the California Constitution and that the Ordinance is therefore

27  unlawful and void.

28  ///

## ON THE SECOND CLAIM FOR RELIEF

1.      For a judgment declaring that the Ordinance is pre-empted by California state law pursuant to the California Constitution and that the Ordinance is therefore unlawful and void.

## ON THE THIRD CLAIM FOR RELIEF

1.      For a judgment declaring that the Ordinance violates the Due Process Clause in Article I, § 7 of the California Constitution and that the Ordinance is therefore unlawful and void.

## ON THE FOURTH CLAIM FOR RELIEF

1.      For a judgment declaring that the Ordinance violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and that the Ordinance is therefore unlawful and void.

## ON THE FIFTH CLAIM FOR RELIEF

1.      For a judgment declaring that the Defendant, City of West Hollywood, California has violated 42 U.S.C. § 1983 by depriving Plaintiff Mayfair House Inc. of its rights secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution as a result of the Defendant's enactment and/or threatened enforcement of the Ordinance under color of state and/or local law.

2.      For cost and  attorney's fees pursuant to 42 U.S.C. § 1988.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## ON ALL CLAIMS FOR RELIEF

1.     For a judgment permanently enjoining the Defendant, the City of West Hollywood, California, from enforcing, or threatening to enforce, the Ordinance.

2.     For costs incurred in this action.

3.     For such other and further relief as the Court deems just and proper.

DATED:     September 25, 2013     KELLEY DRYE & WARREN LLP

By: _____
        Michael J. O'Connor
Attorneys for Plaintiff Mayfair House Inc.

# <u>EXHIBIT 1</u>

# (THE ORDINANCE)

9.51.010 Findings.

**West Hollywood Municipal Code**

Title 9 Public Peace, Morals and Safety
    Article 4 -- Animals
        Chapter 9.51 Sale of Fur Products

**9.51.010 Findings.**

a.  Existing federal and state laws regulate the sale of dog and cat fur products. This includes the Dog and Cat Protection Act of 2000 (19 U.S.C. Section 1308) and California Penal Code Section 598a.

b.  The Federal Dog and Cat Protection Act of 2000 makes it unlawful to import into, or export from, the United States any dog or cat fur product; or to engage in interstate commerce, sell, offer to sell, trade, advertise, transport, or distribute in interstate commerce, any dog or cat fur product. Any person who violates this Act may be assessed a civil penalty up to ten thousand dollars ($10,000.00) per violation.

c.  The Federal Fur Products Labeling Act (15 U.S.C. Sections 69, et seq.) makes it unlawful to introduce, or manufacture for introduction, into commerce, sale, advertising or offering for sale in commerce, or the transportation or distribution in commerce, of any fur product which is misbranded or falsely or deceptively advertised or invoiced.

d.  California Penal Code Section 598a makes it a misdemeanor to possess, import into the state, sell, buy give away or accept any pelt of a dog or cat with the sole intent of selling or giving away the pelt of the dog or cat. Also, Title 14, Part 1 of the California Penal Code criminalizes a variety of other offenses against animals, including willfully administering poison to any animal (California Penal Code Section 596), cruelty to animals (California Penal Code Section 597), failure to care for animals (California Penal Code Section 597f) and abandonment of animals (California Penal Code Section 597s).

e.  The State Legislature has also considered other animal protection measures, including prohibiting the sale of products that result from the force feeding of a bird for the purpose of enlarging the bird's liver beyond normal size (Senate Bill 1520); and prohibiting the possession, sale, trade or distribution of shark fin (Assembly Bill 376).*

f.  Neither the federal government, nor the state legislature, has endeavored to regulate the sale of fur products, excluding the sale of dog or cat fur products. Until the federal government or the state legislature decides to regulate the sale of fur products from other types of animals, local governments are free to limit the types of procedures that may be performed within their jurisdiction for the protection of the public health, safety and general welfare.

g.  The City Council finds that animals that are slaughtered for their fur, whether they are raised on a fur farm or trapped in the wild, endure tremendous suffering. Animals raised on fur farms typically spend their entire lives in cramped and filthy cages. Fur farmers typically use the cheapest killing methods available, including suffocation, electrocution, gas and poison.

h.  According to the World Society for the Protection of Animals, it is estimated that fur farms produce eight-five percent of fur in the world. Every year, an estimated sixty million mink and six and one-half million foxes are killed on fur farms alone. If rabbits are included, the number of animals killed every year solely for their fur may far exceed one billion.

i.  According to the Humane Society of the United States, the fur industry kills more than fifty million animals a year. On fur factory farms around the world, millions of raccoon dogs, rabbits, foxes, mink, chinchillas, and other animals spend their lives in wire cages, only to be killed by anal electrocution, by neck-breaking, or in gas chambers. Raccoon dogs have been documented to be skinned alive, and this type of fur is widely sold in the United States, commonly advertised falsely or labeled as either a different type of animal fur

or faux fur. Fur products are commonly not labeled at all.

j.    Considering the wide array of alternatives for fashion and apparel, the City Council finds that the demand for fur products does not justify the unnecessary killing and cruel treatment of animals.

k.    The City Council believes that eliminating the sale of fur products will promote community awareness of animal welfare and, in turn, will foster a consciousness about the way we live in the world and create a more humane environment in the city.

l.    The City Council finds that the current state of the sale of fur products in the City of West Hollywood is inconsistent with the city's goal to be a community that cares about animal welfare and the city's reputation as a Cruelty Free Zone for animals.

m.    The City Council believes that eliminating the sale of fur products will promote community awareness of animal welfare and, in turn, will foster a more humane environment in the city.

n.    The City Council enacts this ordinance pursuant to the authority vested in the city by Article XI, Section 7 of the California Constitution allowing a city to make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws.

*    These bills have signed into law by the Governor; however they do not become operative until July 1, 2012 and January 1, 2012, respectively.

(Ord. 11-877 § 1, 2011)

Case 2:13-cv-07112-GHK-RZ   Document 1   Filed 09/25/13   Page 23 of 38   Page ID #:65

9.51.020 Sale of fur products.                                                    Page 1 of 1

**West Hollywood Municipal Code**

Up     Previous     Next     Main               Search     Print     No Frames

Title 9 Public Peace, Morals and Safety
Article 4 – Animals
Chapter 9.51 Sale of Fur Products

## 9.51.020 Sale of fur products.

a. *Definitions.* For purposes of this chapter, the following definitions shall apply:

1. "Fur" means any animal skin or part thereof with hair, fleece, or fur fibers attached thereto, either in its raw or processed state, but shall not include such skins as are to be converted into leather or which in processing shall have the hair, fleece, or fur fiber completely removed.

2. "Fur product" means any article of wearing apparel made in whole or in part of fur; excluding dog or cat fur product to which Section 308 of the Tariff Act of 1930 applies.

3. "Non-profit organization" means any corporation that is organized under 26 U. S. C. Section 501(c)(3) that is created for charitable, religious, philanthropic, educational or similar purposes.

4. "Taxidermy" means the practice of preparing and preserving the skin of an animal that is deceased and stuffing and mounting it in lifelike form.

5. "Used fur" means fur in any form which has been worn or used by an ultimate consumer.

6. "Wearing apparel," as used in the definition of a fur product in subsection 3, means any articles of clothing or covering for any part of the body.

b. *Prohibition.* It shall be unlawful to sell, import, export, trade, or distribute any fur product by any means anywhere within the City of West Hollywood on or after September 21, 2013.

c. *Exemption.* This section shall not apply to the sale, importation, exportation, trade or distribution of:

1. Fur products by a non-profit organization; or

2. The pelt or skin of an animal that is preserved through taxidermy or for the purpose of taxidermy; or

3. Used fur products by a private party (excluding a retail transaction), nonprofit organization or second-hand store, including a pawn shop.

(Ord. 11-877 § 1, 2011)

# EXHIBIT 2

## (July 2, 2013 Letter
## from City's Code Compliance Manager to
## West Hollywood Business Owners)

**City of WEST HOLLYWOOD**

CITY HALL
8300 SANTA MONICA BLVD.
WEST HOLLYWOOD, CA
90069-4216
TEL (323) 848-6216
FAX (323) 848-6564

**DEPARTMENT OF
PUBLIC WORKS**

July 2, 2013

RE: City of West Hollywood Fur Ban

Dear Business Owner:

In November of 2011, the West Hollywood City Council passed an ordinance banning the sale of fur in the City of West Hollywood. This ban will take effect on September 21st of this year.

Included in the envelope is a fact sheet that should answer any questions that you may have regarding the ban. If your business does not sell fur apparel then please disregard this letter. However, if your business does sell fur please cease this activity no later than September 20, 2013.

If you have any questions regarding the Fur Ban please feel free to contact me at (323)848-6424 or by email at jaubel@weho.org. I would like to thank you in advance for you anticipated cooperation in this matter.

Sincerely,

Jeff Aubel
Commercial Code Compliance Manager

### Sale of Fur Products Ban Fact Sheet

How does it work?

- All retail establishments located within the City of West Hollywood will be prohibited from selling, trading, distributing, importing or exporting any fur product on or after September 21, 2013.

- The term "fur product" means any item of personal attire, clothing or garment, which is composed in whole or in part from the pelt or skin of any animal with its hair, fleece (wool) or fur attached.

- The ban applies to shearling products, as the skin for such products is tanned with the wool still attached.

- The Ordinance only applies to "wearing apparel" as defined as "any articles of clothing or covering for any part of the body," which would include shoes, boots, hats, and gloves.

- Based on the Ordinance's definition of wearing apparel, purses, jewelry and pocketbooks are not considered wearing apparel and therefore are not prohibited under this Ordinance. Furniture is also not prohibited under this Ordinance.

- A resident of West Hollywood who purchases and brings back a fur product from outside the City for personal use or to give the fur product as a gift is not re-selling the fur product, and therefore would not be in violation of the Ordinance.

- Businesses located within West Hollywood are prohibited from selling fur apparel online and shipping from a West Hollywood location.

- Although the Ordinance does not expressly state that it is unlawful to display a fur product, if a West Hollywood retailer displaying a fur product has imported it for the purpose of selling the product, the act of importing the product would violate the Ordinance.

Are there any exemptions?

Yes. The Ordinance does not apply to the sale, importation, exportation, trade or distribution of: (1) Fur products by a non-profit organization; (2) The pelt or skin of an animal that is preserved through taxidermy or for the purpose of taxidermy; or (3) Used fur products by a private party (excluding a retail transaction), non-profit organization or second-hand store, including a pawn shop.

<u>Purpose</u>

- The City of West Hollywood believes that eliminating the sale of fur apparel products will promote community awareness of animal welfare and, in turn, will foster a consciousness about the way we live in the world and create a more humane environment in the City. The current state of the sale of fur apparel products in the City of West Hollywood is inconsistent with the City's goal to be a community that cares about animal welfare and the City's reputation as a Cruelty Free Zone for animals.

<u>Facts and Figures (website only)</u>

- According to the World Society for the Protection of Animals, it is estimated that fur farms produce 85 percent of fur in the world. Every year, an estimated 60 million mink and 6.5 million foxes are killed on fur farms alone. If rabbits are included, the number of animals killed every year solely for their fur may far exceed one billion.

- In 1989, the City Council passed a Resolution 558 making West Hollywood a "Cruelty Free Zone" for animals. This action was then followed by West Hollywood's move to secure animal care service policies that included a no-kill policy for stray and abandoned animals. The City also focused its efforts on raising awareness about the availability of thousands of abandoned animals at shelters waiting to be adopted, even sponsoring local adoption fairs at our City parks—a tradition that continues to this day.

- In 2004, the City Council passed an ordinance to ban the barbaric practice of declawing cats, thereby making West Hollywood the first City in North America to ban this procedure.

- In 2008, West Hollywood adopted a resolution supporting Proposition 2, which led to a statewide standard in the caging of chickens; in 2009, the City Council took a stand against puppy-mills and the sale of dogs in local stores that came from such mills.

<u>Fee Schedule (website only)</u>

A violation of the Ordinance is subject to a civil administrative penalty in accordance with the City of West Hollywood 2013-14 Fee Schedule:

- Admin Fee - $50
- First Offense - $200 plus admin fee
- Second Offense (within a twelve-month period) - $400 plus admin fee
- Third Offense (within a twelve-month period) - $800 plus admin fee
- Any additional offense within a twelve-month period charged as an infraction or misdemeanor

# EXHIBIT 3

## (April 13, 2013
## Letter from City Attorney)

# JENKINS & HOGIN, LLP
## A LAW PARTNERSHIP

MICHAEL JENKINS
CHRISTI HOGIN
MARK D. HENSLEY
KARL H. BERGER
GREGG KOVACEVICH
JOHN C. COTTI
ELIZABETH M. CALCIANO
LAUREN LANGER
ROBERT M. SMITH
TREVOR RUSIN
DAVID KING
NATALIE C. KARPELES

MANHATTAN TOWERS
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266
(310) 643-8448 • Fax (310) 643-8441
WWW.LOCALGOVLAW.COM

WRITER'S EMAIL ADDRESS:
MJENKINS@LOCALGOVLAW.COM

April 11, 2013

Keith Kaplan, Executive Director  [E-mail: keith@fur.org]
Fur Information Council of America
8424 A Santa Monica Boulevard, #860
West Hollywood, California 90069

Reference:        *City of West Hollywood Sale of Fur Products Ordinance*

Dear Mr. Kaplan:

In response to your letter sent via email to Mayor Jeffrey Prang and members of the City Council, this office has prepared answers to the questions posed in your letter. The response is in a question and answer format and is enclosed for your reference.

Should you have any questions regarding this letter or the enclosed response, please contact my office.

Very truly yours,

Michael Jenkins
City Attorney
City of West Hollywood

Enclosure

FREQUENTLY ASKED QUESTIONS REGARDING THE CITY OF WEST HOLLYWOOD ORDINANCE
PROHIBITING SALES OF FUR PRODUCTS

**Question #1:** "Does the definition of 'fur product' contained in the ordinance extend to lamb and calf products (e.g. shearling) which are often not considered fur in the fashion sector?"

**Answer:** Shearling is a sheepskin or lambskin pelt that has gone through a limited shearing process to obtain a uniform depth of the wool fibers for a uniform look and feel.[1] According to People for the Ethical Treatment of Animals (PETA): "Contrary to what many consumers think, 'shearling' is not sheared wool; the term refers to the sheep. A shearling is a yearling sheep who has been shorn once. A shearling garment is made from a sheep or lamb shorn shortly before slaughter. *The skin is tanned with the wool still on it.* It can take 25 to 45 individual sheep hides to make just one shearling garment."[2] Indeed, Webster's Dictionary defines "shearling" as "skin from a recently sheared sheep or lamb that has been tanned and dressed *with the wool left on.*"[3]

The ordinance defines "fur" as "any animal skin or part thereof with hair ... attached thereto, either in its raw or processed state."[4]  If the shearling garment is made with skin that was tanned with the wool still on the skin, then the garment would constitute a "fur product" for purposes of the ordinance.

**Question #2:** "Does the definition of 'wearing apparel' contained in the ordinance cover any of the following:
a.    Shoes and boots?
b.    Pocket books and purses?
c.    Hats?
d.    Blankets?
e.    Gloves?"

**Answer:** Under the ordinance, "wearing apparel" is defined as "any articles of clothing or covering for any part of the body."[5] In addition, wearing apparel is defined to *further explain* the definition of "fur product" which is defined as "any article of wearing apparel made in whole or in part of fur..."[6]  Thus, based on a plain reading of the ordinance, shoes, boots, hats and gloves would constitute "wearing apparel," since they are all articles of clothing that cover a part of the body.  Since pocket books and purses are typically not considered "articles of clothing," pocket books and purses will not be considered "wearing apparel" for purposes of the ordinance.

---

[1] Wikipedia, http://en.wikipedia.org/wiki/Shearling.
[2] PETA website, http://www.peta.org/issues/animals-used-for-clothing/other-animals-used-for-their-skins.aspx (emphasis added).
[3] Merriam Webster's Dictionary, http://www.merriam-webster.com/dictionary/shearling (emphasis added).
[4] West Hollywood Municipal Code (WHMC) § 9.51.020(a)(1) (2013).
[5] WHMC § 9.51.020(a)(6).
[6] Id. at (a)(2).

1

Lastly, with regard to blankets, the definition of "wearing apparel" includes a "covering for any part of the body," which arguably would include blankets. However, the definition of "wearing apparel" is aimed at clarifying the definition of "fur product," which is an "any article of wearing apparel." Since a blanket is not typically worn by a person nor considered an "article of wearing apparel," a typical blanket made in whole or in part of fur <u>would not</u> constitute a "fur product" for purposes of the ordinance. Note, however, that a so-called "sleeved blanket" which is a unisex body-length blanket with sleeves that is similar in design to a bathrobe and that is meant to be worn backwards (i.e., with the opening in the back) <u>would</u> constitute "wearing apparel" if it was made in whole or in part of fur, since it is designed to be worn.[7]

**Question #3:**   "May a West Hollywood retailer display a 'fur product' in a West Hollywood location, but all aspects of any transaction resulting from that display: (e.g. shipment, payment (via credit card)) occur outside the City?  Does it matter whether the product is shipped to a destination in the City or outside the City. [*sic*]"

**Answer:**   The ordinance makes it unlawful to "sell, import, export, trade, or distribute any fur product by any means anywhere within the City of West Hollywood on or after September 21, 2013."[8] Although the ordinance does not state that it is unlawful to display a fur product, since a retailer who is displaying a fur product has likely imported it for the purpose of selling the product, the act of importing the product would violate the ordinance.

With regard to the second question, assuming the question is still referring to a West Hollywood retailer, such a retailer would be prohibited from exporting or distributing a fur product to another destination, regardless of whether the destination was inside or outside the City.

**Question #4:**   "May a West Hollywood retailer advertise 'fur products' on a website?  Does the location of the server hosting that website affect this conclusion?"

**Answer:**   A West Hollywood retailer may advertise "fur products" on a website, since advertising <u>alone</u> does not constitute selling, importing, exporting, trading or distributing a fur product. However, if a retailer advertises for the purpose of selling a fur product and sells the product, or if a retailer imports a fur product for the purpose of selling the product, the sale and act of importing the product would violate the ordinance.

**Question #5:**   "Does the definition of sell, import, export, trade or distribute apply to online sales, which are:
   a.   **Ordered by a consumer outside the City, but shipped from a location in the City;**
   b.   **Ordered by a consumer inside the City, but shipped from a location outside of the City."**

**Answer:**   As noted above, the ordinance makes it "unlawful to sell, import, export, trade, or distribute any fur product by any means anywhere within the City of West Hollywood on

---

[7] http://en.wikipedia.org/wiki/Sleeved_blanket.
[8] WHMC § 9.51.020.

2

or after September 21, 2013."[9]  With regard to the first part of the question, "shipping" a fur product *from* a location in the City would constitute "distributing" a fur product, since a common definition of "distribute" means to "promote, sell, *and ship* or deliver (an item or line of merchandise) to individual customers..."[10] Thus, a retailer who ships a fur product from a location in the City would be in violation of the ordinance.

With regard to the second part of the question, if the fur product was shipped by a distributor from a location outside the City to the City, the ordinance would not apply to the distributor, since the distributor is outside of the City.  The consumer in this hypothetical would not be in violation of the ordinance, unless the "consumer" in the City was in fact "importing" the fur product for resale in the City (discussed in Question #6, below).

**Question #6:**  "The current ordinance states that 'it shall be unlawful to ... <u>import</u> a fur product by any means anywhere within the City.'  The ordinance does not limit the prohibition to retailers.  Does this mean that a West Hollywood resident who goes to another destination and purchases a fur product and brings it back (imports) to the City for personal use (or to give as a gift) is in violation of the ordinance?"

**Answer:**  By its terms, the ordinance is aimed only at the "sale" of fur products.  In the City Council's findings in the ordinance, the City Council consistently stated that the ordinance was intended to prohibit "the sale of fur products."  Moreover, the ordinance was codified as Chapter 9.51 of the West Hollywood Municipal Code and the title of the chapter is "Sale of Fur Products."[11] As such, the term "import" as used in the ordinance would only prohibit bringing in a fur product *for sale of the product*, which is consistent with the common definition of the word.[12]  Thus, a resident who merely brings back a fur product from outside the City for personal use or to give the fur product as a gift is not re-selling the fur product, and therefore would not be in violation of the ordinance.

**Question #7:**  "To the extent the ordinance applies to manufacturers, retailers or consumers who export product into or out of West Hollywood, how does the City intend to enforce the ordinance (and assess penalties) against such individuals or businesses?"

**Answer:**  The City intends to enforce the ordinance utilizing City resources, including regular inspections and investigations by the Code Compliance Division and the L.A. County Sheriff's Department. A violation of the ordinance is subject to a civil administrative penalty and violations of the ordinance more than three times within a 12-month period shall be prosecuted as a misdemeanor.[13]

---

[9] WHMC § 9.51.020(b).

[10] Dictionary.com, http://dictionary.reference.com/browse/distribute?s=t (emphasis added).

[11] WHMC § 9.51.010(f), (k)-(m).

[12] Dictionary.com, http://dictionary.reference.com/browse/import?s=t ("Import" defined as *to bring in* (merchandise, commodities, workers, etc.) from a foreign country for use, *sale*, processing, reexport, or services.") (emphasis added).

[13] WHMC § 1.08.010(e).

ORIGINAL

Name & Address:
KELLEY DRYE & WARREN LLP
  Michael J. O'Connor (State Bar No. 090017)
  10100 Santa Monica Blvd., 23rd Floor
  Los Angeles, CA 90067-4008
  Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYFAIR HOUSE INC., a California Corporation<br><br>PLAINTIFF(S)<br><br>v.<br><br>THE CITY OF WEST HOLLYWOOD, CALIF.,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV13-07112 GHK(RZx)<br><br><br>SUMMONS |

TO:   DEFENDANT(S):

    A lawsuit has been filed against you.

    Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney,   Michael J. O'Connor, Esq. _____ , whose address is   10100 Santa Monica Blvd., 23rd Floor, Los Angeles, CA 90067-4008 _____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: SEP 2 5 2013

By: _Mansley_____
        Deputy Clerk

(Seal of the Court)
1227

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*



Name & Address:
KELLEY DRYE & WARREN LLP
 Michael J. O'Connor (State Bar No. 090017)
 10100 Santa Monica Blvd., 23rd Floor
 Los Angeles, CA  90067-4008
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYFAIR HOUSE INC., a California Corporation<br><br>PLAINTIFF(S)<br><br>v.<br><br>THE CITY OF WEST HOLLYWOOD, CALIF.,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV13-07112 -GHK(RZ)<br><br><br><br>**SUMMONS** |

TO:     DEFENDANT(S):

       A lawsuit has been filed against you.

       Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __Michael J. O'Connor, Esq._____, whose address is __10100 Santa Monica Blvd., 23rd Floor, Los Angeles, CA 90067-4008_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

<br>

       SEP  2 5  2013

Dated: _____

Clerk, U.S. District Court

By: _____

**MARILYN DAV**

Deputy Clerk

*(Seal of the Court)*

1227

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*



**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| MAYFAIR HOUSE INC. | THE CITY OF WEST HOLLYWOOD, CALIFORNIA |

| **(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.) | **(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.) |
|---|---|
| Michael J. O'Connor, Esq. & David E. Fink , Esq., KELLEY DRYE & WARREN LLP, 10100 Santa Monica Boulevard, Twenty-Third Floor, Los Angeles, California 90067-4008 (310) 712-6172 | Michael Jenkins, Esq., City Attorney for The City of West Hollywood, JENKINS & HOGGINS, LLP, Manhattan Towers, 1230 Rosecrans Avenue, Suite 110, Manhattan Beach, California 90266 (310) 643-8448 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Complaint for Declaratory, Injunctive, and Other Relief Based On: (1) Violation of Cal. Const., Art. IV, § 20; (2) Preemption by State Law under Cal. Const.; (3) Violation of Due Process Clause in Cal. Const., Art. I, § 7; (4) Violation of Due Process Cl. of U.S. Const., amend. XIV; and (5) Violation of 42 U.S.C. § 1983.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **TORTS** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | **PERSONAL PROPERTY** | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | ☒ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | **BANKRUPTCY** | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 440 Other Civil Rights | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 441 Voting | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 442 Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 445 American with Disabilities-Employment | ☐ 790 Other Labor Litigation | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 791 Employee Ret. Inc. Security Act | |
| | | | ☐ 448 Education | | |

CV13-07112

**FOR OFFICE USE ONLY:**   Case Number:

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII.   VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes  ☒ No | A PLAINTIFF: Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT: Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| If "no," go to Question C.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

| C.1. Is either of the following true? If so, check the one that applies: | C.2. Is either of the following true? If so, check the one that applies: |
|---|---|
| ☐ 2 or more answers in Column C | ☐ 2 or more answers in Column C |
| ☐ only 1 answer in Column C and no answers in Column D | ☐ only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question D, below. | Your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question D, below. |
| If none applies, answer question C2 to the right. ➡ | If none applies, go to the box below. ⬇ |
| Your case will initially be assigned to the WESTERN DIVISION. Enter "Western" in response to Question D below. | |

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | WESTERN DIVISION |

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   [x] NO   [ ] YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   [x] NO   [ ] YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   [ ] A. Arise from the same or closely related transactions, happenings, or events; or

[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ] D. Involve the same patent, trademark or copyright, *and* one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _____   DATE: 09/25/2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____George H. King_____ and the assigned Magistrate Judge is _____Ralph Zarefsky_____ .

The case number on all documents filed with the Court should read as follows:

## 2:13-CV-7112-GHK (RZx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____September 25, 2013_____
Date

By __MDAVIS_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☐ Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

☐ Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☐ Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**