# APPENDIX A

# (First Amended Complaint)

KELLEY DRYE & WARREN LLP
  Michael J. O'Connor (State Bar No. 090017)
  David E. Fink (State Bar No. 169212)
10100 Santa Monica Boulevard, Twenty-Third Floor
Los Angeles, California 90067-4008
Telephone:   (310) 712-6172
Facsimile:    (310) 712-6199
moconnor@kelleydrye.com
dfink@kelleydrye.com

KELLEY DRYE & WARREN LLP
  Laurence J. Lasoff (*Pro Hac Vice Application Forthcoming*)
  Ira T. Kasdan (*Pro Hac Vice*)
  Joseph D. Wilson (*Pro Hac Vice*)
Washington Harbour, Suite 400
3050 K Street, N.W.
Washington, DC  20007
Telephone:   (202) 342-8400
Facsimile:    (202) 342-8451
jwilson@kelleydrye.com
llasoff@kelleydrye.com
ikasdan@kelleydrye.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MAYFAIR HOUSE INC., a California Corporation | Case No. CV 13-07112 GHK (RZx) |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF BASED ON:** |
| v. | |
| THE CITY OF WEST HOLLYWOOD, CALIFORNIA | **1.  VIOLATION OF CAL. CONST., ART. IV, § 20;** |
| Defendant. | **2. PREEMPTION BY STATE LAW;** |
| | **3. VIOLATION OF THE DUE PROCESS  CLAUSE OF THE U.S. CONST., AMEND. XIV;** |
| | **4. VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE U.S. CONST., AMEND. XIV; AND,** |
| | **5.  VIOLATION OF 42 U.S.C. § 1983** |

1    Plaintiff Mayfair House Inc. ("Mayfair"), by and through their attorneys,

2  Kelley Drye & Warren LLP, alleges as follows:

3                          **NATURE OF THE CASE**

4    1.    This action by Plaintiff Mayfair challenges the legality of Ordinance

5  No. 11-877 ("the Ordinance") of the City of West Hollywood, California ("West

6  Hollywood" or the "City"), under both the State of California and The United States

7  Constitutions.

8    2.    On November 21, 2011, West Hollywood's City Council adopted the

9  Ordinance.  Subject to certain exemptions, the Ordinance makes "it unlawful for

10  anyone to sell, import, export, trade or distribute" any clothing product made wholly

11  or partly of animal fur by any means anywhere in the City on or after September 21,

12  2013.  Violators of the Ordinance are subject both to administrative penalties and

13  fees, and misdemeanor criminal sanctions of fines, jail time, or both.

14    3.    The City has touted the Ordinance as "one of the first of its kind in the

15  United States."  Upon information and belief, the Ordinance is, in fact, the first and,

16  to date, the only regulation by a city or county in the country that bans the sale of fur

17  clothing products.

18    4.    Most animals used to provide fur for clothing products *e.g*., the fox,

19  mink, beaver, and coyote, are recognized, at least under California law, as being

20  wild animals, regardless of whether they come directly from the wild and are taken

21  by hunting or trapping or are born and raised on farms for their fur.  Because the

22  Ordinance seeks to protect animals that are used to provide fur, most of which are

23  wild animals, by restricting the market for clothing products made of the fur of such

24  animals, the Ordinance, therefore, is fundamentally a wildlife regulation.

25    5.    The Ordinance is unlawful and void under the California Constitution

26  because it constitutes an *ultra vires* act of the City.  California's Constitution vests

27  the state legislature with the *exclusive* authority to enact legislation relating to the

28  protection of wildlife, and that authority includes the power to pass laws regulating

**FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF**

1   the market for products of wildlife.  Thus, the City had no authority under the

2   California Constitution to enact the Ordinance.

3       6.      Even if the state legislature does not have the exclusive authority under

4   the California Constitution to enact legislation relating to wildlife, the Ordinance is

5   still unlawful and void under the California Constitution because it conflicts with,

6   and thus is preempted by, state law.  The Ordinance contradicts various California

7   statutes permitting the trade in products made of the fur of certain animals.  The

8   Ordinance also conflicts with state law in that it duplicates still other state statutes

9   that prohibit the trade in products made of the fur of only certain but not other

10  animals, unlike the Ordinance which is more sweeping in its ban.  The State of

11  California has also preempted the Ordinance by "occupying the field" in which the

12  Ordinance attempts to regulate:  the state legislature has enacted various laws and

13  regulations that, *inter alia*, protect fur bearing animals; provide for their humane

14  treatment; and regulate the trade in animal furs.

15      7.      In addition, the Ordinance runs afoul of the Due Process Clause of the

16  Fourteenth Amendment to the United States Constitution because, among other

17  things, various aspects of the Ordinance, such as its definition of "fur" and "fur

18  product," make its prohibitions vague.

19      8.      If all of this were not enough, the Ordinance also violates the Equal

20  Protection Clause of the Fourteenth Amendment to the United States Constitution.

21  The Ordinance does so because it prohibits for-profit entities like Mayfair from

22  selling, importing, *etc*. new and used fur clothing products while permitting other

23  similarly situated groups to sell products made of fur, such as, for example, non-

24  profit entities, which are not prohibited from selling fur clothing products.  The

25  Ordinance also does so because it permits the sale, importation, *etc*. of non-clothing

26  products that are made of fur, such as fashion accessories (*e.g*., purses), home

27  furnishings (*e.g*., blankets or throw rugs), or furniture (*e.g*., couches).  The

28  classifications drawn by the Ordinance between entities like Mayfair and these other

1   similarly groups do not rationally relate to any legitimate interest of the City in the

2   Ordinance, and, therefore, the Ordinance violates the Equal Protection Clause.

3       9.      Mayfair prays for a judgment that:  (a) declares, pursuant to 28 U.S.C.

4   § 2201, that the Ordinance is unlawful and void under the both the State of

5   California and United States Constitutions; (b) permanently enjoins the City from

6   enforcing and threatening to enforce the Ordinance; (c) declares, pursuant to 42

7   U.S.C. §§ 1983 and 2201, that the City has deprived Mayfair of its rights secured by

8   the Due Process Clause and the Equal Protection Clause of the Fourteenth

9   Amendment, respectively, by enacting and/or threatening to enforce the Ordinance;

10  and (d) awards attorney's fees and costs, pursuant to 42 U.S.C. § 1988.

11                              **THE PARTIES**

12      10.     Plaintiff Mayfair House Inc. ("Mayfair") is a corporation organized

13  under the laws of the State of California with a principal place of business at 8844

14  Beverly Boulevard, West Hollywood, California 90048.  At all times since on or

15  about May 2007, Mayfair has owned and operated a retail store at the

16  aforementioned address.  At that store, Mayfair has sold at retail, and intends to

17  continue to sell at retail, new clothing products made wholly or partly of fur.

18      11.     Defendant, the City of West Hollywood, California is a general law city

19  under California law that is located within Los Angeles County, California.  The

20  City covers approximately 1.9 square miles – virtually all of it urban – in Los

21  Angeles County.  The population of the City was 34,399 according to the 2010 U.S.

22  Census.

23                      **JURISDICTION AND VENUE**

24      12.     The Court has subject matter jurisdiction over this case pursuant to 28

25  U.S.C. §§ 1331, 1343(a)(3), 1367(a), and 2201.  The Court can assert personal

26  jurisdiction over Defendant because it is located in this judicial District. Venue is

27  proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant

28  resides in this District and a substantial part of the relevant events underlying this

action occurred in this District.

## GENERAL ALLEGATIONS

## I.   FURS AND FUR CLOTHING
## IN GENERAL AND IN WEST HOLLYWOOD

13.     With the exception of fur made from artificial fibers, fur that is used to make clothing most often comes from animals, specifically various species of mammals, that are taken from the wild by hunting or trapping or that are raised on farms.

14.     There are hunters and trappers who take animals from the wild in California so their furs can ultimately be used for commercial purposes.  Likewise, there are fur farms in California that raise animals so their fur can be used commercially.

15.     West Hollywood consists of only approximately 1.9 square miles, virtually all of which is urban in nature.  Upon information and belief, there is no known habitat in West Hollywood today that would sustain, in the wild, animals that are commonly used to provide fur for clothing; there is no hunting or trapping of animals that are commonly used to provide fur for clothing that occurs in West Hollywood; and there are no farms in West Hollywood on which animals are raised for their fur.

## II.   THE ORDINANCE

### A.   The Genesis Of The Ordinance

16.     The idea for an ordinance in the City banning the sale of fur clothing began as a campaign promise by then–City Council candidate John D'Amico no later than, upon information and belief, January 2011.  Animal rights advocates campaigned vigorously for Mr. D'Amico, and he was elected, and still is, a councilman in the City.  Upon his election, the fur ban became one of his priorities, and he has been its chief architect.

17.     In speaking in the City Council hearing at which the Ordinance was

4
FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

1   adopted, Councilman D'Amico highlighted, while discussing the Ordinance, the
2   ability of the laws that the City passes to have profound impacts on other
3   communities.  Similarly, Councilman D'Amico, in speaking about the Ordinance,
4   has said that, "[i]t is not about what to wear, it's not about shame, and it's not about
5   name-calling" but that "[i]t's about how we live now . . . and our impact on the
6   world."

7       18.    Upon information and belief, prior to the adoption of the Ordinance in
8   November 2011, neither the City nor the City Council had completed a study
9   regarding the economic impact that the Ordinance would have.

10      **B.    The Provisions Of The Ordinance**

11      19.    The Ordinance, which is codified at Sections 9.051.010 and .020 of the
12  City's Municipal Code, makes it unlawful "to sell, import, export, trade, or
13  distribute any fur product by any means anywhere within [the City] on or after
14  September 21, 2013."  West Hollywood Municipal Code § 9.51.020(b).  A copy of
15  the Ordinance, as codified, is attached hereto as Exhibit 1 and incorporated herein
16  by reference.

17      20.    The Ordinance defines a "fur product" as "any article of wearing
18  apparel made in whole or in part of fur; excluding dog or cat fur product to which
19  Section 308 of the Tariff Act of 1930 applies."  *Id*., § 9.51.020(a)(2).

20      21.    "Fur," in turn, is defined as "any animal skin or part thereof with hair,
21  fleece, or fur fibers attached thereto, either in its raw or processed state, but shall not
22  include such skins as are to be converted into leather or which in processing shall
23  have the hair, fleece, or fur fiber completely removed."  *Id*., § 9.51.020(a)(1).

24      22.    The express terms of the Ordinance exempt non-profit organizations;
25  pelts or skins preserved through taxidermy or for the purpose of taxidermy;  and
26  "[u]sed fur products [sold] by [i] a private party (excluding a retail transaction), [ii]
27  nonprofit organization or [iii] second-hand store, including a pawn shop," from  the
28  Ordinance's ban on the sale, import, *etc*. of fur clothing products.  *See id*., §

9.51.020(c).

23.     As a result of the Ordinance's definition of "fur product," the Ordinance does not prohibit the sale, import, *etc.* of *non-clothing* products that are made either wholly or part of fur, such as, for example, fashion accessories (*e.g.*, purses), home furnishing accessories (*e.g.*, blankets and rugs), or furniture products (*e.g.*, fur-covered couches and chairs).  *See also* Exhibit 3 hereto (Apr. 13, 2013 Letter from City Attorney to Keith Kaplan), at Response to FAQ # 2.

24.     Violators of the Ordinance are subject to an administrative penalty of up to $800.00 plus an administrative fee of $50.00.  If a person has committed three violations of the Ordinance in a twelve month period, each subsequent violation of the Ordinance in that same period constitutes a misdemeanor for which the person can have to pay a fine of up to $1,000.00, be imprisoned in the county jail for up to six months, or both.  *See id.* § 1.08.010(e)-(g).  *See also* Exhibit 2 hereto (July 2, 2013 Letter from City's Code Compliance Mgr. Ltr. to West Hollywood Business Owners), at attachment, p. 2.

## C.    <u>The Overarching Purpose Of The Ordinance</u>

25.     The City explains the purpose of the Ordinance as follows:

> The City of West Hollywood believes that eliminating the sale of fur apparel products will promote community awareness of animal welfare and, in turn, will foster a consciousness about the way we live in the world and create a more humane environment in the City. The current state of the sale of fur apparel products in the City of West Hollywood is inconsistent with the City's goal to be a community that cares about animal welfare and the City's reputation as a Cruelty Free Zone for animals.

*E.g.*, City of West Hollywood Website, "Fur Ban Information," http://www.weho.org/index.aspx?page=1267, *last accessed* September 11, 2013; Exhibit 2 hereto (July 2, 2013 Letter from City's Code Compliance Mgr. Ltr. to West Hollywood Business Owners), at attachment, p. 2.  *See also* Ordinance (as codified), §§ 9.51.010(k)-(m).

26.     As demonstrated by the City's explanatory statement as well as the

6

findings contained in the Ordinance itself, the Ordinance's overarching purpose is to protect animals from being killed for their fur by regulating (*i.e.*, trying to eliminate) the market for fur clothing products.

27.     Notably in this regard, the Ordinance provides that:

- "The City Council finds that animals that are slaughtered for their fur, whether they are raised on a fur farm or trapped in the wild, endure tremendous suffering.  Animals raised on fur farms typically spend their entire lives in cramped and filthy cages.  Fur farmers typically use the cheapest killing methods available, including suffocation, electrocution, gas and poison." And,

- "Considering the wide array of alternatives for fashion and apparel, the City Council finds that the demand for fur products does not justify the unnecessary killing and cruel treatment of animals."

Ordinance (as codified), §§ 9.51.010(g) and (j).

**D.     The City Has Expressed An Intent To Enforce The Ordinance**

28.     The City has expressed its intent to enforce the Ordinance since its adoption.  For example, the City Attorney in a letter dated April 11, 2013 responded to a question about how the City intends to enforce the Ordinance by stating, in pertinent part, that:

> The City intends to enforce the Ordinance utilizing City resources, including regular inspections by the Code Compliance Division and the L.A. County Sheriff's department.

*See* Ex. 3, at Response to FAQ # 7.

29.     By way of another example, less than 90 days before the Ordinance's effective date, the City's Commercial Code Compliance Manager sent a letter to owners of businesses in West Hollywood dated July 2, 2013, a copy of which is attached hereto as Exhibit 2.   That letter, the subject line of which is "City of West Hollywood Fur Ban," states, *inter alia*, that, "If your business does not sell fur

7

1   apparel, then please disregard this letter.  However, if your business does sell fur,

2   please cease this activity no later than September 20, 2013."  Ex. 2 at 1.

3       30.     As a third example, two representatives of the City personally visited

4   Mayfair on or about Friday, October 25, 2013 to advise it that the City would be

5   enforcing the Ordinance.  These representatives handed out a flier entitled "7 Things

6   you should know about the City of West Hollywood Fur Ordinance," a copy of

7   which is attached hereto as Exhibit 4.

8   **C.    THE PLAINTIFF**

9       31.     At the retail store that Mayfair has owned and operated in West

10  Hollywood since approximately May 2007, Mayfair offers for sale, and has offered

11  for sale, to retail customers high-end clothing products for men, women, and

12  children; wearing apparel accessories; and home furnishings.  Mayfair does not

13  consider itself to be a second-hand store, as it understands that term in the

14  Ordinance (although Mayfair cannot be sure of the meaning of that term in in the

15  Ordinance).

16      32.     At its West Hollywood store, Mayfair has offered for sale and sold to

17  retail customers – and intends to continue to offer for sale and sell – men's and

18  women's clothing products made wholly or partly of animal fur.  For example, at its

19  West Hollywood store, Mayfair has offered for sale and sold to retail customers –

20  and intends to continue to offer for sale and sell –men's and women's parkas that

21  are trimmed with coyote fur.

22      33.     At its West Hollywood store, Mayfair has also offered for sale and sold

23  to retail customers – and intends to continue to offer for sale and sell – various

24  clothing products for men, women, and children that are made wholly or partly of

25  shearling.  These products include earmuffs, gloves, slippers, and boots, many of

26  which are branded under the highly popular UGG© label.  Shearling is sheepskin to

27  which trimmed down fibers of the fleece remain on the skin and the skin of which is

28  converted into leather.

34. From its West Hollywood store, Mayfair has consummated online retail transactions in which it has sold new clothing products made wholly or partly of fur and new clothing products made of shearling and shipped the purchased product to an address outside of West Hollywood as part of the transaction. Mayfair intends to continue to consummate online retail sales transactions like these in the future.

35. In light of the City's expressed intent to enforce the Ordinance, Mayfair is at imminent risk of the City enforcing the Ordinance against it, and Mayfair anticipates that the City will, in fact, enforce the Ordinance against it imminently.

## **FIRST CLAIM FOR RELIEF**

(Declaratory Judgment and Permanent Injunction –

*Ultra vires* Act In Violation of Art. IV, § 20 of the California Constitution)

36. Mayfair re-alleges and incorporates by reference the allegations contained in all the preceding paragraphs as though set forth fully herein.

37. Article IV, § 20 of the California Constitution provides in full that:

(a) The Legislature may provide for division of the State into fish and game districts and may protect fish and game in districts or parts of districts.

(b) There is a Fish and Game Commission of 5 members appointed by the Governor and approved by the Senate, a majority of the membership concurring, for 6-year terms and until their successors are appointed and qualified. Appointment to fill a vacancy is for the unexpired portion of the term. The Legislature may delegate to the commission such powers relating to the protection and propagation of fish and game as the Legislature sees fit. A member of the commission may be removed by concurrent resolution adopted by each house, a majority of the membership concurring.

9

1   Section 20(a) was first added to the state constitution in 1902 (and at that time was

2   known as § 25 1/2); section 20(b) was first added to the state constitution in 1940;

3   and both provisions have been amended slightly since their initial adoption.

4       38.    The purpose of Article IV, § 20(a) was to remove from local authorities

5   the right to regulate the fish and wildlife of the State of California and to invest such

6   power exclusively in the state legislature.  In so doing, the powers of the state

7   legislature to protect the fish and wildlife of the State of California were increased

8   over those previously entrusted to it.  In other words, it is most apparent that the

9   purpose of Article IV, § 20(a) was to clothe the state legislature with ample power to

10  adequately protect the fish and wildlife of the State of California. Prior to the

11  addition of what is now Article IV, § 20(a), it was within the competence of the city

12  and county governments in California to regulate the matter of taking and hunting

13  fish and wildlife within their respective territorial jurisdictions.

14      39.    The authority vested by Article IV, § 20(a) in the state legislature

15  remains exclusively vested in it, such that the legislature's unwillingness or failure

16  to adopt legislation regulating fish or wildlife within the State of California does not

17  thereby create a void which gives a local government the authority to enact

18  legislation in that area.

19      40.    Therefore, the City had no power to enact legislation like the

20  Ordinance, the overarching purpose and/or effect of which is to protect wild

21  animals, such as those trapped, hunted, or raised domestically for their fur, by

22  prohibiting the trade in products of such animals in the state (or elsewhere).

23      41.    As a result, the Ordinance is a void, *ultra vires* act by the City under the

24  California Constitution.

25      42.    Accordingly, Mayfair seeks a judgment pursuant to 28 U.S.C. §§ 2201,

26  *et seq*., that:  declares the Ordinance to be unlawful and void; permanently enjoins

27  the City from enforcing, or threatening to enforce, the Ordinance; and provides

28  Mayfair with such other and further relief as the Court deems to be just and proper.

1

## SECOND CLAIM FOR RELIEF

2          (Declaratory Judgment and Permanent Injunction –

3      Violation of the California Constitution Due to Preemption By State Law)

4          43.     Mayfair re-alleges and incorporates by reference the allegations

5   contained in all the preceding paragraphs as though set forth fully herein.

6          44.     Even assuming arguendo that the authority to enact legislation like the

7   Ordinance did not rest exclusively in the hands of the California legislature pursuant

8   to Art. IV, § 20(a) of the California Constitution, the Ordinance is nevertheless void

9   under the California Constitution as it is preempted by state law.

10         45.     Article VII, § 11 of the California Constitution provides that "[a]

11  county or city may make and enforce within its limits all local, police, sanitary, and

12  other ordinances and regulations not in conflict with general laws."  A local

13  ordinance conflicts with the general laws, and is thus preempted by state law and

14  void, if the local ordinance either contradicts state law, duplicates state law, or

15  regulates in a field in which the state has occupied.

16         46.     California's state statutes and regulations relating to wildlife are

17  pervasive.  *See generally* Cal. Fish & Game Code, §§ 1-16541; Cal. Code Regs., tit.

18  14, div. 1.

19         47.     Notably, these laws and regulations provide, among other things:

20         (a)     For the humane taking of fur-bearing animals from the wild, *see,*

21  *e.g*., Cal. Fish & Game Code §§ 3003.1 and 4002-4004;

22         (b)     Regulations on the trade in fur from fur-bearing and nongame

23  mammals, *see, e.g*.,  Cal. Fish & Game Code §§ 4005-4009 and 4030-4043;

24         (c)     For the maintenance of animals, including various kinds of

25  mammals, commonly found in the wild in California, *see, e.g., id*., § 2116.5

26  ("The Legislature finds and declares . . . that some keepers of wild animals

27  lack sufficient knowledge or facilities for the proper care of wild animals . . . .

28  It is the intention of the Legislature that the . . . possession of wild animals

shall be regulated to protect the health and welfare of wild animals captured, imported, transported, or possessed, . . . to protect the public health and safety in this state."); Cal. Code Regs., tit. 14, § 671.2 (humane treatment standards); *id*. § 671.3 (minimum facility and caging standards for wild animals housed at permanent facilities); and,

(d)     A prohibition on the sale, possession, or propagation of live mammals that are commonly found in the wild in California, for the purpose of killing such mammals for gain, *see id*. § 2124.

48.     Furthermore, there are various sections in the California Fish & Game Code which provide that products made of certain animals with fur can be sold.  *See* Cal. Fish & Game Code, § 3039(b) ("Products or handicraft items made from furbearing mammals and nongame mammals, their carcass or parts thereof, lawfully taken under the authority of a trapping license, may be purchased or sold at any time").  *See also id*., § 2082 (permitting the sale of "any part or product of an endangered or threatened species listed under state law if such part or product was in the seller's possession before the species was listed as endangered or threatened on January 1, 1985); *id*. § 4303 (providing in pertinent part that "[t]he skin or hide of any deer lawfully taken may be sold, purchased, tanned, or manufactured into articles for sale");  *id*., § 4800 (permitting the sale of "any part or product" of a mountain lion that was in the seller's possession prior to June 6, 1990).

49.     There are also various statutes in the California Fish & Game Code that make it unlawful to sell "parts or products" of various kinds of animals, many of which have fur.  *See* Cal. Fish & Game Code, § 2080 (prohibiting the sale of "any part or product" of an animal listed as endangered or threatened under state law, subject to certain exceptions); *id*. § 4800 (prohibiting the sale of "any part or product" of a mountain lion, subject to certain exceptions).

50.     Under California state law and regulations, a person can be assessed a civil penalty for having sold, imported, or exported, in violation of the Fish & Game

Code or regulations adopted pursuant to it, a mammal that has been taken or sold in violation of that Code or those regulations. *See, e.g.*, Cal. Fish & Game Code, § 2582(a)(3). Civil penalties are to be imposed for each "item" that is unlawfully sold, *etc*. *See* Cal. Code Regs., tit. 14, § 747(c)(4). Importantly, "item" is defined as "an animal or its carcass in its entirety, or if the carcass is no longer maintained in its entirety, any part *or product thereof*." *Id*., § 747(b)(5) (italics added). In other words, a person can be assessed a civil penalty based on unlawfully selling, importing or exporting a fur product that comes from a mammal that has been unlawfully taken or sold.

51.     And, except as expressly provided in the Fish & Game Code, any violation of that code, or of any rule, regulation, or order made or adopted under it, is a misdemeanor, and, unless otherwise provided for, punishable by a fine of up to $1,000, imprisonment in county jail for up to six months, or by both that fine and imprisonment. *See* Cal. Fish & Game Code, §§ 12000(a), 12002(b). Violations of certain provisions of the Fish & Game Code are punishable by a fine of up to $2,000, imprisonment in county jail for up to a year, or by both that fine and imprisonment. *See id*. § 12000(b)

52.     In light of these state laws and regulations, the Ordinance conflicts with the general law of the State of California, and, therefore, it is preempted and void.

53.     Accordingly, Mayfair seeks a judgment pursuant to 28 U.S.C. §§ 2201, *et seq*., that:  declares the Ordinance to be unlawful and void; permanently enjoins the City from enforcing, or threatening to enforce, the Ordinance; and provides Mayfair with such other and further relief as the Court deems to be just and proper.

## **THIRD CLAIM FOR RELIEF**

(Declaratory Judgment and Permanent Injunction –

Violation of the Due Process Clause in Amend. XIV of the U.S. Constitution)

54.     Mayfair re-alleges and incorporates by reference the allegations contained in all the preceding paragraphs as though set forth fully herein.

55.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides in pertinent part that no state or local government shall "deprive any person of life, liberty, or property, without due process of law[.]"  *See* U.S. CONST., 14TH AMEND.

56.     Under this clause, an ordinance is void for vagueness if, among other things, it fails either of these two tests:  (a) it fails to give a person of ordinary intelligence a reasonable opportunity to know what the ordinance prohibits, or (b) it impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.  The Ordinance cannot pass either test.

57.     To begin with, the Ordinance fails the first test because it does not reasonably inform one person whether it prohibits the sale, *etc.* of clothing products made of shearling.   The Ordinance's definition of "fur," in pertinent part, "means any animal skin or part thereof with hair, fleece, or fur fibers attached thereto . . . but shall not include such skins as are to be converted into leather . . . ."  The second clause (the one after the ellipsis) appears to exclude from the definition of "fur" animals skins on which the hair is attached that are converted to leather.  Shearling is sheepskin to which trimmed down fibers of the fleece remain on the skin *and the skin of which is converted into leather*, and thus would not seem to come within the Ordinance.  The City Attorney, however, has opined that the Ordinance's definition of "fur" does encompass shearling.  *See*  Exhibit 2 attached hereto.

58.     Moreover, the Ordinance also fails the first test because it does not reasonably inform a person as to what is meant by the undefined term "wearing apparel" within the Ordinance's definition of "fur product."  "Wearing apparel" by its nature is a broad and amorphous term.  Highlighting this vagueness is a statement from the City Attorney (see Exhibit 3 hereto) that the term "wearing apparel" encompasses blankets with sleeves, because those are designed to be worn.  However, blankets with sleeves, such as the Snuggie,® are commonly advertised to

1   the public as blankets and not as wearing apparel.

2        59.    The Ordinance also fails the first test because it does not reasonably

3   inform a person as to what is meant by the undefined term "second-hand store."  For

4   instance, one is not reasonably informed by the Ordinance whether that term refers,

5   for example, to any store that sells any used product or just to those stores that

6   predominantly sell used products.

7        60.    Finally, the Ordinance fails this first test because it does not reasonably

8   inform a person as to whether its prohibition on selling, exporting, trading, and

9   distributing new fur clothing products by any means anywhere within the City

10  applies to transactions consummated online for a particular item of fur clothing that

11  is shipped a place located outside of the City or in which the online purchaser is

12  located at a place outside of the City.

13       61.    These vague aspects of the Ordinance necessarily leave it to the persons

14  who enforce the Ordinance, and persons who decide whether the Ordinance has

15  been violated (such as jury members) to determine these vagaries of the Ordinance

16  on an *ad hoc* and subjective basis; as a result, the Ordinance fails the second – in

17  addition to the first – test for vagueness.

18       62.    The aspects of the Ordinance discussed above are just some of its

19  aspects that render the Ordinance impermissibly vague under the Due Process

20  Clause.

21       63.    Accordingly, Mayfair seeks a judgment pursuant to 28 U.S.C. §§ 2201,

22  *et seq*., that:  declares the Ordinance to be unlawful and void; permanently enjoins

23  the City from enforcing, or threatening to enforce, the Ordinance; and provides

24  Mayfair with such other and further relief as the Court deems to be just and proper.

25                          **FOURTH CLAIM FOR RELIEF**

26                (Declaratory Judgment and Permanent Injunction –

27   Violation of the Equal Protection Clause in Amend. XIV of the U.S. Constitution)

28

64.     Mayfair re-alleges and incorporates by reference the allegations contained in all the preceding paragraphs as though set forth fully herein.

65.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides in pertinent part that no state or local government shall "deny to any person within its jurisdiction the equal protection of the laws." *See* U.S. CONST., 14TH AMEND.

66.     With the exception of local ordinances that regulate fundamental rights or target groups belonging to "suspect" classes, a local ordinance will not violate the Equal Protection clause if the ordinance is rationally related to the posited legitimate local governmental interest.  However, an ordinance that draws classifications between different groups will violate the Equal Protection Clause if the classification:  (a) bears a relationship to an asserted goal that  is so attenuated as to render the distinction arbitrary or irrational; or, (b) rests on grounds wholly irrelevant to the achievement of the government's objective.  The Ordinance does not pass muster under the above principles of law.

67.     By prohibiting for-profit entities like Mayfair that sell principally first-hand goods from selling, importing, *etc*. clothing products, whether new or used, that are made wholly or partly of fur, the Ordinance classifies entities like Mayfair differently from the following groups:

(a)     *Non-profit entities*.  Under the Ordinance, these entities are expressly exempt from the Ordinance's prohibition on selling, importing, *etc*. fur clothing products, whether those be new or used;

(b)     *Second-hand stores (whether for-profit or non-profit)*.  These entities are expressly exempted from the Ordinance's ban on the sale, importation, *etc*. of fur clothing products with respect to used fur clothing products;

(c)     *Private parties*.  Under the Ordinance, these entities are expressly exempt from the Ordinance's ban on the sale, importation,

1    *etc.* of fur clothing products with respect to used fur clothing products,

2    except retail transactions for used fur clothing; and,

3        (d)    *Entities that sell,* etc. *non-clothing products made of fur (whether*

4    *for-profit or non-profit).*  The Ordinance does not prohibit the sale,

5    importation, *etc.* of non-clothing products made wholly or partly of fur,

6    such as, for example, fashion accessories (*e.g.*, purses), home

7    furnishings (*e.g.*, blankets or throw rugs), or furniture (*e.g.*, couches).

8        68.    These classifications bear such little, if any, relationship to the

9    overarching purpose of the Ordinance, *viz.*, the protection of wildlife, such that the

10   classifications are irrational and/or arbitrary and wholly irrelevant to the City's

11   objective with the Ordinance.

12       69.    For example, if the sale by *for-profit* entities of a fur clothing product

13   "does not justify the unnecessary killing and cruel treatment of animals," *see*

14   Ordinance § 9.51.010(j), such treatment of those animals can be no more justified

15   when a *non-profit* entity sells the same fur clothing product.   Highlighting the

16   irrationality of the Ordinance's for-profit entity vs. non-profit entity distinction is

17   the fact that the Ordinance permits the West Hollywood Community Foundation – a

18   501(c)(3) charitable entity that is legally separate from the City *but governed by the*

19   *City Council* – to sell fur clothing products within West Hollywood (such as at

20   charity auctions) while entities like Mayfair are prohibited from selling the very

21   same products.  Similarly, animal rights groups like PETA or The Humane Society

22   of the United States (which is cited in the Ordinance), because they are 501©(3)

23   entities, can sell fur clothing products in West Hollywood while entities like

24   Mayfair are prohibited from doing so simply because they have a different tax

25   status.

26       70.    Upon information and belief, some non-profit organizations have held

27   events within West Hollywood, such as charity auctions, at which clothing products

28

1  made of fur have been sold, and, furthermore, several of these events have been held

2  at hotels within West Hollywood.

3         71.    Upon information and belief, the purpose of the profit vs. non-profit

4  classification in the Ordinance is not to protect wildlife but, rather, to:

5            (a)    not create a disincentive for non-profit organizations that hold

6                events at which fur clothing products are sold, like charity auctions, to

7                hold such events outside of West Hollywood;

8            (b)    create an incentive for non-profit organizations to hold such

9                events in West Hollywood by granting non-profits the exclusive right

10                to sell new fur clothing products in West Hollywood; and,

11            (c)    avoid threatening the tax revenue that West Hollywood receives

12                from hotels in West Hollywood that hold these events.

13  The City receives substantial tax revenue from hotels in West Hollywood.

14         72.    Alternatively, if the purpose of the Ordinance (or an additional purpose

15  of the Ordinance) is to promote the City as a community that cares about animal

16  welfare and the City's reputation as a "Cruelty Free Zone" for animals – and this

17  other or additional purpose is not somehow part and parcel of the aforementioned

18  overarching purpose of the Ordinance – the classifications noted above still bear

19  such little, if any, relationship to that purpose such that the classifications are

20  irrational and/or arbitrary and wholly irrelevant to that purpose.

21         73.    For example, prohibiting for-profit entities like Mayfair from selling

22  fur clothing products, whether new or used, under the guise that doing so promotes

23  the City's reputation as a "Cruelty *Free* Zone" (emphasis added) creates an

24  irrational and arbitrary distinction because the City, at the same time, allows non-

25  profit entities to sell both new and used fur clothing products and allows second-

26  hand stores to sell used fur clothing products.

27         74.    Moreover (and by way of another example), prohibiting for-profit

28  entities like Mayfair from selling fur clothing products, whether new or used, under

the guise that doing so promotes the City's reputation as a "Cruelty *Free* Zone" (emphasis added) creates an irrational and arbitrary distinction because the Ordinance, at the same time, does not prohibit entities, whether for-profit or non-profit, from selling *any other* kind of product made of fur.

75.   Upon information and belief, the City has crafted the fur-clothing vs. other fur product classification in order to protect the Pacific Design Center and its tenants – and the substantial tax revenue that the City derives from the Pacific Design Center and its tenants.  At least one of the tenants of the Pacific Design Center advertises that it sells furniture made partly of fur, and, upon information and belief, several other Pacific Design Center tenants sell furniture and/or home furnishing products that are made partly of fur.

76.   Located within West Hollywood, the Pacific Design Center is a multi-use facility sitting on a 1.2 million square foot campus.  Within the Pacific Design Center are, among other things, a conference center and more than 130 showrooms for interior design-type entities, such as purveyors of furniture and home and office furnishings.  The Pacific Design Center's website touts the Pacific Design Center as "the West Coast's leading resource for the interior design trades."  Similarly, the City touts itself as the home of the Pacific Design Center – and a renowned center for the interior design trade.  For example, the City has stated, "[a]s the home of the Pacific Design Center (PDC) and surrounding 'Avenues of Art and Design,' West Hollywood is acknowledged as the West Coast's center of interior design."  City of West Hollywood Comprehensive Annual Financial Report FYE June 30, 2012, at iii.

77.   Upon information and belief, the City excluded non-clothing fur products from the Ordinance's definition of "fur product" – and thus from the Ordinance's ban on the sale of fur products – so that the tenants of the Pacific Design Center could sell furniture and furnishings made of fur, and, as result, so that the substantial tax revenue that the City derives from the Pacific Design Center and

1   its tenants would not be jeopardized should the Ordinance's ban apply to all fur

2   products.

3          78.     All told, the effect of the aforementioned classifications is to protect

4   discrete groups from economic competition by Mayfair and entities like Mayfair in

5   the fur product market, in particular, the market for fur clothing products, and, upon

6   information and belief, that is the purpose of the aforementioned classifications, *i.e.*,

7   to favor certain groups favored by the City Council at the expense of Mayfair and

8   entities like it.  Such economic protectionism is not considered rational under Equal

9   Protection Clause jurisprudence.

10          79.     As a result of the foregoing premises, the Ordinance violates the Equal

11   Protection Clause.

12          80.     Accordingly, Mayfair seeks a judgment pursuant to 28 U.S.C. §§ 2201,

13   *et seq.*, that:  declares the Ordinance to be unlawful and void; permanently enjoins

14   the City from enforcing, or threatening to enforce, the Ordinance; and provides

15   Mayfair with such other and further relief as the Court deems to be just and proper.

16   **FIFTH CLAIM FOR RELIEF**

17   (Declaratory Judgment, Permanent Injunction,

18   Costs of Suit and Attorney's Fees – Violation of 42 U.S.C. § 1983)

19          81.     Mayfair re-alleges and incorporates by reference the allegations

20   contained in all the preceding paragraphs as though set forth fully herein.

21          82.     42 U.S.C. § 1983 provides a civil cause of action to any person who is

22   deprived of rights secured by, among other things, the United States Constitution by

23   another acting under color of state law.

24          83.     The City, acting under color of state and local law, and through its

25   enactment and /or threatened enforcement of the Ordinance has deprived Plaintiff of

26   their rights secured by the Due Process and the Equal Protection Clauses of the

27   Fourteenth Amendment to the United States Constitution, as set forth above.

28          84.     Pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983, Mayfair is entitled

to a declaration that the City by its enactment and threatened enforcement of the Ordinance has deprived Mayfair of its rights secured by the Due Process and Equal Protections Clauses of the Fourteenth Amendment to the United States Constitution.

85.    Pursuant to 42 U.S.C. § 1983, Mayfair is entitled to permanent injunctive relief prohibiting the City from threatening to enforce or enforcing the Ordinance against Mayfair.

86.    As a result of the City's violation of Mayfair's rights secured by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, there is an entitlement to an award of costs of suit, including attorney's fees, pursuant to 42 U.S.C. § 1988.   Prior to filing this lawsuit, Mayfair's counsel advised the City that it intended to seek costs and attorney's fees, should a lawsuit be filed.

87.    Accordingly, Mayfair seeks a judgment pursuant to 28 U.S.C. §§ 2201, *et seq*., and 42 U.S.C. § 1983 that:  declares that the City by its enactment and threatened enforcement of the Ordinance has deprived Mayfair of its rights secured by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; permanently enjoins the City from enforcing, or threatening to enforce, the Ordinance; and provides Mayfair with such other and further relief as the Court deems to be just and proper; and,  Mayfair also seeks a judgment for costs of suit and attorney's fees pursuant to 42 U.S.C. § 1988 on this claim for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mayfair House Inc. prays for relief against Defendant, The City of West Hollywood, California as set forth below.

## ON THE FIRST CLAIM FOR RELIEF

1.    For a judgment declaring that the Ordinance violates Article IV, Section 20 of the California Constitution and that the Ordinance is therefore unlawful and void.

## ON THE SECOND CLAIM FOR RELIEF

1.     For a judgment declaring that the Ordinance is pre-empted by California state law pursuant to the California Constitution and that the Ordinance is therefore unlawful and void.

## ON THE THIRD CLAIM FOR RELIEF

1.     For a judgment declaring that the Ordinance violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and that the Ordinance is therefore unlawful and void.

## ON THE FOURTH CLAIM FOR RELIEF

1.     For a judgment declaring that the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and that the Ordinance is therefore unlawful and void.

## ON THE FIFTH CLAIM FOR RELIEF

1.     For a judgment declaring that the Defendant, City of West Hollywood, California has violated 42 U.S.C. § 1983 by depriving Plaintiff Mayfair House Inc. of its rights secured by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution as a result of the Defendant's enactment and/or threatened enforcement of the Ordinance under color of state and/or local law.

2.     For cost and  attorney's fees pursuant to 42 U.S.C. § 1988.

## ON ALL CLAIMS FOR RELIEF

1.     For a judgment permanently enjoining the Defendant, the City of West Hollywood, California, from enforcing, or threatening to enforce, the Ordinance.

2.     For costs incurred in this action.

3.     For such other and further relief as the Court deems just and proper.

///

///

FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

DATED:      November 5, 2013          KELLEY DRYE & WARREN LLP


By:  _____
          Michael J. O'Connor
     Attorneys for Plaintiff Mayfair House Inc.

DC:520554.7

23