# EXHIBIT 3

(April 13, 2013
Letter from City Attorney)

# JENKINS & HOGIN, LLP
## A LAW PARTNERSHIP

MICHAEL JENKINS
CHRISTI HOGIN
MARK D. HENSLEY
KARL H. BERGER
GREGG KOVACEVICH
JOHN C. COTTI
ELIZABETH M. CALCIANO
LAUREN LANGER
ROBERT M. SMITH
TREVOR RUSIN
DAVID KING
NATALIE C. KARPELES

MANHATTAN TOWERS
1230 ROSECRANS AVENUE, SUITE 110
MANHATTAN BEACH, CALIFORNIA 90266
(310) 643-8448 • FAX (310) 643-8441
WWW.LOCALGOVLAW.COM

WRITER'S EMAIL ADDRESS:
MJENKINS@LOCALGOVLAW.COM

April 11, 2013

Keith Kaplan, Executive Director  [E-mail: keith@fur.org]
Fur Information Council of America
8424 A Santa Monica Boulevard, #860
West Hollywood, California 90069

Reference:    *City of West Hollywood Sale of Fur Products Ordinance*

Dear Mr. Kaplan:

In response to your letter sent via email to Mayor Jeffrey Prang and members of the City Council, this office has prepared answers to the questions posed in your letter. The response is in a question and answer format and is enclosed for your reference.

Should you have any questions regarding this letter or the enclosed response, please contact my office.

Very truly yours,

Michael Jenkins
City Attorney
City of West Hollywood

Enclosure

# FREQUENTLY ASKED QUESTIONS REGARDING THE CITY OF WEST HOLLYWOOD ORDINANCE PROHIBITING SALES OF FUR PRODUCTS

**Question #1:** "Does the definition of 'fur product' contained in the ordinance extend to lamb and calf products (e.g. shearling) which are often not considered fur in the fashion sector?"

**Answer:** Shearling is a sheepskin or lambskin pelt that has gone through a limited shearing process to obtain a uniform depth of the wool fibers for a uniform look and feel.[1] According to People for the Ethical Treatment of Animals (PETA): "Contrary to what many consumers think, 'shearling' is not sheared wool; the term refers to the sheep. A shearling is a yearling sheep who has been shorn once. A shearling garment is made from a sheep or lamb shorn shortly before slaughter. *The skin is tanned with the wool still on it.* It can take 25 to 45 individual sheep hides to make just one shearling garment."[2] Indeed, Webster's Dictionary defines "shearling" as "skin from a recently sheared sheep or lamb that has been tanned and dressed *with the wool left on.*"[3]

The ordinance defines "fur" as "any animal skin or part thereof with hair ... attached thereto, either in its raw or processed state."[4] If the shearling garment is made with skin that was tanned with the wool still on the skin, then the garment would constitute a "fur product" for purposes of the ordinance.

**Question #2:** "Does the definition of 'wearing apparel' contained in the ordinance cover any of the following:
a. Shoes and boots?
b. Pocket books and purses?
c. Hats?
d. Blankets?
e. Gloves?"

**Answer:** Under the ordinance, "wearing apparel" is defined as "any articles of clothing or covering for any part of the body."[5] In addition, wearing apparel is defined to *further explain* the definition of "fur product" which is defined as "any article of wearing apparel made in whole or in part of fur..."[6] Thus, based on a plain reading of the ordinance, shoes, boots, hats and gloves would constitute "wearing apparel," since they are all articles of clothing that cover a part of the body. Since pocket books and purses are typically not considered "articles of clothing," pocket books and purses will <u>not</u> be considered "wearing apparel" for purposes of the ordinance.

---

[1] Wikipedia, http://en.wikipedia.org/wiki/Shearling.
[2] PETA website, http://www.peta.org/issues/animals-used-for-clothing/other-animals-used-for-their-skins.aspx (emphasis added).
[3] Merriam Webster's Dictionary, http://www.merriam-webster.com/dictionary/shearling (emphasis added).
[4] West Hollywood Municipal Code (WHMC) § 9.51.020(a)(1) (2013).
[5] WHMC § 9.51.020(a)(6).
[6] Id. at (a)(2).

1

Lastly, with regard to blankets, the definition of "wearing apparel" includes a "covering for any part of the body," which arguably would include blankets. However, the definition of "wearing apparel" is aimed at clarifying the definition of "fur product," which is an "any article of wearing apparel." Since a blanket is not typically worn by a person nor considered an "article of wearing apparel," a typical blanket made in whole or in part of fur <u>would not</u> constitute a "fur product" for purposes of the ordinance. Note, however, that a so-called "sleeved blanket" which is a unisex body-length blanket with sleeves that is similar in design to a bathrobe and that is meant to be worn backwards (i.e., with the opening in the back) <u>would</u> constitute "wearing apparel" if it was made in whole or in part of fur, since it is designed to be worn.[7]

**Question #3:** "May a West Hollywood retailer display a 'fur product' in a West Hollywood location, but all aspects of any transaction resulting from that display: (e.g. shipment, payment (via credit card)) occur outside the City? Does it matter whether the product is shipped to a destination in the City or outside the City. [sic]"

**Answer:** The ordinance makes it unlawful to "sell, import, export, trade, or distribute any fur product by any means anywhere within the City of West Hollywood on or after September 21, 2013."[8] Although the ordinance does not state that it is unlawful to display a fur product, since a retailer who is displaying a fur product has likely imported it for the purpose of selling the product, the act of importing the product would violate the ordinance.

With regard to the second question, assuming the question is still referring to a West Hollywood retailer, such a retailer would be prohibited from exporting or distributing a fur product to another destination, regardless of whether the destination was inside or outside the City.

**Question #4:** "May a West Hollywood retailer advertise 'fur products' on a website? Does the location of the server hosting that website affect this conclusion?"

**Answer:** A West Hollywood retailer may advertise "fur products" on a website, since advertising <u>alone</u> does not constitute selling, importing, exporting, trading or distributing a fur product. However, if a retailer advertises for the purpose of selling a fur product and sells the product, or if a retailer imports a fur product for the purpose of selling the product, the sale and act of importing the product would violate the ordinance.

**Question #5:** "Does the definition of sell, import, export, trade or distribute apply to online sales, which are:
a. Ordered by a consumer outside the City, but shipped from a location in the City;
b. Ordered by a consumer inside the City, but shipped from a location outside of the City."

**Answer:** As noted above, the ordinance makes it "unlawful to sell, import, export, trade, or distribute any fur product by any means anywhere within the City of West Hollywood on

---

[7] http://en.wikipedia.org/wiki/Sleeved_blanket.
[8] WHMC § 9.51.020.

2

or after September 21, 2013."[9] With regard to the first part of the question, "shipping" a fur product *from* a location in the City would constitute "distributing" a fur product, since a common definition of "distribute" means to "promote, sell, *and ship* or deliver (an item or line of merchandise) to individual customers..."[10] Thus, a retailer who ships a fur product from a location in the City would be in violation of the ordinance.

With regard to the second part of the question, if the fur product was shipped by a distributor from a location outside the City to the City, the ordinance would not apply to the distributor, since the distributor is outside of the City. The consumer in this hypothetical would not be in violation of the ordinance, unless the "consumer" in the City was in fact "importing" the fur product for resale in the City (discussed in Question #6, below).

Question #6: "The current ordinance states that 'it shall be unlawful to ... import a fur product by any means anywhere within the City.' The ordinance does not limit the prohibition to retailers. Does this mean that a West Hollywood resident who goes to another destination and purchases a fur product and brings it back (imports) to the City for personal use (or to give as a gift) is in violation of the ordinance?"

Answer: By its terms, the ordinance is aimed only at the "sale" of fur products. In the City Council's findings in the ordinance, the City Council consistently stated that the ordinance was intended to prohibit "the sale of fur products." Moreover, the ordinance was codified as Chapter 9.51 of the West Hollywood Municipal Code and the title of the chapter is "Sale of Fur Products."[11] As such, the term "import" as used in the ordinance would only prohibit bringing in a fur product *for sale of the product*, which is consistent with the common definition of the word.[12] Thus, a resident who merely brings back a fur product from outside the City for personal use or to give the fur product as a gift is not re-selling the fur product, and therefore would not be in violation of the ordinance.

Question #7: "To the extent the ordinance applies to manufacturers, retailers or consumers who export product into or out of West Hollywood, how does the City intend to enforce the ordinance (and assess penalties) against such individuals or businesses?"

Answer: The City intends to enforce the ordinance utilizing City resources, including regular inspections and investigations by the Code Compliance Division and the L.A. County Sheriff's Department. A violation of the ordinance is subject to a civil administrative penalty and violations of the ordinance more than three times within a 12-month period shall be prosecuted as a misdemeanor.[13]

---

[9] WHMC § 9.51.020(b).
[10] Dictionary.com, http://dictionary.reference.com/browse/distribute?s=t (emphasis added).
[11] WHMC § 9.51.010(f), (k)-(m).
[12] Dictionary.com, http://dictionary.reference.com/browse/import?s=t ("Import" defined as *"to bring in* (merchandise, commodities, workers, etc.) from a foreign country for use, *sale*, processing, reexport, or services.") (emphasis added).
[13] WHMC § 1.08.010(e).

3