1  MICHAEL JENKINS, State Bar No. 81997
   City Attorney, City of West Hollywood
2  CHRISTI HOGIN, State Bar No. 138649
   GREGG KETTLES, State Bar No. 170640
3  GREGG KOVACEVICH, State Bar No. 181295
   JENKINS & HOGIN, LLP
4  1230 Rosecrans Avenue, Suite 110
   Manhattan Beach, CA  90266
5  (310) 643.8448; Fax: (310) 643.8441

6  Attorneys for Defendant,
   CITY OF WEST HOLLYWOOD

7

8                    UNITED STATES DISTRICRT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11 | MAYFAIR HOUSE INC., a California        | CASE NO. CV 13-07112 GHK (RZx)
   | Corporation,
12 |                                         | *Assigned to the Honorable George H.*
   |                                         | *King, Chief Judge*
13 |              Plaintiff,
   |                                         | **[1] NOTICE OF MOTION AND**
14 |         vs.                             | **MOTION TO DISMISS;**

15 | THE CITY OF WEST HOLLYWOOD,             | **[2] COMPENDIUM OF CERTAIN**
   | CALIFORNIA,                             | **STATE AUTHORITIES (filed**
16 |                                         | **concurrently);**

17 |                                         | **[3] REQUEST FOR JUDICIAL**
   |                                         | **NOTICE; DECLARATION OF**
18 |              Defendant.                 | **COREY SCHAFFER IN SUPPORT**
   |                                         | **THEREOF (filed concurrently);**
19

20 |                                         | **[4] [PROPOSED] ORDER**
   |                                         | **GRANTING DEFENDANT CITY OF**
   |                                         | **WEST HOLLYWOOD'S MOTION**
21 |                                         | **TO DISMISS FIRST AMENDED**
   |                                         | **COMPLAINT PURSUANT TO RULE**
22 |                                         | **12(b)(6) OF THE FEDERAL RULES**
   |                                         | **OF CIVIL PROCEDURE (filed**
23 |                                         | **concurrently)**

24 |                                         | Date:  January 27, 2014
   |                                         | Time: 9:30 a.m.
25 |                                         | Dept.: 650

26 |                                         | Complaint served:  September 26, 2013
   |                                         | Current Response date:  November 15,
27 |                                         | 2013

28

─────────────────────────────────────────────────────────────

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

**TO THE HONORABLE GEORGE H. KING, UNITED STATES DISTRICT COURT JUDGE, PLAINTIFF, AND ITS ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that on January 27, 2014, at 9:30 a.m. or as soon thereafter as the matter may be heard in Courtroom 650 of the above-entitled court located at 255 East Temple Street, Los Angeles, California, defendant City of West Hollywood (the "City") will and hereby does move this court to dismiss, without leave to amend, the First Amended Complaint (the "Complaint") filed under the above-entitled case number by Mayfair House, Inc. ("Mayfair").

   This motion is made following the conference of counsel pursuant to Local Rule 7-3. It took place on October 10 and 11, 2013, more than five days before the filing of this motion. Counsel were unable to reach a resolution. Later Mayfair filed a First Amended Complaint. But this new filing did not resolve the subject matter of this motion.

   The motion is brought pursuant to the Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim upon which relief can be granted. More specifically, the motion is made on the following grounds:

1. As to the First Claim for Relief, for Declaratory Judgment and Permanent Injunction – *Ultra vires* Act In Violation of Article IV, Section 20 of the California Constitution, it was within the power of West Hollywood to enact the ordinance banning the sale of fur products within the City (the "Ordinance"). Section 20 applies only to protection of wildlife in the wild. It does not divest West Hollywood of its police power to bar the sale of fur products in town.

2. As to the Second Claim for Relief, for Declaratory Judgment and Permanent Injunction – Violation of the California Constitution Due to Preemption by State Law, the Ordinance does not conflict with state law. State laws protect wildlife in the wild. The Ordinance neither duplicates, contradicts, nor enters into an area fully occupied by state law. But even assuming it did, the

1

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

Ordinance would not be preempted because that would be incidental to its primary purpose to ban the sale of fur product in town.

3. As to the Third Claim for Relief, for Declaratory Judgment and Permanent Injunction – Violation of the Due Process Clause in the Fourteenth Amendment to the U.S. Constitution, the Ordinance is not vague, particularly in light of the fact that before the Complaint was filed, West Hollywood clarified the provisions that Mayfair now questions.

4. As to the Fourth Claim for Relief, for Declaratory Judgment and Permanent Injunction – Violation of the Equal Protection Clause in the Fourteenth Amendment to the U.S. Constitution, the classifications in Ordinance are supported by a rational basis.

5. As to the Fifth Claim for Relief, for Declaratory Judgment, Permanent Injunction, Costs of Suit and Attorney's Fees – Violation of 42 U.S.C. § 1983, because the other substantive federal claims, the Third Claim for Relief and the Fourth Claim for Relief, fail to state a claim, the Fifth Claim must be dismissed.

The motion is supported by this notice, the memorandum of points and authorities, request for judicial notice, and compendium of certain state authorities, served and filed herewith, the pleadings, files and records in this action, and all matters upon which the court may and does take judicial notice.

Dated:     November 15, 2013

Respectfully submitted,
JENKINS & HOGIN, LLP


CHRISTI HOGIN
GREGG KETTLES
GREGG KOVACEVICH
Attorneys for Defendant
City of West Hollywood

CITY'S NOTICE OF MOTION AND MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ iii

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 1

II.   STATEMENT OF FACTS ...................................................................... 2

III.  STANDARD OF REVIEW ..................................................................... 3

IV.   ARGUMENT .................................................................................... 4

    A.    Mayfair's First Claim for Relief Must Be Dismissed Because It Is Within West Hollywood's Broad Police Power Authority to Prohibit the Sale of Fur Products In the City ........................................ 4

    B.    Mayfair's Second Claim for Relief Must Be Dismissed Because West Hollywood's Ordinance Prohibiting the Sale of Fur Products Is Not Preempted by State Law ........................................................ 7

        1.    West Hollywood's Ban on the Sale of Fur Products does Not Conflict with State Law ........................................ 7

            a.    West Hollywood's Ban on the Sale of Fur Products does Not Duplicate State Law .................................. 8

            b.    West Hollywood's Ban on the Sale of Fur Products does Not Contradict State Law ............................... 8

            c.    West Hollywood's Ban on the Sale of Fur Products Does Not Enter an Area Fully Occupied by State Law, Either Expressly or by Legislative Implication ............ 10

        2.    Even Assuming West Hollywood's Ban on the Sale of Fur Products does Enter an Area Fully Occupied by State Law, This is Incidental to The Ordinance's Principal Purpose and Scope ........ 15

    C.    Mayfair's Third Claim for Relief Must Be Dismissed Because the Ordinance is Not Unconstitutionally Vague .............................. 16

        1.    Standard of Review ................................................ 16

        2.    The Hypothetical Questions Posed by Mayfair were Directly Answered by the City Prior to the Effective Date of the Ordinance ........................................................ 18

    D.    Mayfair's Fourth Claim for Relief Must Be Dismissed Because West Hollywood's Ordinance Prohibiting the Sale of Fur Products Within the City Has a Rational Basis ............................................ 22

i

| | | |
|---|---|---|
| | E. | Mayfair's Fifth Claim for Relief Must be Dismissed because Mayfair has No Substantive Federal Claim for Relief ............................................. 25 |
| | F. | If the Court Dismisses Some or All of the Federal Claims, But Allows Some of the State Law Claims to Proceed, the Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims ........... 25 |
| V. | CONCLUSION .......................................................................................... 25 |

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*American Communications Assn. v. Douds*
   339 U.S. 382, 412, 70 S.Ct. 674, 691, 94 L.Ed. 925 (1950) ....................................17

*Ashcroft v. Iqbal*
   556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009) .............3, 4

*Aulson v. Blanchard*
   83 F.3d 1, 3 (1st Cir. 1996)....................................................................................... 3

*Balistreri v. Pacifica Police Department*
   901 F.2d 696, 699 (9th Cir. 1990)........................................................................... 3

*California Grocers Assn. v. City of Los Angeles*
   52 Cal.4th 177, 190, 127 Cal.Rptr.3d 726, 733 (2011)............................................. 6

*California Rifle & Pistol Assn. v. City of West Hollywood*
   66 Cal.App.4th 1302, 1317, 78 Cal.Rptr.2d 591, 600 (1998) ....................1, 4, 11, 14

*California Veterinary Medical Assn. v. City of West Hollywood*
   152 Cal.App.4th 536, 61 Cal.Rptr.3d 318 (2007) ................. 1, 11, 12, 13, 15, 16, 18

*City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc.*
   56 Cal.4th 729, 743, 156 Cal.Rptr. 409, 415 (2013)............7, 9, 11, 12, 13, 14, 16, 17

*Doe v. City and County of San Francisco*
   136 Cal.App.3d 509, 517, 186 Cal.Rptr. 380, 384 (1982)........................................ 9

*Ex parte Cencinino*
   31 Cal.App. 238, 241, 160 P. 167, 168 (1916).......................................................... 7

*Gant v. County of Los Angeles*
   765 F.Supp.2d 1238, 1249 (C.D. Cal. 2011)...........................................................25

*Grayned v. City of Rockford*
   408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972) .......................17, 18

iii

*Great Western Shows, Inc. v. County of Los Angeles*
  27 Cal.4th 853, 118 Cal.Rptr.2d 746 (2002) ............................................... 8, 9, 11, 12

*Healy v. Beer Institute, Inc.*
  491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989) ............................................24

*Hill v. Colorado*
  530 U.S. 703, 732, 120 S.Ct. 2480, 2498, 147 L.Ed.2d 597 (2000) ........................17

*Humanitarian Law Project v. U.S. Treasury Dep't .*
  578 F.3d 1133 (9th Cir. 2009)..................................................................................17

*In re Delorean Motor Co.*
  991 F.2d 1236, 1240 (6th Cir. 1993)..........................................................................3

*Joseph E. Seagram & Sons, Inc. v. Hostetter*
  384 U.S. 35, 50-51, 86 S.Ct. 1254, 1263-64, 16 L.Ed.2d 336 (1966)......................24

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*
  507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993) ........................3

*Lee v. City of Los Angeles*
  250 F.3d 668, 688-89 (9th Cir. 2001) .......................................................................3

*McGowan v. State of Md.*
  366 U.S. 420, 428, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961) ............. 20, 21, 22, 24

*Northern Cal. Psychiatric Society v. City of Berkeley,*
  178 Cal.App.3d 90, 105, 223 Cal.Rptr. 609, 615 (1986)..........................................9

*People v. Mueller,*
  8 Cal.App.3d 949, 88 Cal.Rptr. 157 (1970) ...........................................................15

*RUI One Corp. v. City of Berkeley*
  371 F.3d 1137, 1154 (9th Cir. 2004).......................................................................22

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*
  559 U.S. 393, 404, 130 S.Ct. 1431, 1441, 176 L.Ed.2d 311 (2010) ........................6

*United States v. Raines*
  362 U.S. 17, 23, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960) .....................................21

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

*Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*
  455 U.S. 489, 494-495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362
  (1982) ............................................................................................17, 18, 21

*Ward v. Rock Against Racism*
  491 U.S. 781, 796, 109 S.Ct. 2746, 2756, 105 L.Ed.2d 661 (1989) ..................18, 21

*Washington State Grange v. Washington State Republican Party*
  552 U.S. 442, 450-51, 128 S.Ct. 1184, 1191, 170 L.Ed.2d 151 (2008) ....................17

### Federal Statutes

26 U.S.C. § 501(c)(3) ..........................................................................................23
28 U.S.C. § 1367(c).............................................................................................25
42 U.S.C. § 1983 ...................................................................................................2

### Federal Rules

Federal Rule of Civil Procedure Rule 8 ...................................................................3
Rule 12(b)(6) of the Federal Rules of Civil Procedure.............................................3
Rule 201 of the Federal Rules of Evidence ..............................................................4

### State Constitution

Cal. Const. art. IV, § 20.........................................................................................5
Cal. Const. art. XI, § 7...........................................................................................4, 7

### State Statutes

California Fish and Game Code
§ 2000......................................................................................................................12
§ 2001......................................................................................................................13
§ 2002......................................................................................................................13
§ 2080...................................................................................................................8, 10
§ 2082......................................................................................................................10
§ 3039......................................................................................................................10
§ 3039(a)..................................................................................................................10
§ 3039(b)...................................................................................................................9

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

§ 3087 ..................................................................................................................10
§ 4301 ..................................................................................................................10
§ 4303 ..................................................................................................................10
§ 4800 ....................................................................................................................8
§ 4800(b)(1) .........................................................................................................10
§ 4800(b)(2) .........................................................................................................10

## Other State Authority

California Attorney General Opinion No. 75-12, 58 Ops.Cal.Atty.Gen. 519,
    529-30, 1975 Cal. AG LEXIS 99, at 28 (July 3, 1975) .................................. 5

California Attorney General Opinion No. 87-607, 70 Ops.Cal.Atty.Gen. 210,
    1987 WL 247263, at 3-4 (September 3, 1987) .............................................. 5

## West Hollywood Municipal Code

§ 5.18.030 ............................................................................................................14
§ 9.49.010 ............................................................................................................14
§ 9.49.020 ............................................................................................................14
§ 9.50.010 ............................................................................................................14
§ 9.51.010(g) ......................................................................................................... 6
§ 9.51.010(h) ......................................................................................................... 6
§ 9.51.010(i) .......................................................................................................... 6
§ 9.51.010(j) .......................................................................................................... 6
§ 9.51.010(k) ......................................................................................................2, 6
§ 9.51.010(l) .......................................................................................................... 6
§ 9.51.01(m) .......................................................................................................... 7
§ 9.51.020(a)(1) ...................................................................................................20
§ 9.51.020(a)(2) ...................................................................................................23
§ 9.51.020(a)(6) ...................................................................................................23
§ 9.51.020(b). ......................................................................................................23

CITY'S NOTICE OF MOTION AND MOTION TO DISMISS

## West Hollywood Ordinances & Resolutions

Ordinance No. 13-924 ...................................................................................14
Ordinance No. 02-636 ...................................................................................14
Resolution No. 07-3488 ................................................................................14
Resolution No. 98-1880 ................................................................................14
Resolution No. 558 .......................................................................................14

CITY'S NOTICE OF MOTION AND MOTION TO DISMISS

I.       **INTRODUCTION AND SUMMARY OF ARGUMENT**

West Hollywood has long sought to make itself a community that is free from violence and cruelty.  More than fifteen years ago it banned the sale of certain kinds of handguns, known as Saturday Night Specials.  Even before that West Hollywood began to take a series steps to bring about more humane treatment of animals.  In 1989 West Hollywood adopted a resolution supporting a ban on all cosmetic testing on animals and the use of the steel leghold trap, and proclaiming the City a "Cruelty Free Zone for Animals."  In 2002 West Hollywood amended its municipal code to replace references to "pet owner" with "pet guardian."  In 2003 it banned the practice of nontherapeutic animal declawing, in 2004 it regulated animal grooming, and in 2010 it restricted the retail sale of dogs and cats from pet stores, in order to encourage the adoption of homeless animals.

In pursuing these initiatives to make its community a better place to live—for people and animals alike—West Hollywood has occasionally found itself hauled into court.  Plaintiffs claimed that the City lacked the power to enact these ordinances.  But West Hollywood prevailed.  Its ban on Saturday Night Specials was upheld in *California Rifle & Pistol Assn., Inc. v. City of West Hollywood*, 66 Cal.App.4th 1302, 78 Cal.Rptr.2d 591 (1998).  The City's animal declawing ban was upheld in *California Veterinary Medical Assn. v. City of West Hollywood*, 152 Cal.App.4th 536, 61 Cal.Rptr. 318 (2007).

Now West Hollywood finds itself in court again, defending another recently adopted ordinance designed to reduce violence and cruelty and bring about more humane treatment of animals.  Shortly after a City ordinance banning the sale of fur products went into effect, a retailer, Mayfair House ("Mayfair"), brought this complaint, claiming West Hollywood lacks the power to do this.  Just as similar claims against other City ordinances were rejected by the courts, so too should Mayfair's claims be dismissed.

While the ordinance was inspired by the violence perpetrated on fur bearing animals, it does not purport to control what happens outside the City.  Hunters, trappers, and fur farm operators in California and elsewhere remain free from West Hollywood's control.  Instead, by banning the sale of fur products in town, the ordinance aims to bring

1

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

1  about a more humane environment in the City. This action is well within the City's
2  constitutional police power, and has not been preempted by state laws that serve to
3  protect animals and recreational opportunities in the wild.

4        The ordinance is also valid against Mayfair's challenges under federal law. It is
5  not vague in violation of due process. Whatever uncertainties in application were cleared
6  up and published as interpretive guides by the City before the ordinance even went into
7  effect. Any facial ambiguity was cured. Nor is there a violation of equal protection, as
8  the classifications made by the ordinance are supported by a rational basis. Lacking any
9  substantive federal claim, Mayfair's final claim for relief, for violation of 42 U.S.C. §
10 1983, also fails.

11       If the court dismisses some or all of the federal claims, but allows some of the state
12 law claims to proceed, the court should decline to exercise supplemental jurisdiction over
13 them. Mayfair should pursue any remaining state law claims in state court.

14 **II.   STATEMENT OF FACTS**

15       In 2011 the City adopted Ordinance Number 11-877 (the "Ordinance"), making "it
16 unlawful for anyone to sell, import, export, trade, or distribute" any clothing product
17 made wholly or partly of animal fur anywhere in the City on or after September 21, 2013.
18 First Amended Complaint ("FAC") 1:4-13. Among other things, findings in the
19 Ordinance state that the ban will "promote community awareness of animal welfare and,
20 in turn, will foster a consciousness about the way we live in the world and create a more
21 humane environment in the city." FAC Ex. 1, West Hollywood Municipal Code
22 ("WHMC") § 9.51.010(k).

23       Before the Ordinance went into effect, in response to questions from the public, the
24 City published a number of statements indicating how the Ordinance would be enforced.
25 *Id.* Exs. 2 – 3. Among other things, the City identified what kinds of products would be
26 considered "wearing apparel," or clothing, and how on-line sales would be treated. *Id.*
27 Ex. 3. After the Ordinance went into effect, but before the City took steps to enforce it
28 against Mayfair, another communication was published by the City. *Id.* Ex. 4.

2

1    West Hollywood was served with Mayfair's complaint after the Ordinance went

2  into effect.  After the parties met and conferred, Mayfair filed a First Amended

3  Complaint (the "Complaint").  It is the subject of this motion to dismiss.

4  **III.  STANDARD OF REVIEW**

5    Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may

6  move to dismiss a claim for relief if the plaintiff fails to state a claim upon which relief

7  can be granted.  A motion to dismiss is proper where there is either a lack of a cognizable

8  legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

9  *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  In

10  evaluating a Rule 12(b)(6) motion, the court engages in a two-step analysis.  *Ashcroft v.*

11  *Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009) ("*Iqbal*").

12  First, the court must accept as true all non-conclusory factual allegations made in the

13  complaint.  *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination*

14  *Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993).  A court need

15  not accept as true conclusory allegations or legal characterizations, or unreasonable

16  inferences or deductions of fact.  *In re Delorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.

17  1993); *see Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (courts need not "swallow the

18  plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions,

19  periphrastic circumlocutions, and the like need not be credited").  Second, after accepting

20  as true all non-conclusory allegations, the court must determine whether the complaint

21  alleges a plausible claim to relief.  *See Iqbal*, 556 U.S. at 678-79, 129 S.Ct. at 1949-50.

22  Despite the liberal pleadings standards of Federal Rule of Civil Procedure Rule 8,

23  conclusory allegations will not save a complaint from dismissal.  *Id.*

24    In ruling on a motion to dismiss, the court may consider documents outside the

25  pleadings without the proceeding turning into a motion for summary judgment.  *Lee v.*

26  *City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  Specifically, the court may

27  consider (a) documents that are properly submitted as part of the complaint, (b)

28  documents on which plaintiff's complaint necessarily relies and whose authenticity is not

1 | contested, and (c) matters of public record of which the court may take judicial notice

2 | under Rule 201 of the Federal Rules of Evidence. *Id.*

3 | **IV.   ARGUMENT**

4 |       **A.   Mayfair's First Claim for Relief Must Be Dismissed Because It Is**

5 |             **Within West Hollywood's Broad Police Power Authority to Prohibit the**

6 |             **Sale of Fur Products In the City**

7 |     Mayfair claims that West Hollywood's ban on the sale of fur is void because the

8 | City lacks the authority to enact such a ban under the California Constitution.  This claim

9 | is without merit.  The ordinance is within West Hollywood's broad police power

10 | authority.

11 |     The California Constitution provides:  "A county or city may make and enforce

12 | within its limits all local, police, sanitary, and other ordinances and regulations not in

13 | conflict with general laws."  Cal. Const. art. XI, § 7.  The broad scope of this authority

14 | was explored by the California Court of Appeal in the context of another unsuccessful

15 | challenge to a West Hollywood ordinance.  In upholding the City's ban on the sale of

16 | certain handguns classified as "Saturday Night Specials," the court stated:

17 |       under the police power granted by the Constitution, counties and cities have

18 |       plenary authority to govern, subject only to the limitation that they exercise

19 |       this power within their territorial limits and subordinate to state law.  Apart

20 |       from this limitation, the police power of a county or city under this provision

21 |       is as broad as the police power exercisable by the Legislature itself.

22 | *California Rifle & Pistol Assn., Inc. v. City of West Hollywood*, 66 Cal.App.4th 1302,

23 | 1310, 78 Cal.Rptr.2d 591, 595 (1998) (internal quotation marks omitted).

24 |     Mayfair contends that West Hollywood's plenary authority to ban the sale of fur

25 | products within the City has been cut back by Article IV, Section 20 of the California

26 | Constitution.  Mayfair misses the mark.  Section 20 has a narrow focus.  It authorizes the

27 | state legislature to divide the "State into fish and game districts," "protect fish and game"

28 | in those districts, and delegate to the state Fish and Game Commission "powers relating

4

1  to the protection and propagation of fish and game." Cal. Const. art. IV, § 20. As the
2  text makes clear, Section 20 is about protecting fish and game. It is not about protecting
3  commercial markets for fish and game products.
4      Section 20's focus on conservation is further reinforced by its legislative history.
5  It was added to the California Constitution in 1902 to conserve wildlife for the benefit of
6  the hunting public. The ballot argument in support argued:
7          California is a rapidly growing State and as it grows and develops, demand
8          becomes greater upon our wild-life resources, while the area and natural
9          facilities for the propagation and maintenance of wild-life, fish and game is
10          consistently diminishing. The necessary steps must, therefore, be taken to
11          produce fish and game more abundantly in this restricted area and also at a
12          price which will permit the citizens in every walk of life to continue to enjoy
13          the great outdoor sports which are naturally and characteristically American.
14  California Attorney General Opinion No. 75-12, 58 Ops.Cal.Atty.Gen. 519, 529-30, 1975
15  Cal. AG LEXIS 99, at 28 (July 3, 1975), *disapproved on other grounds*, California
16  Attorney General Opinion No. 87-607, 70 Ops.Cal.Atty.Gen. 210, 1987 WL 247263, at
17  3-4 (September 3, 1987). Prior local efforts at wildlife conservation were inadequate.
18  Section 20 was intended to move conservation efforts to the state government, which was
19  in a better position to protect species and "provide against the ultimate their extinction."
20  *Ex parte Cencinino*, 31 Cal.App. 238, 241, 160 P. 167, 168 (1916).
21      Section 20 is about what happens in the woods, not what happens in town. It is
22  therefore hard to imagine how any ordinance restricting sales activity in an urban area
23  such as West Hollywood could be viewed as running afoul of Section 20. In an attempt
24  to get around the obvious, Mayfair mischaracterizes the language of the ordinance and
25  stretches ordinary concepts of causation beyond the breaking point.
26      Mayfair contends that the "overarching purpose and/or effect" of West
27  Hollywood's ban on the sale of fur products "is to protect wild animals." FAC 10:20-21.
28  Purpose alone is not a basis for concluding that an ordinance is ultra vires. *See*

5

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

1     *California Grocers Assn. v. City of Los Angeles*, 52 Cal.4th 177, 190, 127 Cal.Rptr.3d

2     726, 733 (2011) ("[p]urpose alone is no basis for concluding a local measure is

3     preempted").  To rest the analysis solely on considerations of purpose would generate the

4     anomalous circumstance, rejected by the U.S. Supreme Court in the related context of

5     preemption analysis, "that one jurisdiction's measure might survive [a challenge], while

6     another identical measure passed in a different jurisdiction might fall, 'merely because its

7     authors had different aspirations.'" *Id.* at n.4 (quoting *Shady Grove Orthopedic*

8     *Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 404, 130 S.Ct. 1431, 1441, 176

9     L.Ed.2d 311 (2010)).

10          Even assuming the purpose of the Ordinance is at all relevant, a review of the

11     language of the Ordinance, however, shows that its stated purpose is somewhat different

12     than represented by Mayfair.  Mayfair confuses "purpose" with "inspiration."  The

13     treatment of animals slaughtered for their fur was the *inspiration* for West Hollywood's

14     ordinance.  The Ordinance's findings detail the suffering endured by these animals and

15     the numbers of animals involved.  FAC Ex. 1, WHMC § 9.51.010(g), (h), (i).  It further

16     finds that the demand for fur does not justify the "unnecessary killing and cruel treatment

17     of animals."  *Id.* at § 9.51.010(j).  Drawing on these facts as inspiration, the Ordinance

18     goes on to explain that its *purpose* is to change what happens in West Hollywood:

19          The City Council believes that eliminating the sale of fur products

20          will *promote community awareness of animal welfare* and, in turn will *foster*

21          *a consciousness about the way we live* in the world and *create a more*

22          *humane environment in the city.*

23          The City Council finds that the current state of the sale of fur products

24          in the City of West Hollywood is inconsistent with the city's *goal to be a*

25          *community that cares about animal welfare* and the *city's reputation as a*

26          *Cruelty Free Zone for animals.*

27

28

CITY'S NOTICE OF MOTION AND MOTION TO DISMISS

1    The City Council believes that eliminating the sale of fur products

2    will *promote community awareness of animal welfare* and, in turn, will

3    *foster a more humane environment in the city.*

4    *Id.* § 9.51.010(k), (l), (m) (emphasis added).  The Ordinance does not purport to control

5    what happens in the wild or on fur farms out of town.  Its purpose, and the only effect

6    that may reasonably be seen to follow from it, are both confined to the City.  As this is

7    well within the police power of the City, Mayfair's first claim for relief should be

8    dismissed.

9    **B.    Mayfair's Second Claim for Relief Must Be Dismissed Because West**

10   **Hollywood's Ordinance Prohibiting the Sale of Fur Products Is Not**

11   **Preempted by State Law**

12   Mayfair contends that the Ordinance is preempted by state law.  Pursuant to its

13   authority under Section 20 of the California Constitution, the state legislature has enacted

14   a number of statutes to conserve wildlife.  But it has left intact the City's authority to

15   regulate commercial activity in town.  West Hollywood's ban on the sale of fur products

16   within the City is not preempted by state law.

17   **1. West Hollywood's Ban on the Sale of Fur Products does Not**

18   **Conflict with State Law**

19   The principles of preemption are well settled.  "A county or city may make and

20   enforce within its limits all local, police, sanitary, and other ordinances and regulations

21   not in conflict with general laws."  Cal. Const. art. XI, § 7.  There are, however, limits on

22   this authority.  Local legislation that conflicts with general law—that is, state law—is

23   void.  *City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc.*, 56

24   Cal.4th 729, 743, 156 Cal.Rptr. 409, 415 (2013) ("*Riverside*").  "A conflict exists if the

25   local legislation duplicates, contradicts, or enters an area fully occupied by general law,

26   either expressly or by legislative implication."  *Id.* (internal quotations marks omitted).

27   Because the Ordinance does none of these things, it does not conflict with state law.

28

7

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

1
2
### a. West Hollywood's Ban on the Sale of Fur Products does Not Duplicate State Law

3     There is no preemption by "duplication" here. "Local legislation is 'duplicative'

4 of general law when it is coextensive therewith." *Id.* In *Great Western Shows, Inc. v.*

5 *County of Los Angeles*, 27 Cal.4th 853, 118 Cal.Rptr.2d 746 (2002) ("*Great Western*"),

6 the California Supreme Court rejected a preemption claim raised against a county

7 ordinance banning the sale of firearms and ammunition on county property.

8     Great Western contends that the Ordinance overlaps several statutory

9     provisions, including those prohibiting the sale of machine guns, assault

10    weapons and unsafe handguns, and is therefore preempted. We disagree.

11    The Ordinance prohibits and punishes as a misdemeanor "the sale of

12    firearms and/or ammunition on County property." The above statutes

13    prohibit the sale of certain dangerous firearms. Thus, the Ordinance does

14    not criminalize "'precisely the same acts which are . . . prohibited'" by

15    statute and is therefore not duplicative.

16 27 Cal.4th at 865, 118 Cal.Rptr.2d at 865 (citations omitted).

17     Mayfair's complaint likewise fails to show that West Hollywood's ban on the sale

18 of fur products prohibits "precisely the same acts" as state law. The Complaint alleges

19 that certain statutes "make it unlawful to sell 'parts or products' of various kinds of

20 animals, many of which have fur." FAC 12:22-23. But the statutes cited vary in

21 significant ways from the Ordinance. California Fish and Game Code Section 2080

22 applies only to plants and animals determined by the state "to be endangered species or a

23 threatened species." Section 4800 applies only to mountain lions. None bans the sale of

24 fur products, regardless of species. The City's ordinance is not duplicative of state law.

25
26
### b. West Hollywood's Ban on the Sale of Fur Products does Not Contradict State Law

27    Nor is West Hollywood's ordinance preempted under the theory that it

28 "contradicts" state law. Local legislation is "'contradictory' to general law when it is

CITY'S NOTICE OF MOTION AND MOTION TO DISMISS

1  inimical thereto." *Riverside*, 56 Cal.4th at 743, 156 Cal.Rptr.3d at 415 (internal quotation

2  marks omitted).  This is not easily demonstrated.

3       The "contradictory and inimical" form of preemption does not apply unless

4       the ordinance directly requires what the state statute forbids or prohibits

5       what the state enactment demands.  Thus, no inimical conflict will be found

6       where it is reasonably possible to comply with both the state and local laws.

7  *Id.,* 56 Cal.4th at 743, 156 Cal.Rptr.3d at 416.  Just because a statute *allows* conduct

8  barred by local law is not enough to show a conflict.  Instead the statute must *mandate*

9  that such conduct take place.  The California Supreme Court faced a preemption claim

10 based on this theory in *Great Western*.  The court distinguished cases where the

11 legislature had specifically mandated conduct, *Doe v. City and County of San Francisco,*

12 136 Cal.App.3d 509, 517, 186 Cal.Rptr. 380, 384 (1982) (local law may not impose

13 additional gun licensing requirements when state law specifically prohibits such

14 requirements), and *Northern Cal. Psychiatric Society v. City of Berkeley,* 178 Cal.App.3d

15 90, 105, 223 Cal.Rptr. 609, 615 (1986) (local law may not ban electrotherapy treatment

16 when state law specifically provides that the choice be made available to every

17 psychiatric patient).  The court rejected the preemption claim: "Although gun show

18 statutes regulate, among other things, the sale of guns at gun shows, and therefore

19 contemplate such sales, the statutes do not mandate such sales, such that a limitation of

20 sales on county property would be in direct conflict with the statutes." 27 Cal.4th at 866,

21 118 Cal.Rptr.2d at 755.  Even though gun sales were authorized by state law, a local

22 ordinance banning gun sales on county property was valid.

23      Mayfair's complaint alleges that state statutes "provide that products made of

24 certain animals with fur can be sold." FAC 12:10.  None of the statutes cited, however,

25 *mandates* such sales.  Instead, as was the case in *Great Western*, certain types of sales are

26 permitted in compliance with state regulations and as exceptions to general prohibitions

27 on sales.  Mayfair cites Fish and Game Code Section 3039(b), which states: "Products or

28 handicraft items made from furbearing mammals and nongame mammals, their carcass or

9

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

1   parts thereof, lawfully taken under the authority of a trapping license, may be purchased
2   or sold at any time."  But this authorization must be read in context with the preceding
3   subsection, which bars sales generally:  "Except as otherwise provided in this section and
4   Sections 3087 and 4303, or any other provision of this code, or regulations adopted
5   pursuant thereto, it is unlawful to sell or purchase any species of bird or mammal or part
6   thereof found in the wild in California."  Cal. Fish & Game Code § 3039(a).  Subsection
7   (b) does not operate to *mandate* that localities permit the sale of fur products.  Rather, it
8   is an *exception* to the state's general rule *prohibiting* the sale of creatures, or parts of
9   creatures, found in the wild.

10       This interpretation is consistent with the legislature's constitutional mandate to
11   protect wildlife.  Rules allowing sales neither help conserve animals in the wild nor
12   ensure recreational opportunities for the hunting public.  It would be inconsistent with the
13   state constitution to read rules allowing sales as mandates on localities to permit sale of
14   fur products in their communities.

15       The remaining statutory sections cited by Mayfair come no closer to establishing
16   that sales of fur products are mandated, as opposed to merely permitted, by state law.  All
17   are exceptions to the same ban on sales of any bird or mammal "or part thereof" in
18   subsection (a) of Section 3039.  Each is also either an exception to yet another, more
19   specific provision that bans the sale of wild animals and their products, or a counterpoint
20   to separate, heavily restrictive provision.  *Compare* Cal. Fish & Game Code §§ 2082,
21   4800(b)(2), and 4303 *with id.*, §§ 2080, 4800(b)(1), and 4301.  West Hollywood's ban on
22   the sale of fur products does not contradict state law.

23                  **c.  West Hollywood's Ban on the Sale of Fur Products Does Not**
24                       **Enter an Area Fully Occupied by State Law, Either Expressly**
25                       **or by Legislative Implication**

26       The preemption principal of "fully occupied" likewise has no application here.
27   "[L]ocal legislation enters an area that is 'fully occupied' by general law when the
28   Legislature has expressly manifested its intent to 'fully occupy' the area, or when it has

                                    10

1   impliedly done so." *Riverside*, 56 Cal.4th at 743, 156 Cal.Rptr.3d at 416. The legislature

2   knows how to manifest such intent expressly, using phrases such as, "the state has

3   preempted and occupied this field." *E.g., California Veterinary Medical Assn. v. City of*

4   *West Hollywood*, 152 Cal.App.4th 536, 557 n.13, 61 Cal.Rptr.3d 318, 334 n.13 (2007)

5   ("*Veterinary Medical Assn.*") (finding an express intention to occupy the field of

6   veterinarian cleanliness and sanitation, but not the entire field of veterinary practice).

7   There is no express intent here. Mayfair's complaint fails to allege that even a single

8   statute expressly states that the legislature is "preempting" or "fully occupying" the area

9   of fur product sales. Accordingly, there is no "fully occupied" preemption of West

10  Hollywood's ordinance by express intent.

11        Nor has the state legislature occupied the field of fur product sales impliedly. The

12  California Court of Appeal urges courts to exercise caution before finding implied

13  preemption:

14        Claims of implied preemption must be approached carefully, because they

15        by definition involve situations in which there is no express preemption.

16        Since preemption depends upon legislative intent, such a situation

17        necessarily begs the question of why, if preemption was legislatively

18        intended, the Legislature did not simply say so, as the Legislature has done

19        many times in many circumstances. Hence the rule has developed that

20        implied preemption can properly be found only when the circumstances

21        "clearly indicate" a legislative intent to preempt.

22  *California Rifle & Pistol Assn. v. City of West Hollywood*, 66 Cal.App.4th 1302, 1317, 78

23  Cal.Rptr.2d 591, 600 (1998).

24        Implied preemption may be found "in light of one of the following indicia of

25  intent: (1) the subject matter has been so fully and completely covered by general law as

26  to clearly indicate that it has become exclusively a matter of state concern; (2) the subject

27  matter has been partially covered by general law couched in such terms as to indicate

28  clearly that a paramount state concern will not tolerate further or additional local action;

11

or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the locality." *Riverside*, 56 Cal.4th at 743, 156 Cal.Rptr.3d at 416 (internal quotation marks omitted).  None of these indicia is clearly present here.  There is no implied preemption of the West Hollywood ordinance.

Implied preemption was explored in a challenge to another West Hollywood ordinance aimed at creating a more humane environment for animals, *Veterinary Medical Assn.*  Even though the state legislature had enacted rules on veterinary practice generally, the court held that there was no implied preemption of a West Hollywood ordinance that prohibited veterinarians from performing procedures that were a customary part of veterinary practice.

Initially, although section 4826 [of the state statute] broadly defines what constitutes the practice of veterinary medicine, it is by no means clear the [statute] fully occupies the field of regulating that practice. Of course, the fact the state has legislated on the same subject does not necessarily preclude the exercise of local authority:  A city or county may make additional regulations, different from those established by the state, if not inconsistent with the purpose of the general law.

157 Cal.App.4th at 558, 61 Cal.Rptr.3d at 334-35.

The subject matter of the Ordinance challenged by Mayfair is the sale of fur products.  Such sales are addressed by the Fish and Game Code.  But its coverage is not so extensive as to clearly indicate that the field has become either exclusively a matter of state concern or one in which the state interest is so paramount it will not tolerate additional local action.  Far from it.  Pursuant to the mandate of Section 20 of the state constitution, the California Fish and Game Code protects wildlife against extinction and promotes recreational opportunities for the hunting public.  It does this primarily by regulating the taking of wildlife, be it by hunting or trapping, in the wild.  *E.g.*, Cal. Fish & Game Code §§ 2000 (making it "unlawful to take" any creature "except as provided in

12

1   this code"), 2001 (making it unlawful to take any creature outside of established seasons

2   or to exceed bag limits).  To further protect wildlife, the Fish and Game Code also

3   restricts the possession and sale of wildlife and "parts thereof."  *E.g., id.,* at §§ 2002

4   (making it unlawful to possess any creature unlawfully taken), 2080 (making it unlawful

5   to sell endangered or threatened species, or any part or product thereof).  There are

6   sections authorizing sales but, as explained above, their sole effect is to exempt specified

7   sales from general prohibitions.  It does not follow that cities have been stripped of the

8   power to regulate the sale of fur products within their jurisdictions.

9        A similar conclusion was reached by the California Supreme Court earlier this year

10  in *Riverside*.  The court held that California's medical marijuana statute did not impliedly

11  preempt a local ban on facilities that distribute medical marijuana.  The state statute

12        creates no comprehensive scheme for the protection or promotion of

13        facilities that dispense medical marijuana.  The sole effect of the statute's

14        substantive terms is to exempt specified medical marijuana activities from

15        enumerated state criminal and nuisance statutes.  Those provisions do not

16        mandate that local jurisdictions permit such activities.  Local decisions to

17        prohibit them do not frustrate the [statute's] operation.

18  56 Cal.4th at 760-61, 156 Cal.Rptr.3d at 430.  The Fish and Game Code protects wildlife

19  in the wild, and authorizes only limited sales of wildlife products.  It does not mandate

20  that local jurisdictions permit the sale of fur products.  Nor does West Hollywood's

21  ordinance frustrate the operation of the Code.  Its program of conservation of wild

22  animals in the wild is not affected by the City's ban on the sale of fur products in town.

23        The third test for implied preemption—"the adverse effect of a local ordinance on

24  the transient citizens of the state outweighs the possible benefit to the locality"—clearly

25  points away from a finding of preemption.  The California Supreme Court explains:

26        we have been particularly reluctant to infer legislative intent to preempt a

27        field covered by municipal regulation when there is a significant local

28        interest to be served that may differ from one locality to another.  [citations]

13

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

1       The common thread of the cases is that if there is a significant local interest

2       to be served which may differ from one locality to another then the

3       presumption favors the validity of the local ordinance against an attack of

4       state preemption.

5   *Riverside*, 56 Cal.4th at 744, 156 Cal.Rptr.3d at 416 (citations and internal quotation

6   marks omitted).

7       West Hollywood has significant interests in the ban on the sale of fur products.  In

8   a series of resolutions and ordinances enacted over the past quarter century, the City has

9   worked to make itself a community that is free from violence and cruelty, particularly

10  with regard to animals.  *See, e.g.*, Ordinance No. 13-924 (banning the commercial display

11  and performance of exotic animals, enacted in 2013) (Request for Judicial Notice

12  ("RJN") Ex. A); WHMC § 9.50.010 (restricting retail sale of dogs and cats from pet

13  stores, in order to encourage adoption of homeless animals, enacted in 2010) (RJN Ex.

14  B); Resolution No. 07-3488 (opposing abusive factory farming practice of the

15  confinement of egg-laying hens in battery cages, adopted in 2007) (RJN Ex. C); WHMC

16  § 5.18.030 (regulating animal grooming, enacted in 2004) (RJN Ex. D); WHMC §§

17  9.49.010 and .020 (banning the practice of nontherapeutic animal declawing) (enacted

18  2003, upheld in *Veterinary Medical Assn., supra*, 2007) (RJN Ex. E); Ordinance No. 02-

19  636 (amending municipal code references from "pet owner" to "pet guardian," enacted in

20  2002) (RJN Ex. F); Resolution No. 98-1880 (in support of initiative that would prevent

21  use of certain measures to trap animals, adopted in 1998) (RJN Ex. G); Resolution No.

22  558 (supporting a ban on cosmetic testing on animals and the use of the steel leghold

23  trap, and proclaiming the City a "Cruelty Free Zone for Animals," adopted in 1989) (RJN

24  Ex. H).  The ban on the sale of fur products in town is West Hollywood's latest step

25  toward bringing about this humane society.

26      Against these significant interests are weighed the interests of transient citizens.  It

27  is difficult to imagine how they would suffer any negative impact by the Ordinance.

28  When it turned back a challenge to West Hollywood's ban on the practice of

14

1  nontherapeutic animal declawing, the court observed that the burden on pet owners was
2  slight.  They "may freely go to a neighboring city and have the operation performed there
3  and bring the cat back to West Hollywood."  *Veterinary Medical Assn.*, 152 Cal.App.4th
4  at 559, 61 Cal.Rptr.3d at 336.  Likewise here, anyone seeking to buy a new fur coat can
5  simply shop somewhere else.  In light of the significant local interest, and the minimal
6  interest of transient citizens, there is no clearly implied preemption of West Hollywood's
7  ban on the sale of fur products.

8              **2.  Even Assuming West Hollywood's Ban on the Sale of Fur**
9                  **Products does Enter an Area Fully Occupied by State Law, This**
10                 **is Incidental to The Ordinance's Principal Purpose and Scope**

11       Even if the court were to conclude that the Ordinance enters an area fully occupied
12  by state law, that would not, by itself, render the ordinance invalid.  Any overlap with
13  state law is incidental.  Because the principal purpose and scope of the ordinance is not
14  regulation of conduct in the wild, but rather behavior in the City, it should be upheld.

15       This issue was considered in *People v. Mueller*, 8 Cal.App.3d 949, 88 Cal.Rptr.
16  157 (1970).  There the court reviewed an ordinance enacted by the City of Redondo
17  Beach prohibiting the use of "chumming," the practice of throwing dead fish into the
18  water without hooks as bait to attract fish.  The court agreed that, through statutes
19  codified in the Fish and Game Code, the state had preempted the regulation of fishing.
20  But the ordinance was nevertheless upheld.  "Preemption by the state of an area of law
21  does not preclude local legislation enacted for the public safety which only incidentally
22  affects the preempted area."  8 Cal.App.3d at 954, 88 Cal.Rptr. at 160 (internal quotation
23  marks omitted).  "The effect of the challenged [ordinance] upon fishing is incidental to
24  the principal purpose of the legislation, the prevention of pollution.  Coverage of the field
25  of regulation of fishing by the state Fish and Game Code, thus, does not invalidate the
26  local ordinance."  *Id.*

27
28

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

1    *Mueller* was followed by *Veterinary Medical Assn. Mueller* provided an

2    alternative basis for upholding West Hollywood's ban on the practice of non-therapeutic

3    animal declawing.

4    > Like the ordinance in *Mueller*, West Hollywood's ordinance prohibiting

5    > [animal declawing] procedures has a valid principal purpose plainly within

6    > the city's police power—the prevention of animal cruelty—and only a

7    > secondary or incidental effect on a field arguably preempted by the state.

8    > Because this incidental restriction of a particular form of surgical procedure

9    > to therapeutic purposes does not materially interfere with any legislative

10   > purpose expressed in the [statute], West Hollywood's ordinance is not

11   > preempted by state law.

12   152 Cal.App.4th at 562, 61 Cal.Rptr.3d at 337-38.

13   The City's fur ban should likewise be upheld. Its principal purpose and scope—

14   creating a more humane environment by banning the sale of fur products in the City—is

15   plainly within the City's police power. It has only a secondary or incidental effect on a

16   field Mayfield contends is preempted by state law. The Complaint's second claim for

17   relief, for preemption by state law, should be dismissed.

18   **C.    Mayfair's Third Claim for Relief Must Be Dismissed Because the**

19   **       Ordinance is Not Unconstitutionally Vague**

20   **       1.    Standard of Review**

21   In its third claim for relief, Mayfair contends the ordinance may be vague in select

22   hypothetical situations and, on that basis, seeks to have the court declare it invalid on its

23   face. As the Supreme Court has explained, facial challenges to legislation are disfavored

24   for several reasons.

25   > Claims of facial invalidity often rest on speculation. As a consequence, they

26   > raise the risk of premature interpretation of statutes on the basis of factually

27   > barebones records. Facial challenges also run contrary to the fundamental

28   > principle of judicial restraint that courts should neither anticipate a question

16

1  of constitutional law in advance of the necessity of deciding it nor formulate

2  a rule of constitutional law broader than is required by the precise facts to

3  which it is to be applied.  Finally, facial challenges threaten to short circuit

4  the democratic process by preventing laws embodying the will of the people

5  from being implemented in a manner consistent with the Constitution.  We

6  must keep in mind that a ruling of unconstitutionality frustrates the intent of

7  the elected representatives of the people.

8  *Washington State Grange v. Washington State Republican Party* 552 U.S. 442, 450-51,

9  128 S.Ct. 1184, 1191, 170 L.Ed.2d 151 (2008) (internal citations and quotation marks

10  omitted.)

11  An ordinance may be declared unconstitutionally vague under the due process

12  clause of the United States Constitution "if it fails to provide people of ordinary

13  intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it

14  authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v.*

15  *Colorado* 530 U.S. 703, 732, 120 S.Ct. 2480, 2498, 147 L.Ed.2d 597 (2000) ("*Hill*").  If

16  the ordinance implicates no constitutionally protected conduct, the court should uphold a

17  vagueness challenge only if the ordinance is impermissibly vague in all of its

18  applications. *Humanitarian Law Project v. U.S. Treasury Dep't* ., 578 F.3d 1133 (9th Cir.

19  2009); *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.* 455 U.S. 489,

20  494-495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) ("*Hoffman Estates*").

21  "Speculation about possible vagueness in hypothetical situations not before the Court will

22  not support a facial attack on a statute when it is surely valid 'in the vast majority of its

23  intended applications.'" *Hill,* 530 U.S. at 733 (quoting *United States v. Raines* 362 U.S.

24  17, 23, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960)).  "Condemned to the use of words, we

25  can never expect mathematical certainty from our language." *Grayned v. City of*

26  *Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972) ("*Grayned*").

27  "It will always be true that the fertile legal 'imagination can conjure up hypothetical

28  cases in which the meaning of (disputed) terms will be in nice question.'" *Id*. at n.15

17

1 | (quoting *American Communications Assn. v. Douds*, 339 U.S. 382, 412, 70 S.Ct. 674,

2 | 691, 94 L.Ed. 925 (1950)).

3 |       Economic regulations, like that at issue here, are subject to a less strict vagueness

4 | test because their subject matter is generally narrower and because business "can be

5 | expected to consult relevant legislation in advance of action." *Hoffman Estates,* 455 U.S.

6 | at 498, 102 S.Ct. at 1193. "Indeed, the regulated enterprise may have the ability to

7 | clarify the meaning of the regulation by its own inquiry, or by resort to an administrative

8 | process." *Id.* In evaluating a facial challenge to a law, the court must consider any

9 | limiting construction that the enforcement agency has proffered. *Id.* at n.5; *Grayned,* 408

10 | U.S. at 110, 92 S.Ct. at 2299; *Ward v. Rock Against Racism* 491 U.S. 781, 795-96, 109

11 | S.Ct. 2746, 2756, 105 L.Ed.2d 661 (1989). Administrative interpretations "will often

12 | suffice to clarify a standard with an otherwise uncertain scope." *Hoffman Estates,* 455

13 | U.S. at 504, 102 S.Ct. at 1196.

14 |         2. **The Hypothetical Questions Posed by Mayfair were Directly**

15 |             **Answered by the City Prior to the Effective Date of the Ordinance**

16 |       The ordinance prohibiting the sale of fur products was adopted in November 2011

17 | and scheduled to take effect two years later, in September 2013. FAC 1:8-12. In early

18 | 2013, the Executive Director of the Fur Information Council of America wrote the City to

19 | inquire about its meaning and scope. FAC Ex. 3. The City was asked to clarify, among

20 | other things, (1) whether the definition of "fur product" included shearling, (2) whether a

21 | blanket could be considered "wearing apparel" under the Ordinance, and (3) whether the

22 | Ordinance would apply to online sales that are either (a) ordered by a consumer outside

23 | the City but shipped from a location in the City, or (b) ordered by a consumer inside the

24 | City but shipped from a location outside of the City. *Id.* The City responded on April 11,

25 | 2013, more than five months prior to the effective date of the Ordinance, with a written

26 | list of "Frequently Asked Questions Regarding the City of West Hollywood Ordinance

27 | Prohibiting Sales of Fur Products." FAC Ex. 3. The FAQs published by the City

28 | confirmed that, because shearling is the "skin from a recently sheared sheep or lamb that

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

1   has been tanned and dressed with the wool left on," it falls within the Ordinance's

2   definition of "fur product." With respect to the "blanket" inquiry, the City confirmed that

3   because a blanket is not typically worn by a person, it is not considered "wearing

4   apparel." The City went on to note, however, that a so-called "sleeved blanket" would

5   fall within the Ordinance's definition of "wearing apparel." FAC Ex. 3, p. 2. With

6   respect to sales consummated online, the City clarified that the Ordinance *would* apply to

7   a retailer that shipped a fur product *from* a location in the City, but that it would *not* apply

8   to a retailer or distributor located outside the City that shipped a fur product *to* a

9   consumer located in the City. FAC Ex. 3, p. 3.

10         Moreover, on July 2, 2013, as part of an educational campaign undertaken in

11   advance of the Ordinance's effective date, the City mailed a "Sale of Fur Products Ban

12   Fact Sheet" to all potentially affected business owners within the City. FAC Ex. 2.

13   Among other things, the Fact Sheet clarified that the ban would apply to shearling and

14   would prohibit business located within the City from selling fur apparel online and

15   shipping from a location within the City. *Id.* The cover letter that accompanied the Fact

16   Sheet invited business owners to contact the City's code compliance manager with any

17   additional questions. *Id.* Mayfair received the Fact Sheet and the cover letter. FAC

18   7:24-8:2, Ex. 2. In addition, on or about October 25, 2013, Mayfair representatives were

19   personally handed an informational flier entitled "7 Things You Should Know About the

20   City of West Hollywood's Fur Ordinance." FAC 8:3-7, Ex. 4. That flier also informed

21   Mayfair about the Ordinance's applicability to shearling products and to certain

22   transactions consummated online. *Id.*

23         Despite the repeated clarification and assurances offered by the City, Mayfair

24   contends the Ordinance is unduly vague in four respects, warranting its total invalidation.

25   Mayfair first alleges that the Ordinance fails to "reasonably inform a person whether it

26   prohibits the sale, *etc.* of clothing products made of shearling." FAC 14:12-13. Not only

27   has that alleged ambiguity been clarified for Mayfair and others on multiple occasions as

28   detailed above, there was never an ambiguity to speak of in the first place. The

19

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

1   Ordinance defines "fur" as "any animal skin or part thereof with hair, fleece, or fur fibers

2   attached thereto, either in its raw or processed state, but shall not include such skins as

3   are to be converted into leather or which in processing shall have the hair, fleece, or fur

4   fiber completely removed." FAC Ex. 1, WHMC § 9.51.020(a)(1). Because shearling is,

5   by definition, "skin from a recently sheared sheep or lamb that has been tanned and

6   dressed with the wool left on," it clearly qualifies as fur under the terms of the Ordinance.

7   (Shearling. (2009). In Merriam-Webster's online dictionary. Retrieved November 8,

8   2013, from http://www.merriam-webster.com/)

9        Mayfair next alleges that the Ordinance does not reasonably inform a person as to

10  what is meant by "wearing apparel" within the Ordinance's definition of "fur product."

11  FAC 14:22-15:1. Specifically, Mayfair offers the Snuggie® conundrum. Is it a blanket?

12  Is it a baggy shirt? While fascinating questions like these may be debated by scholars for

13  years to come, they are not cause for invalidating the City's ordinance. To begin with,

14  the City already put the Snuggie® conundrum to bed when it published FAQs about the

15  ordinance confirming that a "sleeved blanket" (dutifully avoiding use of the registered

16  trademark) *would* constitute "wearing apparel" for purposes of the ordinance. FAC Ex.

17  3, p. 2. In any case, "wearing apparel" is not "by its nature . . . a broad and amorphous

18  term" as Mayfair suggests. FAC 14:25. Business people of ordinary intelligence in the

19  retail clothing sector can reasonably be expected to know what the term "wearing

20  apparel" generally means. *See McGowan v. State of Md.* 366 U.S. 420, 428, 81 S.Ct.

21  1101, 1106, 6 L.Ed.2d 393 (1961) ("*McGowan*"). Ironically, Mayfair itself must have a

22  fairly solid understanding of what the term "wearing apparel" means because it alleges

23  that it is in the business of selling "wearing apparel accessories," among other things.

24  FAC 8:12.

25        For its third ground, Mayfair contends that the ordinance does not reasonably

26  inform a person as to what is meant by the undefined term "second-hand store." FAC

27  15:2-6. This, again, should not be a term that spells confusion in the minds of "business

28  people of ordinary intelligence." *McGowan*, 366 U.S. at 428, 81 S.Ct. at 1106, 6 L.Ed.2d

20

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

1    393.  Saks Fifth Avenue is not a second-hand store just because it may occasionally resell

2    a purse or item of clothing that has been returned—a product that may technically be

3    "used."  Common sense dictates that a second-hand store is one that deals predominantly

4    in used goods.  Consistent with that common sense, Mayfair does not consider itself to be

5    a second-hand store for purposes of the Ordinance.  FAC 8:12-15.

6           Finally, Mayfair complains it is unclear whether the Ordinance applies to

7    transactions consummated online for a particular item of fur clothing that is shipped from

8    a place located outside of the City or in which the online purchaser is located at a place

9    outside of the City.  FAC 15:7-12.  To the extent the Ordinance may be perceived as

10   ambiguous in that regard, any such ambiguity has been resolved by the City in prior

11   correspondence with Mayfair and other affected business owners.  The Fact Sheet,

12   published FAQs, and flyers all clarified that the Ordinance *would* apply to a retailer that

13   ships a fur product *from* a location in the City, but that it would *not* apply to a retailer or

14   distributor located outside the City that ships a fur product *to* a consumer located in the

15   City.  FAC Exs. 2, 3 (p. 3), and 4.  Mayfair has been aware of the City's limiting

16   construction of the Ordinance in this regard for some time and that is sufficient to clarify

17   its scope.  *Hoffman Estates,* 455 U.S. at 504, 102 S.Ct. at 1196.

18          The clarification and limiting construction that Mayfair and other affected business

19   owners were provided by the City prior to the Ordinance's effective date remedied any

20   ambiguities that may have arguably existed.  This was sufficient to assure Mayfair and

21   others that there was no attendant danger of arbitrary, subjective, or discriminatory

22   application.  *Ward v. Rock Against Racism,* 491 U.S. 781, 796, 109 S.Ct. 2746, 2756, 105

23   L.Ed.2d 661 (1989) (holding that any inadequacy that may have arguably existed on the

24   face of a sound amplification regulation "would have been more than remedied by the

25   city's narrowing construction.")  In short, the plain language of the Ordinance combined

26   with the City's repeated offers of clarification leave no room for doubt with respect to

27   any of the hypothetical situations described by Mayfair in its complaint.  Mayfair has

28   been aware of this since before the Complaint was filed.  Clearly, Mayfair invokes the

21

1   vagueness doctrine, not because it seriously believes the Ordinance fails to give people of

2   ordinary intelligence a reasonable opportunity to know what it prohibits, but rather

3   because Mayfair wants to thwart a law that it prefers did not exist.  For these reasons

4   Mayfair's third claim for relief should be dismissed.

**D.    Mayfair's Fourth Claim for Relief Must Be Dismissed Because West**
**Hollywood's Ordinance Prohibiting the Sale of Fur Products Within the**
**City Has a Rational Basis**

8        In the fourth claim for relief, the Complaint alleges that the Ordinance violates the

9   federal Equal Protection Clause because it unfairly targets retailers like Mayfair.  This

10  claim should be denied.  Because there is a rational basis for the Ordinance's

11  classification scheme, it does not run afoul of equal protection.

12       The Complaint concedes that the Ordinance neither regulates fundamental rights

13  nor targets groups belonging to suspect classes.  FAC 16:7-10.  The standard of review of

14  the Ordinance is accordingly deferential.  The court "must determine whether there is any

15  reasonably conceivable state of facts that could provide a rational basis for the

16  classification." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004)

17  ("*RUI*").  "Where there are 'plausible reasons' for legislative action, our inquiry is at an

18  end." *Id.*

19       The deferential nature of these principles to laws that ban certain business practices

20  but not others is well illustrated by *McGowan v. State of Md.,* 366 U.S. 420, 81 S.Ct.

21  1101, 6 L.Ed.2d 393 (1961).  An equal protection challenge was brought against a law

22  that prohibited commercial activity on Sundays.  366 U.S. at 425, 81 S.Ct. at 1104-05.

23  The "Sunday Closing" law exempted from its prohibitions certain goods and certain

24  classes of retailers.  Milk could be sold, but floor wax could not.  366 U.S. at 422-23, 81

25  S.Ct. at 1103-1104.  Operators of amusement parks could sell merchandise that other

26  retailers could not.  *Id.*  The Court found a rational basis for each of these distinctions,

27  and held the law valid under the Equal Protection Clause.  366 U.S. at 428, 81 S.Ct. at

28  1106.

CITY'S NOTICE OF MOTION AND MOTION TO DISMISS

1      That West Hollywood's ban on the sale of fur products also has certain exceptions

2  is likewise supported by a rational basis.  Non-profit organizations are exempt.  Mayfair

3  complains that it is irrational to allow the sale of fur products by any "501(c)(3)

4  charitable entity" "simply because they have a different tax status."  FAC 17:12-25.

5  There is a rational basis for this distinction.  Non-profits do not exist to make money.

6  They exist to do good work.  It is only by virtue of this that non-profits enjoy special tax

7  status.  26 U.S.C. § 501(c)(3).  It would be rational for West Hollywood to conclude that

8  the bad accompanied by allowing non-profits to sell fur products is outweighed by the

9  good work non-profits do for the benefit of the community.  West Hollywood cares about

10  animal welfare.  But it also cares about a host of other public interests served by non-

11  profit organizations.

12      It is similarly rational for the ordinance to exempt the sale of used fur products by

13  second hand stores and private parties.  If a used product of any kind were not allowed to

14  be sold, it is more likely that the owner would simply throw it away.  If the product still

15  had some use, this would be a waste.  It would be rational for West Hollywood to

16  conclude that the bad associated with allowing the sale of used fur products is

17  outweighed by the good that comes from reuse.

18      The Ordinance bans only the sale of fur "wearing apparel," that is, "clothing or

19  covering for any part of the body."  FAC Ex. 1, WHMC § 9.51.020(a)(2), (a)(6), (b).  The

20  Complaint alleges that this is irrational.  If West Hollywood cares so much about

21  suffering endured by fur-bearing animals, Mayfair's argument goes, the ban should have

22  gone *further* and prohibited the sale of *all* fur products, including "furniture and/or home

23  furnishing products."  FAC 19:5-11.  Mayfair's argument is not only disconnected from

24  the problem solving that takes place in the real world, it is also lacking legal support.

25  Simply put, an ordinance is not rendered invalid just because it fails to solve a problem

26  completely.

27      Such legislative decisions are "virtually unreviewable, since the legislature

28      must be allowed leeway to approach a perceived problem incrementally."

23

1  *Beach Communications*, 508 U.S. at 316, 113 S.Ct. 2096. "Reform may

2  take one step at a time, addressing itself to the phase of the problem which

3  seems most acute to the legislative mind. The legislature may select one

4  phase of one field and apply a remedy there, neglecting the others."

5  *RUI*, 371 F.3d at 1155. "A statute is not invalid under the Constitution because it might

6  have gone farther than it did, or because it may not succeed in bringing about the result

7  that it tends to produce." *Joseph E. Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 50-

8  51, 86 S.Ct. 1254, 1263-64, 16 L.Ed.2d 336 (1966), *abrogated on other grounds*, *Healy*

9  *v. Beer Institute, Inc.*, 491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989).

10      It is not irrational for West Hollywood to focus on clothing.  The City could

11  reasonably believe that fur is used more commonly in clothing than in any other object in

12  our daily lives.  As this is the most obvious, glaring aspect of the problem with fur, it is

13  reasonable for the City to direct the Ordinance at clothing.  Law enforcement is not free.

14  Lengthening the list of fur products banned by the Ordinance would have further

15  stretched the City's already limited enforcement resources. *See McGowan*, 366 U.S. at

16  428, 81 S.Ct. at 1106 (rational basis for statute demonstrated in part by the fact that,

17  because of its narrow scope, it had fewer "enforcement problems").  West Hollywood

18  could have reasonably believed that a broader ban was beyond the capacity of the City to

19  enforce.

20      Mayfair contends that the ordinance violates Equal Protection because the City has

21  secret motives.  According to Mayfair, the real reason the ban does not extend to certain

22  classes of organizations and fur products is because the City wants to protect certain

23  businesses and the tax revenue the city enjoys from them. FAC 18:3-13, 19:24-20:9.

24  Even if Mayfair's unfounded speculation were true, it is legally irrelevant.  "[I]t is

25  entirely irrelevant for constitutional purposes whether the conceived reason for the

26  challenged distinction actually motivated the legislature." *RUI*, 371 F.3d at 1155

27  (upholding ordinance imposing a living wage requirement on employers on city property,

28  despite claim that the purpose of the ordinance was to help a unionization campaign).

24

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

1  What matters is whether there is any reasonably conceivable state of facts that could
2  provide a rational basis for the classification.  Because there is such a basis, Mayfair's
3  fourth claim for relief should be dismissed.

4    **E.**    **Mayfair's Fifth Claim for Relief Must be Dismissed because Mayfair**
5            **has No Substantive Federal Claim for Relief**

6        Because Mayfair has failed to state a cognizable claim for relief under the Due
7  Process and Equal Protection Clauses of the Fourteenth Amendment, its fifth claim for
8  relief, for violation of 42 U.S.C. § 1983 necessarily fails.  *Gant v. County of Los Angeles*
9  765 F.Supp.2d 1238, 1249 (C.D. Cal. 2011).  Accordingly, the fifth claim for relief
10  should be dismissed.

11    **F.**    **If the Court Dismisses Some or All of the Federal Claims, But Allows**
12            **Some of the State Law Claims to Proceed, the Court Should Decline to**
13            **Exercise Supplemental Jurisdiction Over the State Law Claims**

14        If the court dismisses some or all of the federal claims, but allows some of the state
15  law claims to proceed, the court should decline to exercise supplemental jurisdiction over
16  the state law claims.  28 U.S.C. § 1367(c).  Mayfair may pursue any surviving state law
17  claims in state court.

18  **V.**    **CONCLUSION**

19        For the forgoing reasons, the City respectfully requests that Mayfair's Complaint
20  be dismissed, without leave to amend.

21  Dated:        November 15, 2013            Respectfully submitted,

25
CHRISTI HOGIN
GREGG KETTLES
GREGG KOVACEVICH
Attorneys for Defendant
City of West Hollywood

**CITY'S NOTICE OF MOTION AND MOTION TO DISMISS**

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1230 Rosecrans Avenue, Suite 110, Manhattan Beach, CA 90266.

     On November 15, 2013, I served the foregoing documents described as:

**[1] NOTICE OF MOTION AND MOTION TO DISMISS; [2] COMPENDIUM OF CERTAIN STATE AUTHORITIES; [3] REQUEST FOR JUDICIAL NOTICE; DECLARATION OF COREY SCHAFFER IN SUPPORT THEREOF; [4] [PROPOSED] ORDER GRANTING DEFENDANT CITY OF WEST HOLLYWOOD'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE;**

on the interested party or parties in this action by placing the original thereof enclosed in sealed envelopes with fully prepaid postage thereon and addressed as follows:

*PLEASE SEE SERVICE LIST ATTACHED*

☐   **VIA U.S.MAIL.**  I enclosed the above described documents in a sealed envelope or package addressed to the person(s) listed above or on the attached; caused such envelope with postage thereon fully prepared to be placed in the United States mail at Los Angeles, California.

> *I am readily familiar with the Jenkins & Hogin, LLP's practice of collection and processing correspondence for outgoing mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon prepaid at Manhattan Beach, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.*
> *in affidavit.*

☒   (TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")).  The foregoing documents will be served by the court via NEF and hyperlink to the document.  On November 15, 2013, I checked the CM/ECF docket for this case and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission.

☒   Service information continued on attached page.

☒   **FEDERAL.**  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service is made.

Executed this 15th day of November, 2013, at Manhattan Beach, California.

     *Wendy Hoffman*
     WENDY HOFFMAN

## SERVICE LIST

*MAYFAIR HOUSE INC., v. THE CITY OF WEST HOLLYWOOD*
*CASE NO. CV-13-07112 GHK (RZx)*

KELLEY DRYE & WARREN LLP          Attorneys for Plaintiff,
Michael J. O'Connor                      *Mayfair House Inc.*
David E. Fink
10100 Santa Monica Boulevard, 23rd Floor
Los Angeles, CA 90067-4008
Tel:  (310) 712-6100
Fax: (310) 712-6199
moconnor@kelleydrye.com
dfink@kelleydrye.com

KELLEY DRYE & WARREN LLP          Attorneys for Plaintiff,
Laurence J. Lasoff                        *Mayfair House Inc.*
Ira T. Kasdan
Joseph D. Wilson
Washington Harbour, Suite 400
3050 K Street, N.W.
Washington, DC 20007
Tel:  (202) 342-8400
Fax: 202) 342-8451
jwilson@kelleydrye.com
Llasoff@kelleydrye.com
ikasdan@kelleydrye.com