1   Corey A. Evans (Cal. Bar. No. 218789)
2   cevans@evansandpage.com
    Geneva Page (Cal. Bar. No. 235633)
3   gpage@evansandpage.com
4   EVANS & PAGE
    2912 Diamond Street #346
5   San Francisco CA 94131
6   ph:  (415) 896-5072
    fax: (415) 358-5855
7
8   Attorneys for *Amicus Curiae*
    The Humane Society of the
9   United States

10              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
11

12  MAYFAIR HOUSE INC., a California     Case No. CV 13-07112-GHK (RZx)
    corporation,
13                                       **THE HUMANE SOCIETY OF THE**
                                         **UNITED STATES' *AMICUS***
14              Plaintiff,               ***CURIAE* BRIEF IN SUPPORT OF**
                                         **DEFENDANT'S MOTION TO**
15        v.                             **DISMISS**

16  THE CITY OF WEST HOLLYWOOD,          DATE:    JANUARY 27, 2014
    CALIFORNIA,                          TIME:    9:30 AM
17                                       JUDGE:  HON. GEORGE H. KING
                Defendant.
18

19

20

21

22

23

24

25

26

27

28

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

# TABLE OF CONTENTS

**INTRODUCTION AND SUMMARY OF ARGUMENT** ................................. 1

**INTEREST OF *AMICUS CURIAE*** ................................................. 1

**ARGUMENT**………… ............................................................................. 2

    **I.**    **LEGAL STANDARD** ............................................................. 2

    **II.**   **THE ORDINANCE IS NOT AN *ULTRA VIRES* ACT** ........ 2

        **A.**    The Ordinance is Not a Fish and Game Regulation ................................................................. 4

    **III.**  **THE ORDINANCE IS NOT PREEMPTED BY STATE LAW** ............................................................. 6

        **A.**    The Ordinance Does Not Duplicate State Law ........... 7
        **B.**    The Ordinance Does Not Contradict State Law ......... 7
        **C.**    The Ordinance Does Not Infringe Upon a Fully Occupied Field ........................................................ 9

    **IV.**  **THE ORDINANCE IS NOT UNCONSTITUTIONALLY VAGUE** ........................ 10

        **A.**    The Ordinance Clearly Defines Fur to Include Shearling Products ..................................................... 12
        **B.**    The Ordinance Clearly Defines Wearing Apparel ... 14
        **C.**    The Municipal Code Clearly Defines Second-Hand Store.................................................................. 16
        **D.**    The Ordinance Clearly Proscribes Online Transactions Shipping from West Hollywood .......... 17

    **V.**   **THE ORDINANCE DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE** ................................. 18

        **A.**    There is a Rational Basis for the Non-Profit Exemption .................................................................. 19
        **B.**    There is a Rational Basis for the Used Fur Exemptions ................................................................ 19

Evans & Page
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

1

2

       **C.**    **There is a Rational Basis for the Clothing/Non-Clothing Distinction**.....................................................20

3

4

    **VI.**    **PLAINTIFF'S SECTION 1983 CLAIM SHOULD BE DISMISSED**...........................................................................22

5

**CONCLUSION**         .....................................................................................22

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Chapman v. Houston Welfare Rights Organization*
441 U.S. 600, 99 S.Ct. 1905, 1908, 60 L.Ed.2d 508 (1979) .............. 22

*City of Philadelphia v. New Jersey*
437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978) ............... 21 fn. 7

*FCC v. Beach Commc'ns, Inc.*
508 U.S. 303, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) ................... 18

*Grayned v. City of Rockford*
408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ........... 11, 13, 15

*Hill v. Colorado*
530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)10, 12, 14, 16, 18

*Minnesota v. Clover Leaf Creamery*
449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) ................. 20, 21

*New Orleans v. Dukes*
427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) ........................ 20

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*
455 U.S. 489, 102 S.Ct. 1186,
71 L.Ed.2d 362 (1982) ............................................... 11, 13, 15, 16, 18

*Ward v. Rock Against Racism*
491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) ........ 10, 15, 16

**Federal Cases**

*Branch v. Tunnell*
14 F.3d 449 (9th Cir. 1994)................................................................ 2

*Daniel v. County of Santa Barbara*
288 F.3d 375 (9th Cir. 2002)............................................................. 2

*Fortuna Enterprises, L.P. v. City of Los Angeles*
    673 F.Supp.2d 1000 (C.D. Cal. 2008)........................................ 2, 18, 19

*Galbraith v. County of Santa Clara*
    307 F.3d 1119 (9th Cir. 2002)............................................................ 2

*Hotel & Motel Ass'n of Oakland v. City of Oakland*
    344 F.3d 959 (9th Cir. 2003)............................................................ 11

*Human Life of Washington, Inc. v. Brumsickle*
    624 F.3d 990 (9th Cir. 2010).................................................. 10, 11, 18

*RUI One Corp. v. City of Berkeley*
    371 F.3d 1137 (9th Cir. 2004).............................................. 18, 21 fn. 7

**California Cases**

*Big Creek Lumber Co. v. County of Santa Cruz*
    38 Cal.4th 1139, 45 Cal.Rptr.3d 21 (Cal. App. 2006) ........................ 6

*Birkenfeld v. City of Berkeley*
    17 Cal.3d 129, 130 Cal.Rptr. 465 (Cal. 1976) ................................ 2, 3

*Cal. Fed. Savings & Loan Ass'n. v. City of Los Angeles*
    54 Cal.3d 1, 283 Cal.Rptr. 569 (Cal. 1991) .................................... 7, 8

*Cal. Veterinary Med. Ass'n v. City of West Hollywood*
    152 Cal.App.4th 536, 61 Cal.Rptr.3d 318 (Cal. App. 2007) . 6, 7, 9, 10

*Candid Enterprises, Inc. v. Grossmont Union High School Dist.*
    39 Cal.3d 878, 218 Cal.Rptr. 303 (Cal. 1985) .................................... 3

*Ex parte Cencinino*
    31 Cal. App. 238, 160 P. 167, 168 (Cal. App. 1916) .......................... 4

*Galvan v. Superior Court*
    70 Cal.2d 851, 76 Cal.Rptr. 642 (Cal. 1969) (*en banc*) ...................... 9

*People v. Mueller*
    8 Cal.App.3d 949, 88 Cal.Rptr. 157 (Cal. App. 1970).................. 9, 10

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

*Sherwin-Williams Co. v. City of Los Angeles*
    4 Cal.4th 893, 16 Cal.Rptr.2d 215,
    844 P.2d 534 (Cal. 1993) (*en banc*) ............................................ 7, 8, 9

*Viva! Int'l. Voice for Animals v. Adidas Promotional Retail
Operations, Inc.*
    41 Cal.4th 929, 162 P.3d 569, 582-3 (Cal. 2007) ............................... 8

## Federal Statutes & Regulations

Code of Federal Regulations
    16 C.F.R. section 301.1 .................................................. 13, 16
    16 C.F.R. section 301.9 ..........................................................

United States Code
    15 U.S.C. section 69 ...................................................... 11, 13
    42 U.S.C. section 1983 ....................................................... 22

Regulations Under the Fur Products Labeling Act
    77 FR 57046 (Sept. 17, 2012) ............................................... 13

Rules of Civil Procedure
    Rule 12(b)(6) ................................................................. 1, 2

## California Constitution & Statutes

California Constitution
    Art. IV
        Section 20 ...................................................... 3, 4, 5, 9
    Art. XI
        Section 5 .......................................................... 2 fn. 1
        Section 7 ........................................................ 2 fn. 1, 6

Fish & Game Code
    Section 2082........................................................... 8 fn. 4,
    Section 3003.1 ............................................................... 8
    Section 3039................................................................ 8, fn. 4, 9
    Section 4002-4004 ........................................................... 8
    Section 4005-4009 ........................................................... 8
    Section 4030-4043 ........................................................... 8
    Section 4303 ........................................................... 8 fn. 4

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Section 4800 ................................................................ 8 fn. 4

Government Code
    Section 37100 ................................................................ 3

**California City Ordinances/Codes**

Fremont
    Municipal Code section 7-229 .................................... 5 fn. 2
    Municipal Code section 12.20.060 .............................. 5 fn. 2

Los Angeles
    Municipal Code ch. IV section 41.54 ........................... 5 fn. 2
    Municipal Code ch. VI section 63.44 ........................... 5 fn. 2
    Municipal Code ch. V sections 53.06.3 ........................ 5 fn. 2

Moreno Valley
    Code section 3.48.040 ................................................ 5 fn. 2
    Code section 9.14.070 ................................................ 5 fn. 2

San Francisco
    Park Code
        Section 5.08 ...................................................... 5 fn. 2
        Section 8 .......................................................... 5 fn. 2
    Police Code
        Section 613.10-1 ............................................... 5 fn. 2
West Hollywood
    Section 3.36.120 ...................................................... 19
    Section 5.88.010 ............................................... 16, 17
    Section 5.88.020 ...................................................... 17
    Section 5.88.030 ...................................................... 17
    Section 9.50.020(d) .................................................. 19
    Section 9.51.010 ............................................ 1, 4, 7, 10, 19
    Section 9.51.020 ................................. 11, 12, 14, 16, 17, 19
    Section 15.60.030 .................................................... 19
    Section 19.64.030 .................................................... 19

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

1

**<u>Miscellaneous Authorities</u>**

2

BLACK'S LAW DICTIONARY 1559 (8th ed. 2004) ........................................... 3

California Attorney General Opinion
    70 Ops.Cal.Atty.Gen 210 (1987) ......................................................... 5

West Hollywood City Council Meeting (Nov. 21, 2011)
    http://weho.granicus.com/Media Player.php?view_id=
    22&clip_id=1587 ............................................................................. 21

3

4

5

6

7

8

*Industry Materials:*

9

Comments Submitted by Deckers Outdoor Corporation in re: Fur
    Rules Review, FEDERAL TRADE COMMISSION, File No. P074201-
    2
        http://www.ftc.gov/os/comments/furlabeling/00016-
    59947.pdf (May 16, 2011) .............................................. 14 fn. 5

Neiman Marcus Group, Fur Labeling Act
    https://www.nmgops.com/PDFCreator/createpdf?content=
    a811ca2b-ddb0-40a6-958b-
    146c15d7a3ba&serverRoot=https://www.nmgops.com
    (Jul. 23, 2013) ................................................................. 14 fn. 6

Nordstrom, Full Line and Rack Supplier Compliance Manual 7
    http://www.nordstromsupplier.com/content/sc_manual/sup
    pliercompliance%20master.pdf (Oct. 8, 2013) ................ 14 fn. 6

*FAQ*, SHEPHERD'S FLOCK SHEARLING PRODUCTS
    http://www.shepherd sflock.com/faq.html
    (last visited Nov. 13, 2013) ...................................................... 13

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Mayfair House, Inc., unhappy with the fruit of democratic process, contends that West Hollywood Municipal Code § 9.51.010, *et seq*. (2011) (the "ordinance") is facially invalid. It claims that the ordinance is an *ultra vires* act, is preempted by state law, is unconstitutionally vague, and violates the Equal Protection Clause of the U.S. Constitution.  As set forth in this brief, which is offered in support of Defendant's Motion to Dismiss, Plaintiff fails to state a claim upon which relief may be granted.

The ordinance is a legitimate exercise of Defendant's plenary legislative power under the California Constitution. Because it is a local business regulation that only incidentally affects California wildlife, it is not preempted by any state fish and game laws. It does not violate the federal Due Process Clause because it is facially clear, uses well-established terms of art, and has been amply clarified by official interpretive guidance issued prior to its date of effect. And all of its classifications are grounded in a rational basis, satisfying the federal Equal Protection Clause.

In light of the arguments set forth herein and in the Defendant's Motion, the Court should dismiss all of Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**INTEREST OF *AMICUS CURIAE***

As set forth more fully in the *amicus*' attached Motion for Leave to File Amicus Brief, *amicus* is the nation's largest animal protection organization. Protecting the welfare of animals is the core mission of *amicus*. That core mission includes eliminating the cruelty associated with the production and sale of fur apparel. *Amicus* has spent considerable time and financial resources developing its expertise in the field of fur production, sales, and regulation. Accordingly, *amicus* is concerned that the relief requested by Plaintiff, if granted, would nullify a constitutionally sound ordinance that helps prevent the needlessly violent treatment

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE 1

of fur-bearing animals and promotes the culture of humaneness characteristic of one of the country's most animal-friendly municipalities.

## ARGUMENT

### I.   LEGAL STANDARD

At the motion to dismiss stage, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Daniel v. County of Santa Barbara*, 288 F.3d 375, 380 (9th Cir. 2002). Although the district court typically cannot consider material beyond the pleadings in ruling on a Rule 12(b)(6) motion, it may take into account exhibits submitted as part of the complaint including, in this case, copies of the ordinance and interpretive guidance documents. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Because this is a facial challenge to the ordinance under the California and United States' Constitutions, it requires no additional development of the facts and is capable of full resolution at the motion to dismiss stage. *Fortuna Enterprises, L.P. v. City of Los Angeles*, 673 F.Supp.2d 1000, 1003-04 (C.D. Cal. 2008).

### II.   THE ORDINANCE IS NOT AN *ULTRA VIRES* ACT

The California Constitution grants cities expansive police powers. Cal. Const. art. XI, § 7 ("A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws").[1] The California Supreme Court has consistently and uniformly held that this broad grant of authority is equal to the plenary power of the state legislature. *See*,

---

[1] The California Constitution recognizes a distinction between charter cities and non-charter or "general law" cities. Cal Const. art. XI, §§ 5, 7. The only legal implication of this distinction is that charter cities enjoy special protection against state preemption when legislating regarding "municipal affairs." *Id.* Both classes of city enjoy the same plenary legislative power discussed in this section. *Id.* That the City of West Hollywood is a general law city is therefore irrelevant for the purpose of evaluating this *ultra vires* claim.

EVANS & PAGE
SAN FRANCISCO

1   *e.g.*, *Birkenfeld v. City of Berkeley*, 17 Cal.3d 129, 140, 130 Cal.Rptr. 465 (Cal.

2   1976) ("A city's police power under this provision…is as broad as the police power

3   exercisable by the Legislature itself"); *Candid Enterprises, Inc. v. Grossmont Union*

4   *High School Dist.*, 39 Cal.3d 878, 885, 218 Cal.Rptr. 303 (Cal. 1985) ("Under the

5   police power granted by the Constitution, counties and cities have plenary authority

6   to govern"). The breadth of municipal powers is reiterated in the California

7   Government Code, which provides: "The legislative body [of a city] may pass

8   ordinances not in conflict with the Constitution and laws of the State or the United

9   States." Cal. Gov't Code § 37100 (2008).  Under this constitutional and statutory

10  scheme, a California municipality's plenary power is subject to only two limits: (1)

11  the municipality cannot legislate outside its territorial boundaries; and (2) municipal

12  legislation is subject to preemption by state law if a conflict exists. *Birkenfeld*, 17

13  Cal.3d at 140.

14      Plaintiff's attempt to characterize the Ordinance as an *ultra vires* act is thus

15  based on a misunderstanding of municipal authority under the California

16  Constitution. An *ultra vires* law is void because it is "beyond the scope of power

17  allowed…by law." BLACK'S LAW DICTIONARY 1559 (8th ed. 2004). But unlike the

18  agencies, commissions, and other political units typically subject to the *ultra vires*

19  doctrine, California cities are not governments of enumerated or delegated powers.

20  *Birkenfeld*, 17 Cal.3d at 140. Their authority does not flow from a narrow legislative

21  authorization. There are no external restraints on the legislative power of California

22  cities, except for the territorial limit, which is not at issue in the instant case. It

23  follows that there can be no such thing as a municipal *ultra vires* ordinance for the

24  same reason that there can be no such thing as a state *ultra vires* statute: both

25  legislatures possess plenary power.

26      Plaintiff nevertheless contends that the ordinance is *ultra vires* under Article

27  IV, Section 20 of the California Constitution. The Section reads, in relevant part:

28

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE 3

(a) The Legislature may provide for division of the State into fish and game districts and may protect fish and game in districts or parts of districts.

(b) There is a Fish and Game Commission of 5 members appointed by the Governor and approved by the Senate… The Legislature may delegate to the commission such powers relating to the protection and propagation of fish and game as the Legislature sees fit.

Cal. Const. art. IV, § 20 ("Section 20"). Plaintiff alleges that the ordinance is *ultra vires* because Section 20 functions to strip local governments of the authority to regulate fish and wildlife and to vest such authority exclusively in the state legislature. First Amended Complaint, ¶ 38. This claim fails because the ordinance is plainly not a fish and game regulation, placing it outside the scope of Section 20.

## A.     The Ordinance is Not a Fish and Game Regulation

The ordinance is valid even accepting Plaintiff's reading of Section 20. The ordinance regulates local commerce in order to "promote community awareness of animal welfare," "foster a consciousness about the way we live in the world," and "create a more humane environment in the city." West Hollywood Municipal Code § 9.51.010(j). It does not encroach, in intent or effect, on the exclusive legislative authority of the Fish and Game Commission ("FGC").

Section 20's grant of authority to FGC is narrow, limited to the "protection and propagation" of the fish and wildlife of the State. Cal. Const. art. IV, § 20. California enacted Section 20 in order to provide for unified state regulation of "taking fish out of the waters of the state and hunting for game" to "restrain their destruction," provide an "ample opportunity for their propagation," and "provide against their ultimate extinction." *Ex parte Cencino*, 31 Cal. App. 238, 241, 160 P. 167, 168 (Cal. App. 1916). Section 20 is a conservation and wildlife management provision, meant to clothe the FGC with the authority necessary to maintain healthy population levels through uniform regulation. *It neither guarantees free markets for products harvested from California wildlife nor preempts all local laws affecting*

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE 4

*them*.

Indeed, Plaintiff's reading of Section 20 – that it preempts local general welfare legislation that only incidentally affects California wildlife – would lead to preposterous results. Municipal animal control departments would no longer have the authority to control the trapping of pest animals in city limits. City restaurant inspectors would be acting *ultra vires* when they shut down a sushi bar for serving mercury-contaminated fish. In fact, a host of current city ordinances from Fremont to Oxnard – many much closer to FGC's core jurisdiction than the ordinance at issue here – would be rendered null by such an expansive reading of Section 20. These include municipal fishing and trapping regulations, permit requirements for the keeping of wild animals, and even ordinances restricting the use and possession of certain classes of firearms in city limits.[2]

In 1987, the California Attorney General's office considered the validity of a Burbank ordinance banning the use of certain dangerous traps. It determined that Section 20 did not constrain the city's police power because the effect of the ordinance on hunting was only incidental. 70 Ops.Cal.Atty.Gen 210 (1987).  If a city

---

[2] *See, e.g.*, San Francisco Park Code §§ 5.08 (banning hunting, fishing, and trapping in city parks), 8 (regulating fishing in Lake Merced); San Francisco Police Code § 613.10-1 ("[F]ifty caliber firearms have no legitimate hunting or sporting purpose in the City and County of San Francisco"); Los Angeles Municipal Code ch. IV § 41.54 (barring fishing and sale of fish obtained from within one mile of public sewer), ch. VI § 63.44 (banning commercial fishing and fishing with spears, spear guns, and multiple poles), ch. V §§ 53.06.3 (banning trapping, requiring permit to trap coyote), 53.38 (requiring permits to keep wild animals); Fremont Municipal Code §§12.20.060(u)-(v) (banning hunting, chasing, snaring, moving, feeding, or other interference with wildlife; banning fishing in unauthorized areas; banning sale of artificially colored rabbits and birds); Oxnard Code § 5-115 (regulating keeping of wild animals), § 7-229 (characterizing fishing in inland waterway as *per se* nuisance); Moreno Valley Code § 3.48.040 (establishing local species habitat conservation plan), 9.14.070 (denying land division permits for uses that substantially injure fish or wildlife).

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE 5

banning the use of an *entire class of traps* was too attenuated from trapping to warrant preemption, then *a fortiori*, banning the sale of fur apparel must be too.

Furthermore, the ordinance's impact on California wildlife – the only animals that FGC has any authority over – is minimal in light of the actual structure of the fur industry. "[It] is not only the stated purpose but also the direct, practical effect of the local legislation that determines its validity." *Cal. Veterinary Med. Ass'n v. City of West Hollywood*, 152 Cal.App.4th 536, 552, 61 Cal.Rptr.3d 318 (Cal. App. 2007) (upholding West Hollywood cat declawing ordinance after considering its actual effect on preempted field). Plaintiff's complaint does not aver that the ordinance would have a significant effect, or any effect at all, on California wildlife.[3] It does not claim that a majority, or even a substantial amount, of the fur sold in West Hollywood comes from animals trapped or farmed in California. Plaintiff would have a more compelling argument if this were the 1850s and it were selling raccoon-skin caps harvested from the San Gabriel mountains. But in today's industrialized, broad-based commercial fur industry, the practical connection between the ordinance and California wildlife is tenuous at best.

### III.   THE ORDINANCE IS NOT PREEMPTED BY STATE LAW

Under its expansive police power under the California Constitution, a city may "make and enforce within its limits all local police, sanitary, and other ordinances and regulations not in conflict with general laws." Cal. Const., art XI § 7. Local ordinances are presumptively valid under this scheme, and the party challenging an ordinance has the burden of demonstrating preemption. *Big Creek Lumber Co. v. County of Santa Cruz*, 38 Cal.4th 1139, 1149, 45 Cal.Rptr.3d 21 (Cal. App. 2006). A

---

[3] Nor could it, because the majority of commercial fur, including almost all mink, fox, and raccoon dog fur, is made from the hides of *farmed* (i.e., domesticated) rather than *trapped* (i.e., wild) animals. This puts most fur-bearing animals outside the reach of FGC.

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE 6

1    conflict giving rise to preemption exists in only three cases: if the local ordinance (1)

2    "duplicates"; (2) "contradicts"; or (3) "enters an area either expressly or impliedly

3    fully occupied by" state law. *Cal. Veterinary Med. Ass'n*, 152 Cal.App.4th at 548

4    (*quoting Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal.4th 893, 897-8, 16

5    Cal.Rptr.2d 215, 844 P.2d 534 (Cal. 1993) (*en banc*)). And "before invalidating a

6    local ordinance as preempted, a court must carefully insure that the purported conflict

7    is in fact a genuine one, *unresolvable short of choosing between one enactment and*

8    *another*." *Cal. Veterinary Med. Ass'n*, 152 Cal.App.4th at 549 (emphasis added)

9    (*quoting Cal. Fed. Savings & Loan Ass'n. v. City of Los Angeles*, 54 Cal.3d 1, 16-17,

10   283 Cal.Rptr. 569 (Cal. 1991)).

11          Plaintiff fails to identify a state law that meets this high standard. While the

12   Complaint recites an impressively long laundry list of Fish and Game Code

13   regulations, none of them are in "unresolvable" conflict – or any conflict at all –with

14   the ordinance. *Id*. Because the ordinance does not duplicate, contradict, or enter a

15   field fully occupied by state law, this claim must fail.

16   **A.    The Ordinance Does Not Duplicate State Law**

17          The ordinance is not duplicative because it is not identical to any California

18   law. "Local legislation is duplicative of general law when it is coextensive

19   therewith." *Sherwin-Williams*, 844 P.2d at 537. Merely covering a similar subject

20   area is insufficient if the local and state laws are "different in scope and substance."

21   *Id*. at 539. Here, none of the state regulations enumerated in the Complaint are

22   identical in scope and substance to the ordinance. Indeed, the City Council explicitly

23   found that "neither the Federal Government, nor the state legislature, has endeavored

24   to regulate the sale of fur products, excluding the sale of dog or cat fur products."

25   West Hollywood Municipal Code § 9.51.010(f).

26   **B.    The Ordinance Does Not Contradict State Law**

27          The ordinance does not contradict the Fish and Game Code regulations

28   because it governs the sale, not the production, of fur. An ordinance contradicts state

---

Evans & Page
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE 7

law when it is literally "inimical thereto." *Sherwin-Williams*, 844 P.2d at 539. Mere tension between the objectives of local and state law does not suffice. In order to be preempted as contradictory, a local law must "prohibit what the [state] statute commands or command what it prohibits," *id*. at 540, such that the conflict between the two is "unresolvable short of choosing between one enactment and another." *Cal. Fed. Savings & Loan Ass'n.*, 54 Cal.3d at 16-17.

The ordinance does not contradict any of the Fish and Game regulations listed by Plaintiff. Several of the regulations that Plaintiff cites regulate the *trapping* of live animals of fur, but not the *sale* of fur apparel addressed by the ordinance. *See* Cal. Fish & Game Code §§ 3003.1 (regulating trapping techniques), 4002-4004 (regulating trapping techniques), 4005-4009 (requiring permits for trapping and for the sale of raw animal pelts), 4030-4043 (requiring a fur dealer license for the sale of raw animal pelts).

But even the regulations closest to the ordinance in subject matter – those providing specific exceptions to the state ban on the sale of wildlife products – can coexist comfortably with it.[4]  Plaintiff overlooks the key difference between *permitting* the sale of fur products ("products…may be purchased or sold") and *mandating* such sale. Cal. Fish & Game Code § 3039(b); *See Viva! Int'l. Voice for Animals v. Adidas Promotional Retail Operations, Inc.*, 41 Cal.4th 929, 952, 162 P.3d 569, 582-3 (Cal. 2007) (finding no preemption of state ban on kangaroo trade despite an exception authorizing it under federal law because state law merely "prohibits what the federal regulation does not prohibit"). The language of the Fish and Game Code is permissive. It merely specifies that fur from "lawfully taken" animals "may be... sold" as an exception to the Code's blanket ban on the sale of wild

---

[4] *See* Cal. Fish & Game Code §§3039(b) (allowing the sale of fur from lawfully trapped animals), 2082 (allowing the sale of endangered species if taken before ESA listing), 4303 (allowing the sale of deer hides), 4800 (allowing the sale of mountain lion parts taken before June 6, 1990).

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE 8

animal parts. *Id*., § 3039(a)-(b). It does not *mandate* the existence of a market for fur products in West Hollywood, or anywhere. No irresolvable contradiction can be reasonably said to exist because simultaneous compliance with state and local law is possible – the ordinance does not "prohibit what [state law] commands or command what [state law] prohibits." *Sherwin-Williams*, 844 P.2d at 540.

### C.   The Ordinance Does Not Infringe Upon a Fully Occupied Field

"The determination of whether the state has fully and completely occupied an area of the subject matter of legislation to the exclusion of local regulation is made by reference to the whole purpose and scope of the legislative scheme." *People v. Mueller*, 8 Cal.App.3d 949, 953, 88 Cal.Rptr. 157 (Cal. App. 1970); *see also Galvan v. Superior Court*, 70 Cal.2d 851, 859-60, 76 Cal.Rptr. 642 (Cal. 1969) (*en banc*). And even if an ordinance legislates in an occupied field, it should still be upheld if the local legislation "only incidentally affects the preempted area." *Mueller*, 8 Cal.App.3d at 953 (upholding a local fishing law despite preemption of field because primary purpose of ordinance was protection of public safety); *Cal. Veterinary Med. Ass'n*, 152 Cal.App.4th at 560-2 (upholding West Hollywood's ban on cat declawing despite preemption of entire field of veterinary medicine because primary purpose of ordinance was animal cruelty prevention).

Here, the state may occupy *a* field, but not the field addressed by the ordinance. Even if the California Constitution grants the state exclusive authority over fish and game regulation, it does not cover the sale of fur apparel. Cal Const. art. IV, § 20. And even if the coverage of hunting and trapping in the Fish and Game Code might be sufficient to render the area "so covered by [state law] as to clearly indicate that the field has become exclusively a matter of state concern," the ordinance is *not a hunting and trapping regulation*. *Sherwin-Williams*, 844 P.2d at 541. Thus, for the same reasons that Section 20 does not render the ordinance *ultra vires*, it also does not render it field preempted. Indeed, the Fish and Game Code does not cover the retail sale of fur apparel *at all*, let alone so thoroughly as to render the

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE 9

entire field preempted.

But even if the ordinance can be construed as entering the field of game regulation, it should still be upheld because it "only incidentally affects the preempted area." *Mueller*, 8 Cal.App.3d at 953. The ordinance is analogous to those challenged in *Mueller* and *Cal. Veterinary Med. Ass'n*, and should be upheld for the same reasons. In *Mueller*, the City of Redondo Beach banned the practice of fishing by "chumming" coastal waters on public health grounds. 8 Cal.App.3d, 949. In *Cal. Veterinary Med. Ass'n*, the city of West Hollywood banned, on animal welfare grounds, the practice of cat declawing. 152 Cal.App.4th, 549. Though these ordinances affected the occupied fields of fishing and veterinary medicine respectively, courts nevertheless found that neither was preempted because each ordinance's effect on the preempted field was incidental to its primary, local purpose. *Mueller*, 8 Cal.App.3d at 953; *Cal. Veterinary Med. Ass'n*, 152 Cal.App.4th at 560-2. Similarly, the purpose of the West Hollywood ordinance is the regulation of local commerce in order to preserve Defendant's ethos as a "Cruelty-Free City." West Hollywood Municipal Code § 9.51.010(j). Any effect on California hunting and trapping is purely incidental, so the ordinance must be upheld.

## IV.   THE ORDINANCE IS NOT UNCONSTITUTIONALLY VAGUE

For a statute to rise to the level of unconstitutional vagueness, it must either fail to "provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or it must "authorize or even encourage arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). "Perfect clarity and precise guidance have never been required" under the Due Process Clause. *Ward v. Rock Against Racism*, 491 U.S. 781, 794, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Accordingly, "vagueness challenges will be rejected when it is 'clear what the ordinance as a whole prohibits.'" *Human Life of Washington, Inc. v. Brumsickle* ("*Brumsickle*"), 624 F.3d

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE
10

990, 1021 (9th Cir. 2010) (*citing Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). And a facial vagueness challenge, like the Plaintiff brings here, must clear an extraordinarily high bar: "[A] party challenging the facial validity of an ordinance on vagueness grounds outside the domain of the First Amendment must demonstrate that 'the enactment is impermissibly vague in *all of its applications*.' " *Hotel & Motel Ass'n of Oakland v. City of Oakland,* 344 F.3d 959, 972 (9th Cir. 2003) (emphasis added) (*quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc*. ("*Hoffman Estates*"), 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)).

The fur ordinance states with abundant clarity the conduct it prohibits: "to sell, import, export, trade, or distribute any fur product by any means anywhere within the City of West Hollywood." West Hollywood Municipal Code § 9.51.020(b). "Fur product" is specifically defined as "any article of wearing apparel made in whole or part of fur." § 9.51.020(a)(2). "Fur" is defined as "any animal skin or part thereof with hair, fleece, or fur fibers attached thereto, either in its raw or processed state, but shall not include such skins as are to be converted into leather or which in processing shall have the hair, fleece, or fur fiber completely removed." § 9.51.020(1). These definitions match word-for-word the definitions of "fur" and "fur product" in the federal Fur Products Labeling Act ("FPLA"), which has regulated the conduct of fur retailers like Plaintiff since 1951. Fur Products Labeling Act, 15 U.S.C. § 69(b), (d) (1951) (amended 2010). The statute's facial clarity and deliberate use of well-established fur industry terms of art thus suffice to make it "clear what the ordinance as a whole prohibits." *Brumsickle*, 624 F.3d at 1020.

Moreover, the Defendant also issued several forms of advance interpretive guidance to businesses affected by the ordinance. *See* Complaint Ex. 2 ("July 2, 2013 Letter from City's Code Compliance Manager to West Hollywood Business Owners"); Complaint Ex. 3 ("April 13, 2013 Letter from City Attorney"). These documents, both of which were issued well in advance of the ordinance's effective

date of September 21, 2013, anticipate and address all of Plaintiff's vagueness claims, dispatching the notion that Plaintiff was denied "a reasonable opportunity to understand what conduct [the ordinance] prohibits." *Hill*, 530 U.S. at 732. It appears that Plaintiff, unsatisfied with the result of the legislative process, now feigns confusion in order to seek a change in policy in the courts.

Plaintiff facially challenges the ordinance as unconstitutionally vague on four grounds: (1) ambiguity as to the inclusion of shearling under the ordinance's definition of "fur"; (2) ambiguity as to the meaning of "wearing apparel" within the ordinance's definition of "fur product"; (3) ambiguity as to the meaning of "second-hand store"; and (4) ambiguity as to the treatment of online transactions. All four claims fail.

## A.    The Ordinance Clearly Defines Fur to Include Shearling Products

Shearling is covered by the plain text of the ordinance. Shearling is the skin from a sheep or lamb that has been tanned and dressed with the fleece left on (sometimes known as "sheepskin").  Plaintiff concedes that shearling falls under the ordinance's definition of fur as "any animal skin or part thereof with hair, fleece, or fur fibers attached thereto." First Amended Complaint, ¶ 57; West Hollywood Municipal Code § 9.51.020(a)(1). But it contends that the exception for "such skins as are to be converted into leather" renders the ordinance vague, because shearling is both "converted into leather" *and* has "fleece…attached thereto." *Id*. This argument fails to account for the temporal language of the ordinance. The definition of fur excludes those skins that "are *to be* converted into leather," evincing an intent to exclude from the ban those skins that currently have hair attached but that will have the hair removed during production. *Id*. (emphasis added). This exception serves the obvious legislative purpose of preventing the ordinance from interfering with the ordinary operations of non-fur industries making use of animal skins. It is meant to allow, for example, the sale of a cowhide that *at the moment of sale* has hair attached that will eventually be removed during the leather production process. Shearling, by

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE
12

1   contrast, is not "to be" converted into anything – it is in its final state, with fleece

2   attached, at the point of sale.

3         In any case, these interpretive exercises are unnecessary because any alleged

4   ambiguity in the ordinance's treatment of shearling was conclusively resolved by

5   interpretive guidance issued by Defendant months before the ordinance's effective

6   date. The July 2, 2013 letter from the City Code Compliance Manager states that "the

7   ban applies to shearling products, as the skin for such products is tanned with the

8   wool still attached." Complaint Ex. 2, 2. And in his April 13, 2013 letter, the City

9   Attorney writes that "if the shearling garment is made with skin that was tanned with

10  the wool still on the skin, then the garment would constitute a 'fur product' for

11  purposes of the ordinance." Complaint Ex. 3, 2. Plaintiff's decision to ignore this

12  timely, reasonable, and crystal-clear official interpretation and instead pursue a facial

13  vagueness challenge must be rejected, because "in evaluating a facial [vagueness]

14  challenge…a federal court must, of course, consider any limiting construction that

15  a[n]…enforcement agency has proffered." *Hoffmann Estates*, 455 U.S. at 495 n.5;

16  *see also Grayned*, 408 U.S. at 110.

17        Finally, the longstanding coverage of shearling under the federal Fur Products

18  Labeling Act ("FPLA") renders the Plaintiff's vagueness claim completely

19  implausible. The FPLA, which has regulated the trade in fur apparel since 1951, uses

20  the *exact same* definition of "fur" as the ordinance and served as the model for its

21  language. 15 U.S.C. § 69(b). It is well-established that the FPLA's definition of fur

22  encompasses shearling, requiring it to be labeled as fur from "sheep" or "lamb." *See,*

23  *e.g.*, Regulations Under the Fur Products Labeling Act, 77 FR 57046 (Sept. 17, 2012)

24  (public comment from UGG parent corporation Deckers Outdoor Corporation); 16

25  C.F.R. § 301.9(b) (1961) (FTC regulation of "Shearling Lamb" under FPLA naming

26  conventions); *FAQ*, SHEPHERD'S FLOCK SHEARLING PRODUCTS, http://www.shepherd

27  sflock.com/faq.html (last visited Nov. 13, 2013) (statement from shearling

28  manufacturer that "the FTC classifies shearling as a fur"). Shearling manufacturers

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE
13

and retailers, many of whom are either suppliers[5] or competitors[6] of Plaintiff, understand this and typically have policies in place to ensure compliance. It therefore strains credibility to claim that Plaintiff, as a retailer subject to FPLA liability for any mislabeling or false advertising of the shearling products it sells, could be anything but certain about the status of shearling under the ordinance's identical language. Retailers like Plaintiff need only understand a simple concept: if the product is subject to FPLA regulation, it cannot be sold in West Hollywood. To the extent that Plaintiff remains confused, it can easily check the product for FPLA-mandated labels or ask its supplier.

### B.    The Ordinance Clearly Defines Wearing Apparel

The ordinance defines wearing apparel as "any articles of clothing or covering for any part of the body." West Hollywood Municipal Code § 9.51.020(6). This common-sense definition plainly "provide[s] people of ordinary intelligence a reasonable opportunity to understand" what does and does not count as wearing apparel. *Hill*, 530 U.S. at 732.  Boots are wearing apparel, handbags are not; hats are wearing apparel, rugs are not. *See* Complaint Ex. 2, 2.

---

[5] Including Deckers Outdoor Corporation, owner of the UGG brand, whose shearling boots form the basis of Plaintiff's vagueness claim (as well as fashion *faux pas* worldwide). *See* Comments Submitted by Deckers Outdoor Corporation in re: Fur Rules Review, FEDERAL TRADE COMMISSION, File No. P074201-2, http://www.ftc.gov/os/comments/furlabeling/00016-59947.pdf (May 16, 2011).

[6] Including Nordstrom, Nordstom Rack, Neiman Marcus, and Bergdorf Goodman. Nordstrom, Full Line and Rack Supplier Compliance Manual 7, http://www.nordstromsupplier.com/content/sc_manual/suppliercompliance%20master.pdf (Oct. 8, 2013) ("Nordstrom requires that all requirements of the Fur Products Labeling Act be met for all fur products (*including shearling*) regardless of value") (emphasis added); Neiman Marcus Group, Fur Labeling Act, https://www.nmgops.com/PDFCreator/createpdf?content=a811ca2b-ddb0-40a6-958b-146c15d7a3ba&serverRoot=https://www.nmgops.com (Jul. 23, 2013).

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE
14

1    Plaintiff attempts to manufacture ambiguity in this clear definition by pointing

2    to the marginal example of a blanket with sleeves attached, or "Snuggie," made out

3    of fur. First Amended Complaint, ¶ 58.  But the statute is not ambiguous as to the

4    inclusion of Snuggies. Though cleverly marketed as "wearable blankets," a Snuggie

5    is functionally a bathrobe in reverse. As a sleeved garment meant to be worn as an

6    "article of clothing" or a "covering" for the body, it plainly meets the statute's

7    definition of wearing apparel for the same reason a bathrobe would.

8        In any case, this is an irrelevant complaint because Plaintiff does not and has

9    never engaged in the sale of fur Snuggies. "A plaintiff who engages in some conduct

10   that is clearly proscribed cannot complain of the vagueness of the law as applied to

11   others. A court should therefore examine the complainants conduct before analyzing

12   other hypothetical applications of the law." *Hoffman Estates*, 455 U.S. at 495.

13   Perhaps it is unfair to hold this against Plaintiff, since selling fur Snuggies would be

14   difficult as they *do not exist*. A vagueness claim premised on a hypothetical sleeved

15   blanket made out of fur was precisely the type of frivolous argument that the

16   Supreme Court had in mind when it held that "perfect clarity and precise guidance

17   have never been required" under the Due Process Clause. *Rock Against Racism*, 491

18   U.S. at 794. That Plaintiff had to reach so far for even an arguably marginal case

19   speaks more to the ordinance's clarity than it does to its ambiguity.

20       But even if the specter of the fur Snuggie somehow does raise interpretive

21   questions serious enough to warrant constitutional scrutiny, these questions were

22   settled by the City Attorney months before the ordinance went into effect. In his letter

23   of April 13, 2013, he clarified that a standard blanket would not be considered

24   "wearing apparel" but a sleeved blanket would. Complaint, Ex. 3, 3. As discussed

25   *supra*, this *ex ante* official interpretation must be taken into account when evaluating

26   Plaintiff's vagueness claim. *Hoffmann Estates*, 455 U.S. at 495 n.5; *see also*

27   *Grayned*, 408 U.S. at 110.

28

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

Finally, as with the definition of "fur" discussed above, the ordinance defines "wearing apparel" in exactly the same terms as the FTC does under its long-standing regulations under the FPLA. 16 C.F.R. § 301.1(b) (2000). Plaintiff cannot credibly claim any genuine uncertainty as to the meaning of "wearing apparel" as they have been subject to the FTC's identically worded definition for as long as they have been selling fur. And again, any lingering confusion as to whether an item is "wearing apparel" is easily settled by a cursory check for FPLA-mandated labels or an inquiry with the FPLA-regulated supplier.

## C.   The Municipal Code Clearly Defines Second-Hand Store

The ordinance contains an exemption for the sale of used fur products by a "second-hand store, including a pawn shop." West Hollywood Municipal Code § 9.51.020(c)(3). The ordinance does not further define "second-hand store" because it does not need to, for two reasons. First, the plain, common meaning of "second-hand store" suffices to "provide people of ordinary intelligence a reasonable opportunity to understand" whether or not their store is exempt. *Hill*, 530 U.S. at 732. While it might be difficult to nail down with mathematical certainty exactly how much second-hand apparel a retailer must sell to qualify as a "second-hand store," that is not what the Due Process Clause requires. *See Rock Against Racism,* 491 U.S. at 794. And it certainly does not require more than "ordinary intelligence" to determine that, as a high-end retailer of new luxury goods, Plaintiff itself is unambiguously *not* a second-hand store under any reasonable interpretation, and thus cannot bring a vagueness challenge on behalf of retailers that are. *Hoffman Estates*, 455 U.S. at 495 ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to others").

Further, second-hand stores are defined elsewhere in the West Hollywood Municipal Code, rendering a definition in the challenged ordinance duplicative and unnecessary. The Code defines a "secondhand dealer" as "any person whose business is primarily that of engaging in the business of buying, selling, trading, taking in

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE
16

pawn, accepting for sale or consignment, accepting for auctioning, or auctioning secondhand tangible personal property." West Hollywood Municipal Code § 5.88.010(1). It imposes special licensing and reporting requirements for businesses that meet this definition. *Id.*, §§ 5.88.010 (licensing), 5.88.020 (licensing), 5.88.030 (reporting).   It follows that businesses that meet this definition and comply with these requirements are "second-hand stores" for the purpose of the fur ordinance. Plaintiffs cannot fairly claim a lack of reasonable guidance as to what the City considers to be a "second-hand store" given the existing Code language applicable to these entities.

### D.     The Ordinance Clearly Proscribes Online Transactions Shipping from West Hollywood

The ordinance bars the sale, import, export, trade, or distribution of fur products "*by any means anywhere* within the City of West Hollywood." West Hollywood Municipal Code § 9.51.020(b). This provision by its plain terms does not distinguish among different means of commerce. It clearly treats transactions in brick-and-mortar stores the same as internet sales, so long as they take place "within the City of West Hollywood." *Id.*

Nevertheless, Plaintiff contends that the ordinance is vague as to whether it covers online transactions in which fur apparel "is shipped a place [sic] located outside the city or in which the online purchaser is located at a place outside the city." First Amended Complaint, ¶ 60 (this Brief assumes that the missing preposition is "from"). But the ordinance is clear on both points. Fur products shipped from outside the city and delivered into the city would not violate the ordinance (unless they are "imported" for sale). Fur products shipped from inside the city and delivered out of the city would violate the ordinance, as it would constitute "distribution" from "within the City of West Hollywood" to an outside consumer.

As with Plaintiff's other vagueness claims, any potential ambiguity in the ordinance's text has already been resolved by official interpretive guidance.

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE
17

1   Complaint Ex. 2, 2 ("Businesses located within West Hollywood are prohibited from

2   selling fur apparel online and shipping from a West Hollywood location");

3   Complaint Ex. 3, 3-4 ("[A] retailer who ships a fur product *from* a location in the

4   City would be in violation of the ordinance…if the fur product was shipped by a

5   distributor from a location outside the City *to* the City, the ordinance would not apply

6   to the distributor…").

7          In summary, Plaintiff's vagueness claim cannot be sustained in light of the

8   ordinance's facial clarity, the City Council's deliberate use of well-established

9   language originating in the FPLA, and the ample interpretive guidance offered by

10  City officials. Dismissal is proper because it is "clear what the ordinance as a whole

11  prohibits" and the ordinance plainly "provide[s] people of ordinary intelligence a

12  reasonable opportunity to understand what conduct" it covers. *Brumsickle*, 624 F.3d

13  at 1021; *Hill*, 530 U.S. at 732. Plaintiff fails to establish a meaningful ambiguity in

14  the ordinance, let alone vagueness rising to the egregious level required to prove

15  facial unconstitutionality. *Hoffman Estates*, 455 U.S. at 495("A party challenging the

16  facial validity of an ordinance on vagueness grounds…must demonstrate that 'the

17  enactment is impermissibly vague in *all of its applications*'") (emphasis added).

### V. <u>THE ORDINANCE DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE</u>

20         Plaintiff concedes that the ordinance does not implicate any constitutionally

21  suspect classes. First Amended Complaint, ¶ 66. Its Equal Protection Clause

22  challenge must therefore be evaluated under the highly deferential "rational basis"

23  standard. *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004). A

24  local ordinance will survive rational basis review if "any reasonably conceivable state

25  of facts...could provide a rational basis for the classification." *Id*. (*quoting FCC v.*

26  *Beach Commc'ns, Inc.*, 508 U.S. 303, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)).

27  And "in making this determination, the Court need not determine the actual motive of

28  the City council in passing the Ordinance or engage in fact-finding with regard to the

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE
18

1  rationality of conceivable motives." *Fortuna Enterprises, L.P.*, 673 F.Supp.2d at

2  1013; *see also RUI One*, 371 F.3d at 1155. There is a rational basis for each of the

3  classifications challenged by Plaintiff. Accordingly, this claim must be dismissed.

### A.   There is a Rational Basis for the Non-Profit Exemption

5  Plaintiff contends that there is no rational basis for the ordinance's exemption

6  for fur products sold by nonprofit organizations. First Amended Complaint, ¶ 67(a);

7  West Hollywood Municipal Code § 9.51.020(c)(1). This is false. Plaintiff itself

8  articulates a perfectly acceptable rational basis in the Complaint: to avoid interfering

9  with charity fundraiser events that often take place at hotels in West Hollywood. First

10  Amended Complaint, ¶ 70. If that does not suffice, other rationales abound. First,

11  given the ordinance's stated purpose of "creat[ing] a more humane environment in

12  the City," the Council may have concluded that the sale of fur for *profit* is ethically

13  distinguishable from the sale of fur for a *charitable purpose*. West Hollywood

14  Municipal Code § 9.51.010(k). Or perhaps the City simply wished to avoid burdening

15  typically cash-strapped nonprofits with the cost of regulatory compliance. In any

16  case, the ordinance's nonprofit exemption finds ample precedent in the City's

17  treatment of nonprofits in other regulatory areas. *See, e.g., id.*, §§ 15.60.030

18  (exemption for nonprofits in polystyrene food packaging ban), 19.64.030 (exemption

19  for nonprofits in land use development fee assessment), 3.36.120 (exemption for

20  nonprofits from business license tax), 9.50.020(d) (exemption for nonprofits from

21  retail dog and cat sales ban). There are many legitimate reasons for treating

22  nonprofits differently than for-profit entities, and the ordinance is just one more

23  instance of a legislative classification commonly invoked in municipal law.

### B.   There is a Rational Basis for the Used Fur Exemptions

25  Plaintiff next argues that the ordinance's exemption of used fur sales at

26  second-hand stores or by private parties lacks a rational basis. First Amended

27  Complaint, ¶ 67(b), (c). Plaintiff evidently fails to see the economic purpose of the

28  used/new fur distinction. The market for cruelly-produced animal pelts is driven by

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE
19

1   sales of new fur apparel. Because the ordinance seeks to promote animal welfare, it is
2   perfectly logical to ban only the commercial activity that generates economic demand
3   for the inhumane products. If the City Council found "blood diamonds" to be
4   ethically problematic, it would make sense to ban the sale of new "blood diamond"
5   rings but not used ones, because the resale of used rings does not increase (and
6   indeed might *reduce*) demand for newly mined diamonds. The same logic applies
7   here. The distinction might also be justified by the fact that second-hand stores are
8   typically operated by churches and charities, which the City might want to avoid
9   interfering with for the reasons articulated above. And finally, the City Council may
10  have simply found new furs to be ethically distinct from used furs because they are
11  more readily characterized as a luxury item.

12          **C.      There is a Rational Basis for the Clothing/Non-Clothing Distinction**

13          Plaintiff finally objects to the City Council's decision to only bar the sale of fur
14  apparel rather than all fur products. First Amended Complaint, ¶ 67(d). While it may
15  be true that the fur used for furniture is just as inhumane and unethical as the fur used
16  for clothing, this fact is of no legal significance. It is well established that "a
17  legislature need not strike at all evils at the same time or in the same way, and that a
18  legislature may implement its program step by step…adopting regulations that only
19  partially ameliorate a perceived evil and deferring complete elimination of the evil to
20  future regulations." *Minnesota v. Clover Leaf Creamery*, 449 U.S. 456, 466, 101
21  S.Ct. 715, 66 L.Ed.2d 659 (1981) (*quoting New Orleans v. Dukes*, 427 U.S. 297, 303,
22  96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)). Just as the "Equal Protection Clause [did] not
23  deny the State of Minnesota the authority to ban one type of milk container conceded
24  to cause environmental problems, merely because another type…is permitted to
25  continue in use" in *Clover Leaf*, so too does the Equal Protection Clause not bar the
26  City from banning one class of fur products merely because another class is still

27
28

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE
20

1    allowed.[7] *Id.*

2    Furthermore, there are many legitimate reasons for the City to treat fur apparel

3    differently than other fur products. The City Council may have reasonably

4    determined that because clothing represents a larger market share than other fur

5    products, or because the fashion world has historically been the nexus of the fur

6    debate, it should be addressed first. Perhaps the availability of high-quality faux fur

7    led the Council to believe that fur clothing is especially unnecessary. *See* West

8    Hollywood Municipal Code § 9.51.10(j) (legislative finding that "the wide array of

9    alternatives for [fur] fashion and apparel" renders animal cruelty unjustified). Or it

10   may have been motivated by the elegantly simple observation made by

11   Councilmember Duran during the bill's second hearing before the City Council: West

12   Hollywood is warm year-round, so there is frankly no need for fur clothing. West

13   Hollywood City Council Meeting (Nov. 21, 2011) (statement of Councilmember and

14   Mayor *pro tempore* Duran), http://weho.granicus.com/Media Player.php?view_id=

15   22&clip_id=1587.

16

17

18   _____

19   [7] On this point, Plaintiff alleges (rather conspiratorially) that the clothing/non-
     clothing distinction was meant to protect the Pacific Design Center in a show
20   of "economic protectionism." First Amended Complaint, ¶ 75-78.  It is indeed
     true that "where simple economic protectionism is effected by state legislation,
21   a virtually *per se* rule of invalidity has been erected," though this rule typically
     operates through the Dormant Commerce Clause, not the Equal Protection
22   Clause. *City of Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531,
     57 L.Ed.2d 475 (1978) (finding impermissible protectionism when statute
23   penalized out-of-state producers). Plaintiff does not allege a Dormant
     Commerce Clause violation in the complaint. And in any case, this argument
24   fails because (1) the actual motives of the City Council are irrelevant if other
25   rational bases are available, *RUI One*, 371 F.3d at 1155, and (2) treating the
     Pacific Design Center (an *interior design* facility) differently than Plaintiff (an
26   *apparel* retailer) does not offend the Equal Protection Clause under the rule of
27   *Clover Leaf*, 449 U.S. at 466, because they operate in different industries.
28

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE
21

# VI.   PLAINTIFF'S SECTION 1983 CLAIM SHOULD BE DISMISSED

Though Plaintiff frames it as separate legal claim, 42 U.S.C. Section 1983 does not provide independent grounds for relief, only a remedy for other federal constitutional violations. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 601, 99 S.Ct. 1905, 1908, 60 L.Ed.2d 508 (1979) ("One cannot go into court and claim 'a violation of § 1983,' for § 1983 by itself does not protect anyone against anything, but simply provides a remedy"). Because Plaintiff asserts no colorable federal constitutional claim, it cannot invoke Section 1983.

# CONCLUSION

For the reasons stated above, *amicus curiae* Humane Society of the United States respectfully requests that Defendant's Motion to Dismiss be granted.

Dated:  November 29, 2013

Respectfully submitted,

By:/s/ Corey Allen Evans

Corey Allen Evans
Attorney for *Amicus Curiae*
The Humane Society of the United States

EVANS & PAGE
SAN FRANCISCO

HSUS AMICUS BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
*Mayfair House, Inc. v. City of West Hollywood*
U.S.D.C. Central District of CA Case No. CV 13-07112-GHK (RZx)

PAGE
22