KELLEY DRYE & WARREN LLP
  Michael J. O'Connor (State Bar No. 090017)
  David E. Fink (State Bar No. 169212)
10100 Santa Monica Boulevard, Twenty-Third Floor
Los Angeles, California 90067-4008
Telephone:   (310) 712-6172
Facsimile:   (310) 712-6199
moconnor@kelleydrye.com
dfink@kelleydrye.com

KELLEY DRYE & WARREN LLP
  Laurence J. Lasoff (*Pro Hac Vice*)
  Ira T. Kasdan (*Pro Hac Vice*)
  Joseph D. Wilson (*Pro Hac Vice*)
Washington Harbour, Suite 400
3050 K Street, N.W.
Washington, DC  20007
Telephone:   (202) 342-8400
Facsimile:   (202) 342-8451
llasoff@kelleydrye.com
ikasdan@kelleydrye.com
jwilson@kelleydrye.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MAYFAIR HOUSE INC., a California Corporation<br><br>                    Plaintiff,<br><br>          v.<br><br>THE CITY OF WEST HOLLYWOOD, CALIFORNIA<br><br>                    Defendant. | Case No. CV 13-07112 GHK (RZx)<br><br>**OPPOSITION OF PLAINTIFF MAYFAIR HOUSE INC. TO MOTION TO DISMISS OF DEFENDANT CITY OF WEST HOLLYWOOD**<br><br>Hearing Date:  Jan. 27, 2014, 9:30 a.m. |

DC01\WilsJo\524918.7

PLAINTIFF MAYFAIR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...............................................................iii

I.   INTRODUCTION ....................................................................1

II.  ARGUMENT .........................................................................4

    A.   Mayfair States A Claim That

        The Ordinance Is A Void, *Ultra Vires* Act

        Under The California Constitution, Art. IV, § 20(a) .......................4

        1.   Section 20(a) reserves to the Legislature

            the exclusive power in California to pass legislation

            related to wild animals. ............................................4

        2.   The Legislature's constitutional power over wildlife

            includes the power to regulate the sale of products

            made from wild animals. .........................................5

        3.   The Ordinance is a void, *ultra vires* act under § 20(a). ............6

            a.   The Ordinance's effect. .....................................6

            b.   The Ordinance's primary purpose. .........................8

    B.   Mayfair States A Claim For Relief That

        The Ordinance Is Void Under The California Constitution

        On Grounds Of Preemption .................................................10

        1.   Mayfair has stated a claim

            for preemption by duplication. ...................................10

        2.   Mayfair has stated a claim

            for preemption by contradiction. ..................................12

        3.   Mayfair has stated a claim for

            preemption by field occupation. ..................................14

///

///

i

1       C.    Mayfair States A Claim For Relief That The Ordinance

2           Is Void For Vagueness Under The Fourteenth Amendment's

3           Due Process Clause ...……………………………………………17

4             1.    If part of the Ordinance is invalid under state law, it is

5                  void for vagueness under the Due Process Clause in *toto*. …….18

6             2.    Mayfair has stated a valid facial Due Process challenge………18

7             3.    Mayfair has stated a valid as-applied

8                  Due Process challenge. …….………………………………21

9       D.    Mayfair States A Claim For Relief

10          Under The Equal Protection Clause …………………………….21

11      E.    The City's Remaining Challenges Should Be Rejected ……………24

12  III.    CONCLUSION …………………………………………………25

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2  ("A - Tab [#]" indicates that a copy of the item

3  is included in Mayfair's accompanying Appendix)

4  <u>**Page(s)**</u>

5  <u>Cases</u>

6 *Abbott v. City of Los Angeles,*

7  53 Cal.2d 674, 3 Cal.Rptr. 158 (1960) ……………………………………10

8 *Acri v. Varian Assocs.,*

9  114 F.3d 999 (9th Cir. 1997) ..……………………………………………35

10 *Amer. Fin. Servs. Assoc. v. City of Oakland,*

11  34 Cal.4th 1239, 23 Cal.Rptr.3d 453 (2005) …………………………*passim*

12 *Assoc. de Educ. v. Echevarria-Vargas,*

13  385 F.3d 81 (3d Cir. 2004) ………………………………………….....7

14 *Calif. Veterinary Med. Assn. v. City of West Hollywood,*

15  152 Cal.App.4th 536, 61 Cal.Rptr.3d 318 (2007) ..…………………………17

16 *City of Cleburne v. Cleburne Living Ctr.,*

17  473 U.S. 432, 446,105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) …………..21, 22

18 *City of Riverside v. Inland Empire,*

19  56 Cal.4th 729, 156 Cal.Rptr. 409 (2013) …..………………….…...13-14

20 *Contest Promotions, LLC v. City and Cnty. of San Francisco,*

21  No. C 09–04434 SI, 2010 WL 1998780 (N.D. Cal. 2008) [A – Tab 1] ……..19

22 *Cooper v. Clark County,*

23  519 F. App'x 479 (9th Cir. 2013) [A – Tab 2]   ………………………17, 21

24 *Doe v. San Francisco,*

25  136 Cal.App.3d 509, 186 Cal.Rptr. 380 (1982) …………………………15

26 *Ex parte Blaney,*

27  30 Cal.2d 643, 184 P.2d 892 (1947) ..………………………………………18

28

PLAINTIFF MAYFAIR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Ex parte Cencinino,*
    31 Cal.App. 238, 160 P. 167 (1916) ............................................4, 5, 15

*Ex Parte Daniels,*
    183 Cal. 636, 192 P. 442 (1920) ....................................................13

*Ex Parte Maier,*
    103 Cal. 476, 37 P. 402 (1894) ......................................................6

*Ex parte Makings,*
    200 Cal. 474, 253 P. 918 (1927) ...............................................4, 5, 6

*Ex parte Prindle,*
    7 Cal.Unrep. 223, 94 P. 871 (Cal. Dist. Ct. App. 1905) ..........................5

*F.S. Royster Guano Co. v. Virginia,*
    253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920) ...............................22

*Federal Express v. Cal. P.U.C.,*
    No. C–87–4891 MHP, 1993 WL 399380
    (N.D. Cal. Sept. 23, 1993) [A – Tab 3] .........................................18

*Fireman's Fund Ins. Co. v. City of Lodi,*
    302 F.3d 928 (9th Cir. 2002) ......................................................12

*Great Western Shows, Inc. v. County of Los Angeles,*
    27 Cal.4th 853, 118 Cal.Rptr.2d 746 (2002) .............................11, 12, 13

*Humanitarian Law Project v. Reno,*
    9 F. Supp.2d 1176 (C.D. Cal. 1998) ..............................................17

*In re Loretizo,*
    59 Cal.2d 445, 30 Cal.Rptr. 16 (1963) ...........................................16

*In re Portnoy,*
    21 Cal.2d 237, 131 P.2d 1 (1942) .........................................11, 12, 18

*Isaac v. City of Los Angeles,*
    66 Cal.App.4th 586, 77 Cal.Rptr.2d 752 (1998) .............................14, 15

PLAINTIFF MAYFAIR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Merrifield v. Lockyear,*
     547 F.3d 978 (9th Cir. 2008) ....................................................21, 22, 24

*Northern Cal. Psychiatric Soc. v. City of Berkeley,*
     178 Cal.App.3d 90, 223 Cal.Rptr. 609 (1986) ......................................13

*People v. Mueller,*
     8 Cal.App.3d 949, 88 Cal.Rptr. 157 (1970) ........................................17

*Sherwin–Williams Co. v. City of Los Angeles,*
     4 Cal.4th 893, 16 Cal.Rptr.2d 215 (1993) ...........................................12

*St. Joseph Abbey v. Castille,*
     712 F.3d 215 (5th Cir. 2013) ..............................................................24

*Water Quality Assoc. v. County of Santa Barbara,*
     44 Cal.App.4th 732, 52 Cal.Rptr.2d 184 (1996) ...................................13

*Young v. Dept. of Fish & Game,*
     124 Cal.App.3d 257, 177 Cal.Rptr. 247 (1981) ................................4, 5

### United States Constitution

Fourteenth Amendment, Due Process Clause .........................................17-21

Fourteenth Amendment, Equal Protection Clause .................................21-24

### Federal Statutes

28 U.S.C. § 1367(c) ................................................................................25

42 U.S.C. § 1983 ...................................................................................24

### California Constitution

Article IV, § 20(a) ...........................................................................*passim*

Article XI, § 7 ................................................................................4, 10

### California Statutes

1901 California Statutes, p. 948 ...............................................................14

2011 California Legislative. Service 524 (West 2013) ...................................8

///

PLAINTIFF MAYFAIR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

California Fish & Game Code (West 2014)

    §§ 1-16541 ...................................................................................16

    § 2080 ...........................................................................................10

    § 2116 .............................................................................................2

    § 3039(a) ........................................................................................16

    § 3039(b) ...................................................................................12, 16

    § 3039(c) ........................................................................................16

    § 4303 ...........................................................................................12

    § 4800 ...........................................................................................10

California Penal Code § 653p (West 2014) .............................................10

**California Code of Regulations**

Title 14, div. 1 (2012) .....................................................................16

Title 14 § 671 (2012) .........................................................................2

**California Attorney General Opinions**

58 Ops. Cal. Atty. Gen. 519, 1975 Cal. AG LEXIS 99 (1975) [A – Tab 4] ..........15

65 Op. Cal. Atty. Gen. 648, 1982 WL 156020 (1982) [A – Tab 5] ..................5, 6

70 Ops. Cal. Atty. Gen. 210, 1987 WL 247263 (1987) [A – Tab 6] ..............2, 6, 7

**West Hollywood Municipal Code**

§§ 9.051.010-9.051.020 (Ordinance No. 11-877) [A – Tab 7] ...................*passim*

§§ 1.08.010(e)-(g)  [A – Tab 8] ............................................................1

**Other Authorities**

Erwin H. Bulte, *et al.*, *Economic Incentives and Wildlife Conservation* (Oct. 27,

    2003) (paper) [A- Tab 9]...............................................................8

Brian Yablonski, *Bisonomics*, 25 PERC Reports:  The Magazine of Free Market

    Environmentalism No. 3 (Fall 2007) [A – Tab 10] .............................8

PLAINTIFF MAYFAIR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1   Plaintiff Mayfair House Inc. ("Mayfair"), by its attorneys, Kelley Drye &

2   Warren LLP, respectfully submits this Opposition to the Motion to Dismiss of

3   Defendant, the City of West Hollywood ("West Hollywood" or the "City").

## I. INTRODUCTION

5   Subject to some exemptions, West Hollywood Ordinance No. 11-877 (the

6   "Ordinance") makes "it unlawful for anyone to sell, import, export, trade or

7   distribute" (collectively, "sell") any "wearing apparel" made wholly or partly of the

8   fur of any animal (except dogs or cats) anywhere in the City. *See* Ex. 1 to the First

9   Amended Complaint ("Complaint" or "Compl.") [Dckt. # 21]; West Hollywood

10   Muni. Code ("WHMC") §§ 9.51.010-9.51.020. Violators of the Ordinance face

11   administrative penalties and fees, and criminal sanctions of fines, jail time, or both.

12   *Id.* §§ 1.08.010(e)-(g). The Ordinance affects Mayfair because it is a West

13   Hollywood retailer that sells, *inter alia*, fur clothing products. Compl. ¶¶ 32-35.

14   Mayfair's Complaint asserts four causes of action as to why the Ordinance

15   should be declared void and enjoined: for violation of the California Constitution

16   (First and Second Claims for Relief), and for violations of the Due Process Clause

17   (Third Claim for Relief) and the Equal Protection Clause (Fourth Claim for Relief)

18   of the Fourteenth Amendment.[1] By way of its Motion to Dismiss under Fed. R. Civ.

19   P. 12(b)(6), the City contends that none of these causes of action states a claim for

20   which relief can be granted. The City is wrong.

21   The Complaint is based on cognizable legal theories under established law, or

22   otherwise raises fact issues which must be decided in Mayfair's favor, thus

23   precluding dismissal at this early stage of the proceedings. To summarize:

24   **The First Claim for Relief** states a valid cause of action on the ground that

25   the City's passage of the Ordinance was *ultra vires* due to California Constitution,

26   Art. IV, § 20(a) ("§ 20(a)"). Section 20(a) generally vests the state Legislature

27
28   [1] Mayfair also states a Fifth Claim for Relief under 42 U.S.C. § 1983, discussed herein.

1   ("Legislature") with the *exclusive* power – to the exclusion of local governments –

2   to pass laws related to the subject of wild animals in California.  Contrary to the

3   City's assertion that § 20(a) is only "about what happens in the woods, and not what

4   happens in town," Mem.[2] at 5, the power over wild animals that § 20(a) reserves to

5   the Legislature includes the power to regulate *commercial activity pertaining to* the

6   sale of wild animal *products outside the wild* in order to protect fish and wildlife *in*

7   *the wild*.  Most animals used for fur clothing, *e.g.*, the fox, beaver, mink, and coyote,

8   are considered wild animals under California law, regardless of whether they are

9   taken from the wild, or are born and raised on farms for their fur.  Compl. ¶ 13.  *See*

10   *also* CAL. FISH & GAME CODE ("CFGC") § 2116 (West 2014); CAL. CODE REGS. tit.

11   14, § 671 (2012).

12         The Ordinance is *ultra vires* not only because its "overarching," *i.e.*, primary,

13   "*purpose*," as the Complaint alleges (¶ 40, emphasis added), is to regulate in the

14   field of wildlife law covered by § 20(a), but also even if not, because it has more

15   than an "overarching . . . *effect*," (*id.*, emphasis added), *i.e.*, "more than an incidental

16   effect," in that field.  *See* 70 Ops. Cal. Atty. Gen. 210, 1987 WL 247263, at *3-*4

17   (1987) ("1987 AG Op.").  Regarding this latter point, which raises a fact question,

18   the Court must reasonably accept as true that the Ordinance has "more than an

19   incidental effect" based on the Complaint's allegations and reasonable inferences.

20   This precludes dismissal of the Complaint.  *See generally* pp. 6-8, *infra*.

21         Thus, the Court need not, at this time, even reach the issue of what the

22   Ordinance's primary purpose is.  Nevertheless, as discussed below, the very

23   language of Ordinance itself makes it self-evident that its primary purpose is to

24   protect wild animals covered by § 20(a) from being killed or mistreated for their fur

25   – not, as the City proffers, to enhance the City's image and to foster community

26   awareness about animal welfare.  *See generally* pp. 8-10, *infra*.

27

28   [2] "Mem. at [page]" refers to the City's Memorandum In Support of Its Motion to Dismiss; that Memorandum is contained within Dckt. # 22.

1    **The Second Claim for Relief** states a cognizable cause of action that the
2    Ordinance is void on preemption grounds because it conflicts with state law under
3    all three tests for preemption. First, the Ordinance <u>duplicates</u> state law:  Both the
4    Ordinance and several state laws prohibit the sale of wearing apparel products made
5    of fur, at least insofar as the fur of certain animals goes.  Second, the Ordinance
6    <u>contradicts</u> state law:  it prohibits the sale of fur wearing apparel items, and thus
7    contradicts several state laws which expressly authorize the sale of such products
8    made of certain animals.  Third, the Ordinance operates in the field of wildlife
9    regulation, as to which the Legislature expressly, or alternatively by implication, has
10   shown its intent <u>to fully occupy the field</u>. *See generally* pp. 10-17, *infra.*

11   **The Third Claim for Relief** alleges that the Ordinance is void for vagueness
12   under the Due Process Clause, and states a cognizable cause of action.  First, if the
13   Ordinance's fur ban is void under the California Constitution in some respects but
14   not others, *i.e.,* with respect to the sales of wearing apparel made of the fur of certain
15   species but not others, that renders the Ordinance, in *toto,* impermissibly vague.
16   That is because people will not be able to reasonably distinguish what the Ordinance
17   covers and what it does not.  Second, various terms in the Ordinance render it vague
18   both facially and as applied, and this vagueness has been exacerbated by FAQs the
19   City has issued on the Ordinance. *See generally* pp. 17-21, *infra.*

20   **The Fourth Claim for Relief** states a cognizable cause of action for violation
21   of the Equal Protection Clause.  The Ordinance makes several classifications that
22   irrationally distinguish entities like Mayfair from various other groups, as the
23   Ordinance either does not apply to or expressly exempts them from the ban, in
24   whole or in part.  For example, 501(c)(3) tax exempt entities are fully exempt from
25   the Ordinance's ban on selling fur wearing apparel.  Yet, classifications based on
26   differing tax statuses do not rationally relate to any conceivable purpose of the
27   Ordinance.  If selling fur wearing apparel is evil because it contributes to the killing
28   or mistreatment of animals, or to a less "humane" environment, then it is evil

1  regardless of whether the seller is tax exempt or not.  *See generally* pp. 21-24, *infra*.

2      For all these and other reasons, as explained in more detail below, Mayfair

3  respectfully asks the Court to deny the City's Motion to Dismiss.

## II.  ARGUMENT

**A.  Mayfair States A Claim That The Ordinance Is A Void,**
   ***Ultra Vires* Act Under The California Constitution, Art. IV, § 20(a)**

   **1.  Section 20(a) reserves to the Legislature the exclusive power in**
      **California to pass legislation related to wild animals.**

9      In 1902 California citizens voted to amend the state Constitution by adding

10  what is now known as Article IV, § 20(a) of the California Constitution ("§ 20(a)"),

11  and then known as § 25 1/2.  Section 20(a) provides: "The Legislature may provide

12  for division of the State into fish and game districts and may protect fish and game

13  in districts or parts of districts."  Section 20(a)'s purpose was (and still is):

14      to take from local authorities the right to regulate the fish and game of

15      the state and to invest such power ***exclusively*** in the Legislature.  In so

16      doing, the powers of the Legislature to protect the fish and game of

17      the state were increased over those previously entrusted to that body.

18  *Ex parte Makings*, 200 Cal. 474, 479, 253 P. 918, 920 (1927) (emphasis added).

19  [The terms "fish and game," as used in Section 20(a), encompass wild animals.  *See*

20  *Young v. Dept. of Fish & Game*, 124 Cal.App.3d 257, 274, 177 Cal.Rptr. 247, 256

21  (1981) ("the terms fish and game cover a wide variety of species of animals[;] [t]he

22  terms, taken together, cover almost all types of wildlife")].

23      The Legislature's failure or unwillingness to pass legislation related to

24  wildlife does not empower a local government to regulate in that field.  *Ex parte*

25  *Cencinino*, 31 Cal.App. 238, 244, 160 P. 167, 169-70 (1916).  And, contrary to the

26  City's suggestion otherwise (*see* Mem. at 4), nor do the general police powers

27  granted to local governments by Art. XI, § 7 of the California Constitution empower

28  them to regulate wild animals.  Rather, § 20(a) supersedes Art. XI, § 7 insofar as the

power to regulate wildlife goes. *See Cencinino*, 31 Cal.App. at 243, 160 P. at 169 ("the power of local boards to regulate or legislate upon the subjects of fish and game has been withdrawn by the people . . ."). *See also Ex parte Prindle*, 7 Cal.Unrep. 223, 226-27, 94 P. 871, 872-73 (Cal. Dist. Ct. App. 1905).

Mayfair's First Claim for Relief is on all fours with *Cencinino*. There, an ordinance that prohibited the shipping and transporting of wildlife (clams and crabs) was held to encroach on the Legislature's power over fish and wildlife and was thus void under § 20(a). *See* 31 Cal.App. at 239, 244, 160 P. at 167, 170. Likewise, the City's Ordinance, which restricts the selling of products made of wild animals in order to protect those animals, trespasses on the Legislature's exclusive power to protect wildlife and is, therefore, a void, *ultra vires* act under § 20(a).

**2.   The Legislature's constitutional power over wildlife includes the power to regulate the sale of products made from wild animals.**

"It is well established in this state that the Legislature has most extensive powers over the fish and game within its jurisdiction." *Makings*, 253 P. at 921, 200 Cal. at 481. Furthermore:

> [The wildlife of the state] [are] not subject to private dominion to any greater extent than the people through their Legislature may see fit to permit. . . . [T]he Legislature may regulate [wildlife] as it deems best, subject only to constitutional limitations. . . . [T]he Legislature may, if it sees fit, absolutely prohibit the taking of [wildlife] or ***any traffic or commerce in it***, should that be deemed necessary for the animals' protection or preservation, or for the public good.

65 Op. Cal. Atty. Gen. 648, 1982 WL 156020, at *2 (1982) (citing California case law for these propositions; emphasis added) ("1982 AG Op."). *See also Young*, 124 Cal.App.3d at 278-81, 177 Cal.Rptr. at 259-60 (discussing the Legislature's expansive authority over wildlife).

Various laws and regulations that prohibit commercial activity related to fish

and wildlife – not only the direct acts of hunting or fishing – have been held to be within the Legislature's power over fish and wildlife under the California Constitution. Such laws and regulations include those that prohibit:

- **selling** deer meat and hides, including those from deer taken out-of-state. *Ex Parte Maier*, 103 Cal. 476, 479-84, 37 P. 402, 402-04 (1894);

- **shipping or transporting** crabs. *See Makings*, 200 Cal. at 475-76, 481-82, 253 P. at 919, 921; and,

- breeding raccoons **for the pet trade**. *See* 1982 AG Op., 1982 WL 156020, at *5.

It follows that the Legislature's "extensive powers over fish and game," *Makings, supra,* include the power to regulate, as well as to prohibit, selling products made of wild animals, like fur clothing products, in order to protect those animals. It also follows that the City's arguments – *viz.*, that § 20(a) "is not about protecting commercial markets for fish and game products" (Mem. at 5) but only "is about what happens in the woods, not . . . in town" (*id.*) – are incorrect as a matter of law.

**3. The Ordinance is a void, *ultra vires* act under § 20(a).**

"Insofar as a[n] [ ] ordinance undertakes to regulate the field of law regarding fish and game which [§ 20(a)] reserves to the Legislature, it is void." 1987 AG Op., 1987 WL 247263, at *2.[3]   An ordinance regulates in this field if either (a) the ordinance, regardless of its purpose, has "more than an incidental effect" in the field **or** (b) the ordinance's primary purpose is to regulate in that field. *See id.* at *3-*4.

   **a. The Ordinance's effect.**

   Whether an ordinance has "more than an incidental effect" in the field of

---

[3] This Attorney General Opinion defeats the City's argument that the purpose of the Ordinance is irrelevant to determining if it violates § 20(a). *See* Mem. at 5-6. Furthermore, the *Cal. Grocer's Assn.* decision, 52 Cal.4th 177, 190, 127 Cal.Rptr.3d 726, 733 (2011), on which the City relies to support its argument, is inapposite because it does not even address an issue under § 20(a).

1   wildlife regulation "is a question of fact to be decided upon the evidence in a
2   particular case[.]"  *See* 1987 AG Op., 1987 WL 247263 at * 4 (emphasis added).
3   Questions regarding the effect of a law or activity cannot be resolved on a Rule
4   12(b)(6) motion.  *Cf. Assoc. de Educ. v. Echevarria-Vargas*, 385 F.3d 81, 86 (3d
5   Cir. 2004) (holding that "in the absence of any evidence about the nature and weight
6   of the burdens imposed [by local law on free speech right]" "the grant of the Rule
7   12(b)(6) motion was error").

8        For purposes of deciding the City's Rule 12(b)(6) motion, the Court must
9   accept the inference that the Ordinance has more than an incidental effect on the
10   field of wildlife regulation based on the Complaint's allegation that the Ordinance's
11   "overarching purpose and/or effect . . . is to protect wild animals [from being killed
12   or mistreated for their fur]."  Compl. ¶ 40.  This inference is reasonable because:

- Most animal fur used for clothing products comes from animals,
  *e.g.*, the fox, mink, beaver, and coyote, that are considered to be
  wild under California law, regardless of whether they are taken
  directly from the wild by hunting or trapping, or raised on farms
  for their fur. *See, e.g.*, Compl. ¶ 13.

- "Incidental" means "being likely to ensue as a chance or minor
  consequence" or "occurring merely by chance or without intention
  or calculation."[4]  The Ordinance, by comparison, *purposefully* is
  designed to regulate, *i.e.*, restrict, the market for fur products. *See,
  e.g.*, Ordinance, §§ 9.51.010(j), (m) (discussing "eliminating the
  sale of fur products").  It can be reasonably inferred that the
  Ordinance will achieve what it is designed to do in this regard.

- The Legislature, as well as others, have recognized that regulation
  of the market for products made of wild animals – whether by

---

[4] http://www.merriam-webster.com/dictionary/incidental?show=0&t=1386527767.

1   restricting or even by promoting the market for those products –

2   has an effect on the protection and conservation of animals from

3   which those products are made.[5]

4       ***b. The Ordinance's primary purpose.***

5       In light of the above, this Court can reject the City's challenge to Mayfair's

6   First Claim for Relief without the need to reach the issue of what the Ordinance's

7   purpose is.  Nonetheless, the primary, *i.e.*, "overarching," purpose of the Ordinance

8   is to protect wildlife.  Indeed, the City itself admits on the very first page of its brief

9   that the "recently adopted ordinance [is] ***designed*** to reduce violence and cruelty and

10  bring about ***more humane treatment of animals.***"  Mem. at 1 (emphasis added).

11  Express findings in the Ordinance make this purpose perfectly clear:

12      ■  "The City Council finds that ***animals that are slaughtered for their***

13          ***fur, whether they are raised on a fur farm or trapped in the wild,***

14          ***endure tremendous suffering***.  Animals raised on fur farms

15          typically spend their entire lives in cramped and filthy cages.  Fur

16          farmers typically use the cheapest killing methods available,

17          including suffocation, electrocution, gas and poison."  Compl. ¶

18          27 (citing WHMC § 9.51.010(g)) (emphasis added).

19      ■  "Considering the wide array of alternatives for fashion and apparel,

20          the City Council finds that the demand for fur products ***does not***

21

22  [5] *See, e.g.*, 2011 Cal. Legis. Serv. 524 (West 2013), known colloquially as the
    "Shark Fin Ban" (finding that "California is a market for shark fin and this demand

23  helps drive the practice of shark finning;" "[t]he market also drives shark declines;"
    and "[b]y impacting the demand for shark fins, California can help ensure that

24  sharks do not become extinct as a result of shark finning"); Brian Yablonski,
    *Bisonomics*, 25 PERC REPORTS:  THE MAGAZINE OF FREE MARKET

25  ENVIRONMENTALISM No. 3, 5-9 (Fall 2007) (noting that creation of market for bison
    meat facilitated conservation of bison); Erwin H. Bulte, *et al., Economic Incentives*

26  *and Wildlife Conservation*, at 22-23 (Oct. 27, 2003) (paper) (noting that both trade
    ban on vicuna products and promotion of market for vicuna products facilitated

27  vicuna conservation), *available at* http://www.cites.org/eng/prog/economics/CITES-
    draft6-final.pdf.  Thus, the City is wrong when it states "[r]ules allowing sales [do

28  not] help conserve animals in the wild . . . ."  Mem. 10.

PLAINTIFF MAYFAIR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1               **justify the unnecessary killing and cruel treatment of animals.**"

2               Compl. ¶ 27 (citing WHMC § 9.51.010(j)) (emphasis added).

3        ■ "The State Legislature has also considered other **animal protection**

4              **measures**, including prohibiting the sale of products that result

5              from the force feeding of a bird for the purpose of enlarging the

6              bird's liver beyond normal size (Senate Bill 1520); and

7              prohibiting the possession, sale, trade or distribution of shark fin

8              (Assembly Bill 376)." WHMC § 9.51.010(e)).

9       The City contends that the primary purpose of the Ordinance is "somewhat

10 different," *viz.*, to "create a more humane environment in the city," to foster "the

11 city's reputation as a Cruelty Free Zone for animals," and to "promote community

12 awareness of animal welfare." *See* Mem. at 6-7. Assuming *arguendo* these are

13 purposes of the Ordinance and, further, that they are within the City's police

14 powers,[6] this does not alter the conclusion that the overarching, *primary* objective of

15 the Ordinance is to protect animals.

16       The Ordinance cannot achieve the City's purported goals if it does not, as a

17 practical matter, actually prevent cruelty to animals killed for their fur. The City's

18 purported goals, therefore, must be considered to be subservient to the primary goal

19 of protecting animals. Moreover, the "Findings" section of the Ordinance

20 underscores that the primary purpose of the Ordinance is to protect animals by

21 regulating the sale of certain products. For example, the Ordinance cites to various

22 state and federal laws designed to protect animals by regulating the sale of products,

23 including "The Federal Dog and Cat **Protection** Act of 2000." *See* WHMC §§

24 9.51.010(a)-(e) (emphasis added). The Ordinance refers to all these laws as "***animal***

25 ***protection measures.***" *Id.* § 9.51.010(e) (emphasis added). It simply defies

26 credulity for the City now to disavow that the primary purpose of the Ordinance is

27

28
—————————————————————————
[6] It is certainly questionable whether these purposes are within the city's police powers, as they are far removed from issues of health, safety and welfare.

PLAINTIFF MAYFAIR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    to protect fur-bearing animals.[7]

2    **B.    Mayfair States A Claim For Relief That The Ordinance Is Void**

3    **Under The California Constitution On Grounds Of Preemption**

4         The California Constitution, Art. XI, § 7 provides that a city "may make and

5    enforce within its limits all such local, police, sanitary and other regulations as are

6    not in conflict with general laws." This "is not only a delegation of power by the

7    people to the local body, but it is also a limitation upon the local body." *Abbott v.*

8    *City of Los Angeles*, 53 Cal.2d 674, 681, 3 Cal.Rptr. 158, 163 (1960).  An ordinance

9    conflicts with "general laws," *i.e.*, state law, and is thus preempted, if the ordinance

10   either (1) duplicates state law, (2) contradicts state law, or (3) regulates in a field of

11   law the state has intended to fully occupy.  *See, e.g., Amer. Fin. Servs. Assoc. v. City*

12   *of Oakland*, 34 Cal.4th 1239, 1251, 23 Cal.Rptr.3d 453, 462 (2005).   Mayfair's

13   Second Claim states a valid cause of action under each of the three tests.

14        **1. Mayfair has stated a claim for preemption by duplication.**

15        An ordinance duplicates state law when it is coextensive therewith.  *See, e.g.,*

16   *id.*  Several California laws make it unlawful to sell any "part or product" of various

17   animal species having fur.[8]  Thus, these laws prohibit the sale of products made of

18   the fur of the animals listed therein.  The Ordinance makes it unlawful to sell any

19   wearing apparel made of the fur of any animal (except dogs or cats).  By selling an

20

21   [7] The City argues that the Ordinance "was inspired by the violence perpetrated on fur
     bearing animals," but that its "aim is to bring about a more humane environment *in*
22   *the City*." Mem. at 1-2 (emphasis added).  As noted above, the City admits that the
     Ordinance is "designed to reduce violence and cruelty and about more humane
23   treatment of animals." *Id.* at 1.  Yet, as the Complaint alleges (¶ 15) and which must
     be accepted as true at this juncture, there are no fur farms, or hunting or trapping of
24   animals *in the City*, and, therefore, there is no violence and cruelty to fur-bearing
     animals *in the City* to be reduced.

25   [8] *See, e.g.,* CFGC § 2080, which makes it unlawful to sell "any part or product" of
     any animal listed as endangered or threatened by the State Fish and Game Comm.
26   subject to certain exceptions, and *id.* § 4800, which makes it unlawful to sell "any
     part or product" of a mountain lion subject to certain exceptions. *See* Compl. ¶ 40
27   (citing these provisions)  *See also* Cal. Penal Code § 653p (making it unlawful to
     sell any "part or product" of, *inter alia*, any mammal that is illegal to import  under
28   the federal Endangered Species Act or federal Marine Mammal Protection Act).

1  article of wearing apparel made of the fur of one of the animal species listed in the

2  state laws, a person can be found to be in violation of both the Ordinance *and* these

3  state laws.

4     Accordingly, the Ordinance prohibits the same conduct that these state laws

5  prohibit insofar as the animal species covered by those laws are concerned.   The

6  Ordinance is pre-empted thereby.

7     The City's argument (Mem. at 8) that the Ordinance does not duplicate state

8  laws because the Ordinance is not species specific is incorrect.  *See In re Portnoy*,

9  21 Cal.2d 237, 241-42, 131 P.2d 1, 3 (1942).

10    In *Portnoy*, the California Supreme Court held that section 2 of the ordinance

11 there at issue, which prohibited certain categories of persons from carrying on

12 gambling in certain categories of places, was preempted by a state law insofar as the

13 state law prohibited the same conduct by the same categories of persons in the same

14 categories of places.  *See id*.  The court reached this holding notwithstanding that the

15 section prohibited *additional* categories of persons from carrying on that gambling

16 activity in *additional* categories of places.  *See id*.  As *Portnoy* stated:

17       It is apparent that section 2 of the ordinance is a duplication of Penal

18       Code, section 331, insofar as it purports to prohibit an *owner* or *lessee* .

19       from . . . carrying on a house in which any of the gambling activities

20       covered by the Penal Code are permitted to be conducted.  ***Partial***

21       ***invalidity of section 2 of the ordinance must therefore be conceded.***

22 *Id*. (emphasis added).

23    The City's reliance (Mem. at 8) on *Great Western Shows, Inc. v. County of*

24 *Los Angeles*, 27 Cal.4th 853, 865, 118 Cal.Rptr.2d 746, 755 (2002), to support its

25 challenge to preemption-by-duplication is misplaced.  In that case, unlike here, the

26 challenged ordinance contained an additional element of the offense not found in the

27 state statutes.  As the court explained, the state statute prohibited the sale of certain

28 guns while the ordinance prohibited the sale of guns "on County property."  Thus,

1  the court concluded "possessing a gun on county property is not identical to the
2  crime of selling an illegal assault weapon or handgun . . . . and therefore someone
3  may be lawfully convicted of both offenses." *Id.*   By contrast, here the City
4  concedes that the sale of products of (*e.g.*,) mountain lions and certain endangered or
5  threatened species which contain fur is prohibited – which is the same prohibition
6  under the Ordinance with respect to fur clothing products derived from those
7  animals, too. *See* Mem. at 8. Thus, "[p]artial invalidity . . . of the [O]rdinance must
8  therefore be conceded." *Portnoy,* 21 Cal.2d at 241-42, 131 P.2d at 3

9      **2.  Mayfair has stated a claim for preemption by contradiction.**

10      An ordinance contradicts general law "when it is inimical thereto." *E.g.*,
11  *Sherwin–Williams Co. v. City of Los Angeles* 4 Cal.4th 893, 898, 16 Cal.Rptr.2d
12  215, 217 (1993).   Among other ways, an ordinance is "inimical thereto" if it
13  "prohibits conduct that is ***expressly authorized*** by state statute or authorizes conduct
14  that is expressly prohibited by state general law." *E.g., Fireman's Fund Ins. Co. v.*
15  *City of Lodi*, 302 F.3d 928, 943 (9th Cir. 2002) (citing California authority;
16  emphasis added).

17      Here, the Ordinance prohibits selling wearing apparel made of fur from, *inter*
18  *alia*, furbearing mammals, nongame mammals, and deer.   State law expressly
19  authorizes the sale of such products. *See* CFGC § 3039(b) ("Products or handicraft
20  items made from furbearing mammals [*e.g.*, mink] and nongame mammals [*e.g.*,
21  coyote], their carcass or parts thereof, lawfully taken under the authority of a
22  trapping license, ***may be purchased or sold at any time***."); *id.* § 4303 ("The skin or
23  hide of any deer lawfully taken ***may be sold, purchased, tanned, or manufactured***
24  ***into articles for sale.***") (emphasis added).

25      In fundamentally the same operative circumstances, the California Supreme
26  Court and intermediate appellate courts have held that ordinances were preempted
27  by contradiction.  For example:
28      ■  an ordinance setting a 15 mph speed limit on a road directly

conflicted with, and thus was preempted by, a state law that permitted speed up to 20 mph on that road. *Ex Parte Daniels*, 183 Cal. 636, 647-48, 192 P. 442, 447 (1920);

■   an ordinance prohibiting the administration of electric shock treatment to patients directly conflicted with, and was thus preempted by, state law permitting this treatment to patients who were competent to choose it. *Northern Cal. Psychiatric Soc. v. City of Berkeley*, 178 Cal.App.3d 90,105-06, 223 Cal.Rptr. 609, 615 (1986); and

■   an ordinance prohibiting the discharge of certain wastewater into waste disposal systems contradicted, and was thus preempted by, state law allowing such discharge. *Water Quality Assoc. v. County of Santa Barbara*, 44 Cal.App.4th 732, 742, 52 Cal.Rptr.2d 184, 189-90 (1996).

In accordance with these decisions, Mayfair clearly states a contradiction preemption claim.

The City argues that preemption by contradiction applies only when an ordinance prohibits what state law mandates. Mem. at 8-10. But the authorities the City relies on, notably, *City of Riverside v. Inland Empire*, 56 Cal.4th 729, 743, 156 Cal.Rptr. 409, 415-16 (2013) and *Great Western,* 27 Cal.4th at 866, 118 Cal.Rptr.2d at 755, do not preclude preemption by contradiction when an ordinance prohibits what state law expressly authorizes.   First, those decisions do not hold that preemption by contradiction can occur ***only*** where an ordinance prohibits what state law requires, to the exclusion of situations where an ordinance prohibits what state law expressly permits. Moreover, the City's argument is belied by the concurring opinion in *Riverside*, which was written "to clarify the proper test for state preemption of local law," 56 Cal.4th at 763, 156 Cal.Rptr. at 432.   That opinion explains that the language of the majority opinion, which the City quotes in its

13

1  Memo (at 8) for the standard on preemption by contradiction:

2        should not be misunderstood to improperly limit the scope of the

3        preemption inquiry. *As the court's opinion makes clear elsewhere,*

4        *state law may preempt local law when local law prohibits not only*

5        *what a state statute "demands" but also what the statute permits or*

6        *authorizes.* (See maj. opn., *ante,* 156 Cal.Rptr.3d at pp. 427–428,

7        429–430, 300 P.3d at pp. 509–510, 511, discussing *Cohen v. Board of*

8        *Supervisors* (1985) 40 Cal.3d 277, 293, 219 Cal.Rptr. 467, 707 P.2d

9        840 (*Cohen* ); *Great Western Shows v. County of Los Angeles* (2002)

10       27 Cal.4th 853, 867–868, 118 Cal.Rptr.2d 746, 44 P.3d 120[.]

11 *Riverside*, 56 Cal.4th at 763, 156 Cal.Rptr. at 432 (emphasis added).

12       **3. Mayfair has stated a claim for preemption by field occupation.**

13       Preemption also occurs if the ordinance enters a field "expressly or impliedly

14 fully occupied by general law." *E.g., Amer. Fin. Servs.*, 34 Cal.4th at 1251, 23

15 Cal.Rptr.3d at 461.  An area or field of legislation for preemption purposes "is one

16 which is sufficiently logically related so that a court or a local legislative body could

17 ascertain a cohesive approach to the subject." *Isaac v. City of Los Angeles*, 66

18 Cal.App.4th 586, 600, 77 Cal.Rptr.2d 752, 760-61 (1998).  The operative field of

19 law in the matter *sub judice* is the regulation of wild animals in California.

20       The Legislature has expressly demonstrated its intent to fully occupy this field

21 by approving by a two-thirds vote what is now Art. IV, § 20(a) and submitting it to

22 the people of the state for approval. 1901 Cal. Stat., p. 948.  And, § 20(a)'s purpose

23 was to vest the Legislature with the exclusive power to pass laws related to fish and

24 wildlife and to divest local governments of any power in that regard.  Pp. 4-5, *supra*.

25       In the alternative, Mayfair submits that the Legislature has impliedly occupied

26 the field.  As the California Attorney General has recognized in an opinion relied

27 upon by the City, *see* Mem. at 5, the determination of whether there is implied field

28 preemption raises issues of fact: "The [California court] decisions also universally

14

1  emphasize that each situation must be considered and tested 'ad hoc' and is
2  primarily a factual problem, adjudged in the light of the circumstances of each
3  case." 58 Ops. Cal. Atty. Gen. 519, 525, 1975 Cal. AG LEXIS 99, at *16 (1975). It
4  may very well be that this is why none of the cases which the City cites in support of
5  its preemption arguments were initially decided on a demurrer or a Rule 12(b)(6)
6  motion. All of the cases except one were decided on summary judgment or after
7  evidentiary proceedings. *See* Mem. at 7-15.[9]

8       In any case, for purpose of the City's Motion to Dismiss, the Court can
9  conclude that there is implied field preemption. For one thing, in determining
10 whether the Legislature has impliedly occupied a field, "'it may be significant that
11 the subject is one which . . . requires uniform treatment throughout the state.'"
12 *Amer. Fin. Servs. Assoc.*, 34 Cal.4th at 1252, 23 Cal.Rptr.3d at 462 (citations
13 omitted). *See also Isaac*, 66 Cal.App.4th at 601, 77 Cal.Rptr.2d at 761 ("Because it
14 is a matter of statewide concern, the City may not enact legislation that conflicts or
15 disables the effectiveness of statutory law."). Here, effective regulation of wildlife
16 in California requires that laws and regulations related thereto be promulgated at the
17 state level rather than by localities. *See Cencinino*, 31 Cal.App. at 142, 160 P. at
18 168 (explaining that "experience has demonstrated the necessity and efficacy [of
19 permitting only the Legislature to regulate fish and wildlife]" because, before §
20 20(a)'s adoption, local governments could regulate in this field but their regulations
21 were "often harsh and unjust and sometimes inadequate to the proper protection of
22 fish and game").

23      In addition, "'[s]tate regulation of a subject may be so complete and detailed
24 as to indicate an intent to preclude local regulation.'" *Amer. Fin. Servs. Assoc.*, 34
25 Cal.4th at 1252, 23 Cal.Rptr.3d at 462 (citations omitted). "Whenever the

26

27  [9] The only exception is *Doe v. San Francisco*, 136 Cal.App.3d 509, 517, 186
    Cal.Rptr. 380, 384 (1982) (Mem. at 9). It addresses an application for a peremptory
28  writ and is unclear whether or not proof was taken in the proceeding.

PLAINTIFF MAYFAIR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  Legislature has seen fit to adopt a general scheme for the regulation of a particular
2  subject, the entire control over whatever phases of the subject are covered by state
3  legislation ceases as far as local legislation is concerned." *In re Loretizo*, 59 Cal.2d
4  445, 446, 30 Cal.Rptr. 16, 17 (1963).

5  The Fish & Game Code and regulations promulgated under it establish a
6  comprehensive, detailed general scheme regulating the subjects of fish and wildlife.
7  *See generally* CFGC §§ 1-16541; CAL. CODE REGS., tit. 14, div. 1. *See also* Compl.
8  ¶¶ 46-51(citing illustrative CFGC provisions and regulations).

9  Within this detailed scheme, the Legislature has comprehensively addressed
10  the sale of wild mammals and parts and products thereof.  It has broadly prohibited
11  the sale of mammals and parts thereof, except as otherwise provided in the Fish &
12  Game code or regulations adopted pursuant to it.  CFGC § 3039(a).  That broad
13  prohibition is coupled with laws that expressly permit mammals or the parts or
14  products thereof to be sold under certain conditions.[10]  These laws illustrate not only
15  the comprehensiveness of the overall legislative scheme to protect wildlife, but also
16  that state law has at least partially covered the field of wildlife protection insofar as
17  the sale of wild mammals or parts or products thereof goes.  *See Amer. Fin. Servs.
18  Assoc.*, 34 Cal.4th at 1252, 23 Cal.Rptr.3d at 462 ("'the subject matter has been
19  partially covered by general law couched in such terms as to indicate clearly that a
20  paramount state concern will not tolerate further or additional local action'")
21  (citation omitted).

22  The City's argument – that the Ordinance must be found valid, even if it

---

24  [10] *See* CFGC § 3039(b), quoted, *supra*.  *See also id.* § 3039(c) (providing that
25  "[s]hed antlers, or antlers taken from domestically reared animals that have been
    manufactured into products or handicraft items . . . may be purchased or sold at any
    time . . . ."); *id.* § 3213 ("A retail meat dealer may, without a [domesticated game
26  breeder's] license, sell portions of a quarter or loin of a large mammal or the carcass
    of a game bird or mammal raised or imported under a domesticated game breeder's
27  license to a customer for actual consumption.  [¶] Retail dealers shall submit their
    premises to inspection by the department, and shall display at any authorized
28  inspection any carcass or parts thereof held by them in storage.").

1   encroaches on a field fully occupied by state law, because it has only an incidental

2   effect on the field (Mem. at 15-16) – must be rejected.  Rather, the Court must infer

3   that the Ordinance will have more than an incidental effect on the field of wildlife

4   regulation for reasons discussed above.[11]  *See* pp. 6-8, *supra,*

5   **C.**   **<u>Mayfair States A Claim For Relief That The Ordinance Is Void For</u>**

6         **<u>Vagueness Under The Fourteenth Amendment's Due Process Clause</u>**

7       To survive a motion to dismiss, a plaintiff need only "state[] a plausible claim

8   that the statute is unconstitutionally vague by asserting that the statute fails to

9   provide sufficient notice to enable persons to understand what conduct is

10   prohibited," *Cooper v. Clark County*, 519 F. App'x 479, 482 (9th Cir. 2013)

11   (reversing dismissal of vagueness claim), or that the statute "encourage[s] arbitrary

12   and discriminatory enforcement," *Humanitarian Law Project v. Reno*, 9 F. Supp.2d

13   1176, 1202 (C.D. Cal. 1998)[12] (citing *Kolender v. Lawson*, 461 U.S. 352, 357

14   (1983)).  Although "'[d]ue process does not require 'impossible standards' of clarity

15   [in a statute]. . . The requirement of clarity is enhanced when criminal sanctions are

16   at issue . . . ." *Humanitarian Law Project*, 9 F. Supp.2d at 1202 (citation omitted).

17   The Ordinance is subject to this "enhanced" clarity requirement because it imposes

18   criminal sanctions for its violation.  *See, e.g.,* Compl. ¶ 24 (citing WHMC §

19   1.08.01(e)-(g)), and it is being enforced against Mayfair. *See* p. 21, *infra.*

20   ///

21

22   [11] Because, here, the Ordinance has more than an incidental effect, the cases on
which the City's relies to support this argument (Mem. at 15-16), *People v. Mueller*,

23   8 Cal.App.3d 949, 88 Cal.Rptr. 157 (1970) and *Calif. Veterinary Med. Assn. v. City
of West Hollywood*, 152 Cal.App.4th 536, 562, 61 Cal.Rptr.3d 318, 337-38 (2007),

24   are also distinguishable and do not help the City.

25   [12] *Aff'd,* 205 F.3d 1130 (9th Cir. 2000), *on subsequent appeal sub nom.
Humanitarian Law Project v. U.S. Dep't of Justice,* 352 F.3d 382 (9th Cir. 2003),

26   *reh. en banc granted,* 382 F.3d 1154 (9th Cir. 2004), *judgment vacated in part due
to subsequent statutory amendment,* 393 F.3d 902 (9th Cir. 2004), *on remand sub*

27   *nom. Humanitarian Law Project v. Gonzales,* 380 F.Supp.2d 1134 (C.D.Cal. 2005),
*aff'd sub nom. Humanitarian Law Project v. Mukasey,* 509 F.3d 1122 (9th Cir.

28   2007).

1     **1.   If part of the Ordinance is invalid under state law, it is void for**

2         **vagueness under the Due Process Clause in *toto*.**

3     "Language prohibiting conduct that may be prohibited and conduct that may

4 not affords no reasonable ascertainable standard of guilt and is therefore too

5 uncertain and vague to be enforced." *Ex parte Blaney*, 30 Cal.2d 643, 652, 184 P.2d

6 892, 898 (1947).  Thus, if an ordinance is not severable, "then the void part taints

7 the remainder and the whole becomes a nullity."  30 Cal.2d at 655, 184 P.2d at 900.

8 *See also In re Portnoy*, 21 Cal.2d at 242, 131 P.2d at 3 ("Since the [preempted]

9 portions of section 2 [of the challenged ordinance] cannot be severed from the rest

10 of the section, it must be declared wholly invalid.").

11     Applied here, to the extent that the Ordinance's ban on the sale of fur wearing

12 apparel is partially void under the California Constitution, *see, e.g.*, pp. 10-12, *supra*

13 (discussing preemption for fur clothing products made of certain animals), those

14 void aspects cannot be severed from the permissible aspects of the Ordinance, and

15 the Ordinance must be rendered void in *toto* for vagueness.  That is because the

16 Ordinance's general ban on the sale of fur products cannot be parsed grammatically

17 to elide the void applications. *See, e.g., Federal Express v. Cal. P.U.C.*, No. C–87–

18 4891 MHP, 1993 WL 399380, at *7 (N.D. Cal. Sept. 23, 1993) (holding that the

19 "disputed [state regulatory] provisions' preempted applications may not be severed

20 from their non-preempted ones[;] the disputed provisions' economic aspects are not

21 contained in isolated words or phrases") (citations omitted).  As a result, a person

22 reading the Ordinance would be left to guess which fur clothing products were

23 covered and which were not, rendering the whole Ordinance unconstitutionally

24 vague. *Blaney*, 30 Cal.2d at 652, 184 P.2d at 898, quoted above.

25     **2.  Mayfair has stated a valid facial Due Process challenge.**

26     On its face, the Ordinance is unconstitutionally vague.  First, neither the

27 Ordinance nor the City's FAQs define the terms "second-hand store" and "private

28 party," which govern exemptions to the Ordinance's general ban.   WHMC §

18

1    9.51.020(c)(3); Compl. Ex. 3 (FAQs). Though the City *now* contends that "second-
2    hand store" means a store "that deals predominantly in used goods," Mem. at 21,
3    this clarification is not based on any public record for which this Court can take
4    judicial notice. Absent any explanation in the Ordinance itself, the terms must be
5    found unconstitutionally vague. *See, e.g., Contest Promotions, LLC v. City and*
6    *Cnty. of San Francisco*, No. C 09–04434 SI, 2010 WL 1998780, at *5 (N.D. Cal.
7    2008) (denying motion for judgment on the pleadings with respect to plaintiff's void
8    for vagueness claim where "[t]he City fail[ed] to identify, and the Court was not
9    able to locate, a single section of the ordinance defining or giving guidance in
10   interpreting the term 'incidental.'").

11       Second, the Ordinance's terms "wearing apparel" and "fur" are
12   unconstitutionally vague because the City's FAQs (*see* Compl., Ex. 3), on which the
13   City relies in an attempt to resolve ambiguities inherent in those words (*see* Mem. at
14   18-20), only add to the ambiguities.

15       The Ordinance's definition of "wearing apparel" – "***any*** articles of clothing **or**
16   ***covering for any part of the body***," § 9.51.020(a)(6) (emphases added) – is entirely
17   vague. Virtually *anything* could be used to cover any part of the body. Such a
18   broad, ambiguous definition fails to give reasonable notice about whether, for
19   example, items that are typically considered "accessories" – *e.g.*, bracelets (which
20   cover wrists), earmuffs (which cover ears) or even umbrellas (which, technically,
21   cover a person's head and body) – would be "wearing apparel" under the Ordinance.
22   To the extent the City intended "wearing apparel" to encompass items beyond
23   "articles of *clothing*," its FAQs only exacerbate the ambiguity of the words "any . . .
24   covering for any part of the body" because the FAQs distinguish between a "sleeved
25   blanket," which is covered by the ban, and a regular blanket which is not – even
26   though both are coverings for the body. *See* FAQs # 2. For that matter, what
27   distinguishes a small fur blanket (*i.e.*, a "throw") from a fur shawl? Is only the latter
28   covered by the ban but not the former? Can anyone really tell?

1    Similarly, the City's FAQs add ambiguity to the term "fur," and do not, as the
2    City claims, resolve the question of whether shearling constitutes "fur" under the
3    Ordinance. Mem. at 19. The City argues that shearling falls under the category of
4    "any animal skin or part thereof with hair, fleece, or fur fibers attached thereto,"
5    Mem. at 20 (quoting WHMC § 9.51.020(a)(1)), because shearling is "skin from a
6    recently sheared sheep or lamb that has been tanned and dressed with the wool left
7    on." *Id.* (citing Merriam-Webster's online dictionary). However, animal skin which
8    has been "tanned and *dressed*" is the very definition of "leather."[13] Thus, the City,
9    refuses to recognize that by its own definition shearling falls into the Ordinance's
10   *exception* to the fur ban, which applies to "such skins [*i.e.*, "skins with hair, fleece,
11   or fur fibers attached"] as are to be converted into **leather** . . . ." WHMC
12   § 9.51.020(a)(1) (referenced in Compl. ¶ 57) (emphasis added). In sum, the City's
13   FAQs *contradict* the Ordinance and only add to confusion as to whether or not
14   shearling is considered fur.[14]

15   Finally, the Ordinance is also vague as to whether and to what extent it
16   applies to internet transactions. Compl. ¶ 60. FAQ #5 provides an example of one
17   internet transaction to which the Ordinance would apply, and one example of an
18   internet transaction to which the Ordinance would not. However, the FAQs do not
19   address what could be a very common scenario: a person outside the City
20   consummates an online transaction with a store located in the City to purchase a fur
21   clothing product, which is shipped from a site outside the City to the customer. In
22   this situation, has the store sold, imported, exported or distributed that fur product
23   within the City under the terms of the Ordinance? No one knows.

24
25   [13] *See* http://www.merriam-webster.com/dictionary/leather (defining "leather" as "animal skin *dressed* for use") (emphasis added).

26   [14] Moreover, even if, as the City contends, "the court must consider any limiting construction that the enforcement agency has proffered," Mem. at 18 (citations omitted), here, the FAQ regarding shearling is not "limiting" but is expansive.
27   Given the criminal penalties that are involved, the FAQ's construction of the ambiguous Ordinance to include shearling should not be accepted by the Court.
28

20

### 3. Mayfair has stated a valid as-applied Due Process challenge.

The Ordinance also is unconstitutionally vague as applied to Mayfair. For example, Mayfair sells earmuffs as well as various products made of shearling (*e.g.*, boots and gloves). *See* Compl. ¶ 33. Neither the Ordinance nor the City's FAQs explains whether earmuffs constitute "wearing apparel." And in light of the ambiguities regarding shearling, noted above, the Ordinance "fails to provide sufficient notice to enable [Mayfair] to understand" whether selling shearling boots are prohibited. *Cooper*, 519 F. App'x at 483. Thus, the Ordinance is vague as applied to Mayfair, and cannot be used to prevent Mayfair from selling fur or shearling earmuffs, shearling boots or any shearling products.

Most importantly, Mayfair's Due Process claim certainly is "as applied" (aside from a facial one) because only last week the City issued to Mayfair a notice of violation of the Ordinance. *See* Ex. 1 attached hereto.[15] Tellingly, the notice itself provides insufficient "notice" by not identifying which products, if any, that Mayfair is selling in alleged violation of the Ordinance. Nor does it even state whether the violation is for a sale or some other action in violation of the Ordinance.

### D. Mayfair States A Claim For Relief Under The Equal Protection Clause

The Equal Protection Clause provides in pertinent part that no state or local government shall "deny to any person within its jurisdiction the equal protection of the laws." In short, the Clause requires "that similarly situated persons must be treated equally[.]" *Merrifield v. Lockyear*, 547 F.3d 978, 992 (9th Cir. 2008).

An ordinance that distinguishes between different groups violates this Clause if the classifications: (a) bear a relationship to an asserted objective that is so attenuated as to render the distinction arbitrary or irrational; or, (b) rest on grounds irrelevant to the achievement of the local government's objective. *See, e.g., City of*

---

[15] Though the Complaint does not reference this violation notice, it is a matter of public record as to which the Court can take judicial notice. If needed, Mayfair can seek to amend the Complaint to add this new fact.

1   *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446,105 S.Ct. 3249, 3258, 87

2   L.Ed.2d 313, 324 (1985); *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40

3   S.Ct. 560, 561, 64 L.Ed. 989, 990 (1920).  *See Merrifield*, 547 F.3d at 991 (holding

4   that a law's classification "cannot be said to rest on a rational basis").

5       The Ordinance exempts 501(c)(3) entities from the fur ban.  *See* WHMC §§

6   9.51.020(a)(3) and (c)(1).  The *City of Cleburne* teaches why the Ordinance's

7   classification distinguishing between 501(c)(3) and non-501(c)(3) entities is

8   irrational.  There, the Supreme Court addressed a city's requirement that mentally

9   retarded persons obtain a special use permit to occupy a group home, which non-

10   retarded persons did not have to obtain in order to occupy group homes.  The

11   Supreme Court noted that mentally retarded persons are different from other groups

12   of persons, but, importantly, the Court went on to explain that:

13         this difference is largely irrelevant unless [they by occupying the

14         home] would threaten legitimate interests of the city in a way that

15         other permitted uses [of that home] such as boarding houses and

16         hospitals would not.  Because in our view the record does not reveal

17         any rational basis for believing that the home [if occupied by the

18         retarded group] would pose any special threat to the city's legitimate

19         interests, we affirm the judgment below insofar as it holds the

20         ordinance invalid as applied in this case.

21   473 U.S. at 448.

22       Likewise, the Ordinance's exemption based on 501(c)(3) status is irrelevant to

23   the Ordinance's purpose whether that purpose is, as Mayfair asserts, to protect

24   animals, or, as the City asserts, to promote, (*e.g.*,) the City's reputation as a

25   "'Cruelty Free Zone' for animals."  With regard to the former, if selling fur wearing

26   apparel is an evil because it promotes harm to animals, that evil occurs with the sale

27   of fur wearing apparel regardless of whether the seller has a tax exemption or not.

28   With regard to the latter, the City's proffered rationale for this classification – that

1  "[it] is rational to conclude that the bad accompanied by allowing non-profits to sell

2  fur products is outweighed by the good works non-profits do for the benefit of the

3  community" – is facially irrational.  Mem. at 23.[16]  Any evil associated with selling

4  fur wearing apparel is not rationally related to, much lessened by, whether the seller

5  does "good work."  An analogy illuminates this point:  larceny is a crime whether

6  committed by a priest or a pirate.  Moreover, how can the City (purportedly) be a

7  "'Cruelty Free Zone' for animals" if it allows sales by non-profits?

8         The other two classifications contained in the Ordinance's exemption scheme

9  – between, on the one hand, "second-hand stores" and "private parties" and, on the

10  other hand, entities like Mayfair, that presumably are not "second-hand stores" or

11  "private parties" – fare no better.  See WHMC §§ 9.51.020(c)(3).  The City contends

12  that the rationale for exempting second-hand stores and private parties from the

13  Ordinance's ban but not the Mayfairs of the world is to allow used wearing apparel

14  to be sold in order to prevent waste.  See Mem. at 23.  The City's proffered

15  rationale, however, is patently irrational.  A used fur wearing apparel product is

16  saved from the dumpster, and thus prevents waste, regardless of who is permitted to

17  sell it – i.e., the nature of the seller's business is irrelevant to preventing used fur

18  wearing apparel products from being wasted.

19         With respect to the Ordinance's remaining classification – between those who

20  sell fur wearing apparel, which are banned, and those that sell other products made

21  of fur, which are not – the thrust of the City's argument is that the classification is

22  rational because to extend the Ordinance's ban to non-wearing apparel could

23  increase the City's costs in enforcing the ban.  See Mem. at 24.  Importantly, this

24  argument implies that sellers of fur wearing apparel, and sellers of other fur products

---

[16] The City's point (Mem. at 23) that "non-profits do not exist to make money.  They exist to do good work" is not relevant; the Mayfairs of the world also "do good work" – if nothing more than by employing people and providing goods and services – even if they make money.  In any case, it is public knowledge that non-profits, like HSUS, and the people who head them make lots of money, too.  See, e.g., http://www.humanewatch.org/unpacking-the-hsus-gravy-train-2013-edition/.

PLAINTIFF MAYFAIR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1 | are similarly situated, *i.e.*, that any evil associated with selling fur wearing apparel
2 | is the same as with selling other fur products.  Furthermore, permitting sales of non-
3 | fur wearing apparel, is contrary to the Ordinance's purpose, whether it is to protect
4 | animals, or to promote the City's reputation as an "'Cruelty Free Zone' for
5 | animals."  Finally, the City's explanation rings hollow because the classifications in
6 | the Ordinance's exemption scheme logically create a much more difficult and
7 | expensive scheme for the City to enforce (*e.g.*, determining whether something is
8 | "wearing apparel;" if it is new or used or the seller is a "private party") than would
9 | extending the ban to all fur products.[17]

10 |   The City's motivation in adopting the classifications in the Ordinance in order
11 | to economically benefit certain groups over others, as the Complaint alleges (¶¶ 70-
12 | 78), is not irrelevant, as the City claims.  *See* Mem. at 24.  The Ninth Circuit has
13 | held "that mere economic protectionism for the sake of economic protectionism is
14 | irrational with respect to determining if a classification survives rational basis
15 | review."  *Lockyear*, 547 F.3d at 991 n.15.  Indeed, the Court can reasonably infer
16 | from the very irrationality of the City's proffered reasons for the Ordinance's
17 | classifications that their purpose, as Mayfair has alleged, is to protect certain groups
18 | economically that are similarly situated to Mayfair over Mayfair.   However,
19 | "economic protectionism for its own sake, regardless of its relation to the common
20 | good, cannot be said to be in furtherance of a legitimate governmental interest."  *Id.*
21 | *See also St. Joseph Abbey v. Castille*, 712 F.3d 215, 226-27 (5th Cir. 2013)
22 | (explaining that "the taking of wealth and handing it to others . . . as 'economic'
23 | protection of the rulemakers' pockets" violates Equal Protection).

24 | **E.**  **The City's Remaining Challenges Should Be Rejected**
25 |   The City's challenge (Mem. at 25) to Mayfair's Fifth Claim for Relief,
26 | brought under 42 U.S.C. § 1983, must be rejected.  As described above, Mayfair has
27 |
28 | [17] If nothing else, this issue raises a fact question.

PLAINTIFF MAYFAIR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    stated valid claims for relief under the Due Process and Equal Protection Clauses.

2    Notwithstanding the City's argument to the contrary (Mem. at 25), the Court

3    should continue to exercise supplemental jurisdiction over any of Mayfair's state

4    law claims that remain, even if the Court dismisses all of Mayfair's federal claims.

5    Dismissal of state law claims under 28 U.S.C. § 1367(c)(3) is not mandatory and is

6    to be guided by notions of "'economy, convenience, fairness, and comity.'"  *See,*

7    *e.g., Acri v. Varian Assocs.*, 114 F.3d 999, 1000-01 (9th Cir. 1997) (citation

8    omitted).  Economy, for sure, would not warrant dismissal of the state law claims.

9    By virtue of the City's Motion to Dismiss and all the attendant briefing, this Court

10   will have familiarity with the arguments, issues, and relevant law pertinent to the

11   state law claims.  It would be waste of judicial resources for Mayfair to have to

12   refile its state claims in state court.

13   The other subsections of § 1367(c) do not provide a basis for declining

14   supplemental jurisdiction.  For example, the state law claims do not raise new or

15   complex issues of state law.  *See* § 1367(c)(1).  Rather, as noted above in the

16   discussions of those claims, they rely on clear, venerable propositions of California

17   law.  Nor, for example, do the state claims predominate over any of the federal

18   claims.  *See* § 1367(c)(2).  Both the federal and state claims share a common

19   nucleus of facts, all of which surround the Ordinance itself, and seek common relief.

### III. CONCLUSION

21   For all of the foregoing reasons, the Motion to Dismiss should be denied.

Respectfully submitted,

23   DATED:     December 16, 2013          KELLEY DRYE & WARREN LLP
                                By:    /s/ Michael J. O'Connor
                                       Michael J. O'Connor
25                                     David E. Fink
                                       Laurence J. Lasoff (*pro hac vice*)
                                       Ira T. Kasdan (*pro hac vice*)
27                                     Joseph D. Wilson (*pro hac vice*)
                                       *Attorneys for Plaintiff Mayfair House Inc.*

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action.** I am employed in the County of Los Angeles, State of California.  My business address is 10100 Santa Monica Boulevard, Twenty-Third Floor, Los Angeles, California 90067-4008.

On December 16, 2013, I served true copies of the following document(s) described as **OPPOSITION OF PLAINTIFF MAYFAIR HOUSE INC. TO MOTION TO DISMISS OF DEFENDANT CITY OF WEST HOLLYWOOD**

**APPENDIX OF CERTAIN AUTHORITY CITED IN THE OPPOSITION OF PLAINTIFF MAYFAIR HOUSE INC. TO MOTION TO DISMISS OF DEFENDANT CITY OF WEST HOLLYWOOD**

on the interested parties in this action as follows:

Michael Jenkins
City Attorney, City of West Hollywood
Gregg Kovacevich
Christi Hogin
JENKINS & HOGIN, LLP
1230 Rosecrans Avenue, Suite 110
Manhattan Beach, CA  90266
T:  (310) 643.8448
F:  (310) 643.8441

☒      **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with Kelley Drye & Warren LLP's practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 16, 2013, at Los Angeles, California.

Carla K. Rossi

506346310685.1.doc