MICHAEL JENKINS, State Bar No. 81997
City Attorney, City of West Hollywood
CHRISTI HOGIN, State Bar No. 138649
GREGG KETTLES, State Bar No. 170640
GREGG KOVACEVICH, State Bar No. 181295
JENKINS & HOGIN, LLP
1230 Rosecrans Avenue, Suite 110
Manhattan Beach, CA  90266
(310) 643.8448; Fax: (310) 643.8441

Attorneys for Defendant,
CITY OF WEST HOLLYWOOD

# UNITED STATES DISTRICRT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MAYFAIR HOUSE INC., a California Corporation,<br><br>               Plaintiff,<br><br>     vs.<br><br>THE CITY OF WEST HOLLYWOOD, CALIFORNIA,<br><br>               Defendant. | CASE NO. CV 13-07112 GHK (RZx)<br><br>*Assigned to the Honorable George H. King, Chief Judge*<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:          January 27, 2014<br>Time:          9:30 a.m.<br>Dept.:          650<br><br>Complaint served:  September 26, 2013<br>Response date:  November 15, 2013 |

**TO THE HONORABLE GEORGE H. KING, UNITED STATES DISTRICT COURT JUDGE, PLAINTIFF, AND ITS ATTORNEYS OF RECORD:**

Defendant City of West Hollywood (the "City") submits the following memorandum of points and authorities in reply to the Opposition of Plaintiff Mayfair House, Inc. to Motion to Dismiss of City as follows:

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................ ii

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

II.  ARGUMENT ................................................................................................... 2

   A.   Article IV, Section 20 of the California Constitution Does Not Preempt
        Local Regulation of Retail Sales ........................................................... 2

   B.   Mayfair's Authorities Confirm that Local Governments Are Barred Only
        From Legislating on the *Pursuit* of Wildlife and Are Otherwise Free to
        Restrict the Sale of Wildlife Products .................................................... 4

   C.   There Is *No* Basis To Infer that the Ordinance Will Have More Than an
        Incidental Effect on the Pursuit of Wildlife ........................................... 6

   D.   Because it has Multiple Elements Different from State Law, The Ordinance
        Is Not Duplicative ............................................................................... 7

   E.   Regardless How the Test is Styled, the Ordinance is Not Preempted by
        Contradiction ...................................................................................... 8

   F.   Though Comprehensive and Detailed on the Conservation of Wildlife, the
        Fish and Game Code Does Not Preempt the Ordinance by Occupying the
        Field with Respect to Sales of Fur Products in Town ............................ 10

   G.   The Ordinance is Not Void for Vagueness ............................................ 11

        1.   The "Enhanced Clarity" Requirement is Not Applicable Because
             Unknowing Violations of the Ordinance Are Not Punishable through
             Criminal Sanctions ..................................................................... 11

        2.   Mayfair Offers No Serious Opposition in Support of its Void for
             Vagueness Claim ........................................................................ 12

   H.   There Are No Fact Issues That Would Prevent the Complaint From Being
        Dismissed ......................................................................................... 16

   I.   Because the Ordinance's Classifications Have a Rational Basis, Mayfair's
        Equal Protection Claim Must Be Dismissed .......................................... 17

   J.   The Court Is Not Required to Exercise Supplemental Jurisdiction Over
        Mayfair's State Law Claims ............................................................... 18

III. CONCLUSION .............................................................................................. 19

i

# TABLE OF AUTHORITIES

## Cases

*Andrews Farms v. Calcot, Ltd.*
  527 F.Supp.2d 1239, 1248 (E.D. Cal. 2007) ..................................................... 12

*California Veterinary Medical Assn. v. City of West Hollywood*
  152 Cal.App.4th 536, 61 Cal.Rptr. 318 (2007) ..................................................... 6

*City of Cleburne, Tex. v. Cleburne Living Center*
  473 U.S. 432, 105 S.Ct. 329, 87 L.Ed.2d 313 (1985) ......................................... 17, 18

*City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc.*
  56 Cal.4th 729, 743, 156 Cal.Rptr.3d 409, 416 (2013) ..................................... 9, 10

*Cohen v. Facebook, Inc.*
  798 F.Supp.2d 1090, 1094 (N.D. Cal. 2011). ..................................................... 12

*Contest Promotions, LLC v. City and County of San Francisco*
  2010 WL 1998780 (N.D. Cal., May 18, 2010, C 09-04434SI) ..................................... 13

*Ex parte Cencinino*
  31 Cal.App. 238, 160 P. 167 (1916) ..................................................... 4, 5

*Ex Parte Daniels*
  183 Cal. 636, 642, 192 P. 442, 445 (1920) ..................................................... 9

*Ex Parte Maier*
  103 Cal. 476, 37 P. 402 (1894) ..................................................... 3, 4

*Grayned v. City of Rockford*
  408 U.S. 104, 110 n.15, 92 S.Ct. 2294, 2300 n.15, 33 L.Ed.2d 222 (1972) ..................... 15

*Great Western Shows, Inc. v. County of Los Angeles*
  27 Cal.4th 853, 118 Cal.Rptr.2d 746 (2002) ..................................................... 7, 8, 9

*Hill v. Colorado*
  530 U.S. 703, 733, 120 S.Ct. 2480, 2498, 147 L.Ed.2d 597 (2000) ............................. 15

*Humanitarian Law Project v. Reno*
  9 F.Supp.2d 1176, 1202 (C.D. Cal. 1998) ..................................................... 11

*In re Makings*
  200 Cal. 474, 253 P. 918 (1927) ..................................................... 4

*In re Portnoy*
  21 Cal.2d 237, 131 P.2d 1 (1942) ..................................................... 7

*McGowan v. State of Md.*
  366 U.S. 420, 428, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961) ................................. 12

*Merrifield v. Lockyer*
  547 F.3d 978, 989 (9th Cir. 2008) ..................................................... 16, 18

**CITY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

*Northern Cal. Psychiatric Society v. City of Berkeley*
   178 Cal.App.3d 90, 105-06, 223 Cal.Rptr. 609, 615 (1986) ....................................... 9, 16

*People v. Mueller*
   8 Cal.App.3d 949, 88 Cal.Rptr. 157 (1970) ............................................................ 6

*RUI One Corp. v. City of Berkeley*
   371 F.3d 1137, 1154 (9th Cir. 2004) ..................................................................... 17

*St. Joseph Abby v. Castille*
   712 F.3d 215, 225, 226 (5th Cir. 2013) ................................................................. 18

*U.S. v. Robel*
   389 U.S. 258, 275, 88 S.Ct. 419, 430, 19 L.Ed.2d 508 (1967) ........................................ 11

*Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*
   455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982) .................................. 12

*Water Quality Assn. v. County of Santa Barbara*
   44 Cal.App.4th 732, 738, 52 Cal.Rptr.2d 184, 187 (1996)................................................. 9

*Young v. Department of Fish & Game*
   124 Cal.App.3d 257, 177 Cal.Rptr. 247 (1981) ....................................................... 3


**Federal Statutes and Regulations**

15 U.S.C. § 69, subd. (b) ............................................................................................... 14

16 C.F.R. § 301.1, subd. (b)............................................................................................ 14

16 C.F.R. § 301.9, subd. (b)............................................................................................ 14


**State Constitution**

Cal. Const. art. IV, § 20 ...................................................................................... 1, 2, 3, 4, 5


**State Statutes**

California Fish and Game Code

§ 2080 ...................................................................................................................... 8

§ 4800 ...................................................................................................................... 8


**Other State Authority**

California Attorney General Opinion No. 87-607, 70 Ops.Cal.Atty.Gen. 210, 1987
   WL 247263 (September 3, 1987) ..................................................................................... 3

//
//

iii

## West Hollywood Municipal Code

§ 1.08.010(e) ........................................................................................... 11

§ 1.08.010 (f) .......................................................................................... 11

§ 1.08.010(g) .......................................................................................... 11

§ 5.88.010(1) .......................................................................................... 13

§ 9.51.010(k) ............................................................................................ 5

§ 9.51.010(l) ............................................................................................. 5

§ 9.51.010(m) ........................................................................................... 5

§ 9.51.020(a)(1) ...................................................................................... 14

§ 9.51.020(a)(2) ........................................................................................ 7

§ 9.51.020(b) ....................................................................................... 7, 15

§ 9.51.020(c). ........................................................................................... 7

iv

# I.   INTRODUCTION AND SUMMARY OF ARGUMENT

An old saw teaches that when the facts are against you, argue the law; and when the law is against you, argue the facts. Having neither in its favor, Mayfair chooses instead to stretch them both. Viewing the facts as alleged, including reasonable inferences, and applying relevant law reveal that Mayfair does not have a claim for relief.

Mayfair stretches the law first by editing quotations from legal authorities to suggest support of its claim that West Hollywood's authority to ban the sale of fur products in town was stripped by California Constitution, article IV, Section 20. Review of the authorities themselves, however, confirms that Section 20 is *not* about protecting commercial markets for fish and game products. Localities are barred only from legislating on the *pursuit* of wildlife. Local governments retain the authority to restrict the sale of wildlife products in town.

Mayfair stretches the facts by claiming that the Ordinance restricts the market for fur clothing in West Hollywood, which Mayfair contends results in a significant effect on the conservation of animals from which that clothing is made. But this speculative effect on the animal population is simply too remote for the Ordinance to be preempted by state law. Even ordinances directly operating on the same area as state law have been held not preempted where they have no more than an incidental effect on subjects of state law. West Hollywood's ordinance does not even purport to operate in the wild; it is confined to a 2-square-mile fully developed urban town. Any impact on conservation of wildlife under state law is no more than incidental. Given the fact that state law focuses on the wild, while West Hollywood's ordinance controls conduct only in town, the conclusion is unavoidable that Mayfair has no claim for preemption under any theory.

Mayfair stretches credulity by claiming that the Ordinance is void for vagueness. Mayfair, owner and operator of a retail store selling fur clothing, wearing apparel, accessories, and other products, feigns confusion when faced with terms like, "second-hand store," "wearing apparel," and "fur." West Hollywood's ordinance, however, satisfies constitutional standards of clarity.

1

West Hollywood's authority to enact the Ordinance consistent with state law is a question of law. In demonstrating a rational basis for the Ordinance banning the sale of some but not all fur products, the law does not require proof that this Ordinance would have been the "best," whether measured in terms of impact or cost of enforcement. Instead the City need only show that it could have reasonably concluded that the classification scheme was rational. This requires no evidence.

Mayfair argues that the classifications in West Hollywood's ordinance flunk the rational basis test. There is no dispute that economic regulation of the type at issue here is almost universally upheld. The cases cited by Mayfair that held otherwise are, predictably, extreme cases of "grotesque" discrimination or regulatory regimes that handcuffed the virtuous and let those most in need of control run amuck. That is not the case here.

Mayfair contends that the court should exercise supplemental jurisdiction over Mayfair's state law claims. Mayfair explains that, by virtue of this motion, the court will have already become familiar with the issues, and it would not be economic to have the claims refiled in state court. If that were true, a federal court could never exercise its discretion to dismiss state court claims. Consideration of this motion to dismiss should not thereby prevent the court from declining to exercise supplemental jurisdiction over Mayfair's state law claims.

## II.    ARGUMENT

### A.    Article IV, Section 20 of the California Constitution Does Not Preempt Local Regulation of Retail Sales

By selectively editing cases, Mayfair erroneously argues that the Ordinance is *ultra vires* under the California constitution. Mayfair disputes the City's argument that article IV, section 20(a) of the California constitution is not aimed at protecting commercial markets for fish and game products. Opposition to Motion to Dismiss ("Opp.") 6:13-16. Mayfair claims that the legislature has the "constitutional power" to regulate the sale of products made of wild animals and, by clear implication, that this authority derives from

2

Section 20.  Opp. 5:12-6:13.  This is not true.  The legislature's authority derives from the police power.  Section 20 says nothing about commercial markets for fish and game products.  The power of local governments such as West Hollywood to ban the sale of fur products in their jurisdictions is unaffected.

Mayfair quotes from a California Attorney General opinion the proposition that the legislature may regulate wildlife as it "deems best," including by prohibiting "*any traffic or commerce in it.*"  Opp. 5:19-22 (quoting California Attorney General Opinion No. 87-607, 70 Ops.Cal.Atty.Gen. 210, 1987 WL 247263, at *2 (September 3, 1987) ("1987 AG Opinion"), emphasis in Opp.).  Mayfair omits the first part of one of the quoted sentences, which reveals that the basis of this authority is the police power: "In exercising its *police power* in this regard, the Legislature may regulate wild game as it deems best."  1987 AG Opinion, at *2 (emphasis added).

Mayfair also argues that state laws and regulations that prohibit commercial activity relating to fish and wildlife have been held to be within the legislature's power, citing, in addition to the 1987 AG Opinion, three other authorities.  None supports Mayfair's claim that the legislature's authority to regulate the sale of animal products is based on Section 20.  One case, *Young v. Department of Fish & Game*, 124 Cal.App.3d 257, 177 Cal.Rptr. 247 (1981), upheld Fish and Game Commission regulations on the "taking" of native reptiles and amphibians.  Plaintiffs were in the business of taking those creatures from the wild and "placing those animals in channels of trade and commerce." 124 Cal.App.3d at 262, 177 Cal.Rptr. at 249.  Plaintiffs claimed the regulations exceeded the Commission's powers because reptiles and amphibians were not "fish and game" under Section 20(b).  124 Cal.App.3d at 264-66, 177 Cal.Rptr. at 251-252.  The decision was based not on Section 20*(a)*, the basis of Mayfair's claim that the Ordinance is *ultra vires*, but rather on Section 20*(b)*.  124 Cal.App.3d at 264-66, 270-71, 177 Cal.Rptr. at 251-52, 254; First Amended Complaint ("FAC") 10:4-18.

A second case, *Ex Parte Maier*, 103 Cal. 476, 37 P. 402 (1894), upheld the validity of a state statute making it unlawful to sell deer meat or hides, against a challenge that

3

this was "beyond a proper exercise of the *police power*." 103 Cal. at 483, 37 P. at 404 (emphasis added). In fact, as this 1894 case was decided *several years before* the 1902 adoption of what is now Section 20, *Ex Parte Maier* could not have based the legislature's authority on that section.

The other decision cited by Mayfair is *In re Makings*, 200 Cal. 474, 253 P. 918 (1927). There the court upheld the validity of a state statute making it unlawful to transport or carry crabs from certain fish and game districts to other fish and game districts. 200 Cal. at 475-76, 253 P. at 919. Before quoting *Ex Parte Maier* to describe the broad scope of the legislature's "*police power*," 200 Cal. at 481, 253 P. at 921 (emphasis added), *In re Makings* explained the purpose of Section 20. It was adopted to empower the legislature, in pursing conservation efforts, to divide the state into fish and game districts and adopt rules applicable only to certain districts or groups of districts. 200 Cal. at 477, 253 P. at 919 ("the obvious purpose of this amendment was to remove the former restriction of article 4, § 25, subd. 33, which prohibited the enactment of a local law where a general law can be made applicable") (internal quotation marks omitted). In other words, Section 20 empowered the legislature to adopt laws and regulations that were not uniform statewide. Section 20 is not about protecting commercial markets for fish and game products.

**B.    Mayfair's Authorities Confirm that Local Governments Are Barred Only From Legislating on the *Pursuit* of Wildlife and Are Otherwise Free to Restrict the Sale of Wildlife Products**

Mayfair's misconstruction of legal authorities extends to its claim that Section 20(a) strips localities of the power to pass legislation "related to" wild animals. Opp. 4:8. In support of this aggressively broad proposition, Mayfair relies principally on *Ex parte Cencinino*, 31 Cal.App. 238, 160 P. 167 (1916). There petitioner was convicted of violating a Humboldt County ordinance protecting crabs. It made it unlawful to ship outside the county any crabs produced in, caught in, or taken from any ground, waters, or territory within the county. 31 Cal.App. at 239, 160 P. at 167. The court found that the

4

ordinance was aimed at the *protection of the game in the wild of the county*, and *not the sale of game products in town*: "The ordinance declares that the true intent and purpose thereof is 'solely to secure the better *protection* of the crabs and clams *in the public waters and grounds within the county of Humboldt*, state of California, and *not for the regulation of the business of dealing in crabs and clams*.'" 31 Cal.App. at 239, 160 P. at 167-68 (emphasis added). After observing the legislature had enacted a statute criminalizing essentially the same conduct as the ordinance, the court held that the ordinance was invalid. The purpose of Section 20 (at the time numbered Section 25 ½) is to "take from local political subdivisions of the state any right which they might have had, prior to the adoption of said provision of the Constitution, legislatively to deal with or regulate the matter of *pursuing* fish and game." 31 Cal.App. at 241, 160 P. at 168-69 (emphasis added).

*Cencinino* is distinguishable. Humboldt County did not ban the sale of crab meat at local grocery stores. It barred the removal from the county of any crab taken from the land, waters, or territory within the county—Humboldt County's wild. By contrast, West Hollywood's ordinance is aimed not at the wild, but rather what happens in town. While inspired by mistreatment of animals on fur farms and in the wild, the Ordinance's stated purposes are directed at the City and how the City is perceived. The Ordinance seeks to promote community awareness of animal welfare, foster a more humane environment in the City, and protect the City's reputation as a Cruelty Free Zone for animals. FAC Ex. 1, West Hollywood Municipal Code ("WHMC") § 9.51.010(k), (l), (m). Its purpose is City-centered.

Putting aside the Ordinance's purpose, the only effect that may reasonably be seen to follow from it is likewise confined to the City and its reputation. Unlike the Humboldt County ordinance overturned in *Cencinino*, West Hollywood's ordinance does not purport to regulate the matter of *pursuing* fish and game. It does not apply to trapping or the operation of fur farms. Its reach is limited to the sale of fur products in town. That the Ordinance is in some sense "related to" wildlife does not render it invalid.

## C.   There Is *No* Basis To Infer that the Ordinance Will Have More Than an Incidental Effect on the Pursuit of Wildlife

Mayfair tries to stretch the Ordinance to make it appear that it will have more than an incidental impact on the pursuit of wildlife. Mayfair cannot state a claim based on this conclusory assertion. Instead, Mayfair must allege facts from which this inference may be drawn. This Mayfair has failed to do.

Mayfair contends that by restricting the market for fur clothing in West Hollywood, the Ordinance will have more than an incidental effect on the protection and conservation of the animals from which those clothes are made. Opp. 7:13-8:3; 16:22-17:4. This connection is too remote to satisfy the definition of "incidental" established by case law. This is illustrated by *People v. Mueller*, 8 Cal.App.3d 949, 88 Cal.Rptr. 157 (1970) ("*Mueller*"), and *California Veterinary Medical Assn. v. City of West Hollywood*, 152 Cal.App.4th 536, 61 Cal.Rptr. 318 (2007) ("*Veterinary Medical Assn.*"), both of which found that the impacts of local ordinances on state statutes were incidental to the ordinances' principal purposes and scope. In *Mueller*, a Redondo Beach ordinance banned the practice of "chumming"—throwing dead fish into the water without hooks as bait to attract fish. Even though the ordinance clearly impacted fishing, the court held that this impact was only incidental, as the ordinance was aimed at pollution prevention. 8 Cal.App.3d at 954, 88 Cal.Rptr. at 160.

The same conclusion was reached in *Veterinary Medical Assn.*, where the court upheld West Hollywood's ban on the practice of non-therapeutic animal declawing. The impact on animal surgical procedures was incidental to the principal purpose and scope of the ordinance, namely to prevent animal cruelty.   152 Cal.App.4th at 560-61, 562, 61 Cal.Rptr. at 336-37, 337-38. In both cases the effect was found to be incidental even though the ordinances in question directly restricted activities in the very areas covered by state law. By contrast, West Hollywood's ordinance is even further removed. The Ordinance does not seek to regulate fur trapping or farming for *any* purpose, whether to prevent cruelty to animals, promote public safety, or any other reason. Instead, the

6

1  Ordinance restricts sales of fur clothing in town.  This is so far removed from the wild
2  that it cannot be reasonably inferred that the Ordinance will have more than an incidental
3  effect on the state's statutory and regulatory regime to conserve wildlife.

4  **D.     Because it has Multiple Elements Different from State Law, The**
5  **          Ordinance Is Not Duplicative**

6  Mayfair contends that the Ordinance duplicates state law and is therefore
7  preempted, citing *In re Portnoy*, 21 Cal.2d 237, 131 P.2d 1 (1942) ("*Portnoy*"), and
8  distinguishing *Great Western Shows, Inc. v. County of Los Angeles*, 27 Cal.4th 853, 118
9  Cal.Rptr.2d 746 (2002) ("*Great Western*").  The opposite is true.  *Portnoy* is
10  distinguishable.  The West Hollywood ordinance is even more different from state law
11  than the ordinance upheld in *Great Western*.

12  The ordinance invalidated in *Portnoy* barred certain categories of people from
13  carrying on gambling in certain categories of places.  Many of the same categories of
14  people and places were listed in a state statute prohibiting the same activities.  21 Cal.2d
15  at 241-242, 131 P.2d at 3.  For the overlapping categories, no fact in addition to those
16  needed to prove a state law violation would have been essential to prove a violation of
17  the ordinance.  The ordinance was held invalid to the extent of the overlap.  *Id.*

18  By contrast, the West Hollywood ordinance does more than simply add categories
19  of persons, places, or things to conduct already prohibited by state law.  State law bars
20  the sale of any "part or product" of various animals having fur.  Opp. 10:16-17.  The City
21  ordinance is different.  It bars the sale of "any fur product."  FAC Ex. 1, WHMC §
22  9.51.020(b).  "Fur products" are in turn defined to mean certain "wearing apparel."  *Id.* at
23  § 9.51.020(a)(2).  The Ordinance further contains certain exemptions, including fur sales
24  by non-profit organizations and certain sales of used fur.  *Id.* at § 9.51.020(c).  At least
25  some of the foregoing would be essential to prove a violation of the Ordinance and,
26  whether elements of a *prima facie* case or an affirmative defense, all of them would be
27  potentially relevant to a prosecution under the Ordinance.

28

1    Further, prosecution under state law would involve elements not required under the

2    Ordinance, namely that the animal "part or product" sold came from an animal covered

3    by statute.  California Fish and Game Code §§ 2080, 4800; FAC 12:22-23.  These

4    multiple differences are substantial, especially when compared to the single difference

5    found sufficient in *Great Western*, 27 Cal.4[th] at 865, 118 Cal.Rptr.2d at 865.  The local

6    ordinance upheld by the court there required only one additional element over and above

7    that imposed by state law—that the sale take place on county property.  *Id.*

8    Mayfair claims that the City concedes that the ordinances and statutes are not all

9    that different.  Opp. 12:3-8.  The City does not.  City's Memorandum of Points and

10   Authorities in Support of Its Motion to Dismiss ("Mem.") 8:17-24.  Given all the

11   attention Mayfair devotes to the meaning of "wearing apparel" and "fur" and the

12   Ordinance's exemptions—none of which Mayfair contends are present in the state

13   statutes—Mayfair cannot pretend for purposes of preemption analysis that they do not

14   exist.  *See* Opp. 18:25-24:23.

15   **E.    Regardless How the Test is Styled, the Ordinance is Not Preempted by**

16   **Contradiction**

17   "An ordinance contradicts general law when it is inimical thereto."  Opp. 12:10.

18   Mayfair argues that contradiction may be found not only when local law forbids what

19   state law "mandates," but also when local law forbids what state law "authorizes."  Opp.

20   13:17-14:11.  For purposes of this motion, this is a distinction without a difference.  The

21   basic question is the same:  did the state legislature intend to prohibit local governments

22   like West Hollywood from restricting the sale of fur products in town?  To describe a

23   statute that does not intend to prohibit local action, in its opening brief the City used the

24   term "authorizes" along with the following alternative terms:  "allows," "allowing," and

25   "permitted."  Mem. 9:7, 9:21, 10:11, 10:14, 10:16.  Regardless whether "authorizes"

26   belongs with the rest of these terms or not, there is no conflict here.

27

28

**CITY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

The cases cited by Mayfair to support its claim of conflict are distinguishable, as the legislature in each case *expressly barred* localities from enacting the exact kinds of laws found to be in conflict:

- *Ex Parte Daniels*, 183 Cal. 636, 642, 192 P. 442, 445 (1920) (quoting the statute: "'Limitations as to the rate of speed herein fixed shall be exclusive of all other limitations fixed by any law of this state or any political subdivision thereof.'");

- *Northern Cal. Psychiatric Society v. City of Berkeley*, 178 Cal.App.3d 90, 105-06, 223 Cal.Rptr. 609, 615 (1986) ("*Northern Cal. Psychiatric*") (observing that the ordinance preventing patients seeking electric shock therapy from obtaining it was "contrary to the express intent of the Legislature that 'the integrity and *free choice* of every such patient [be] *fully recognized and protected*.' (Stats.1976, ch. 1109, § 1, p. 4992, emphasis added.)");

- *Water Quality Assn. v. County of Santa Barbara*, 44 Cal.App.4th 732, 738, 52 Cal.Rptr.2d 184, 187 (1996) (quoting the state statute, which provided that: "'The Legislature finds that variation in water quality . . . throughout the state . . . requires that on-site water softening or conditioning be available throughout the state . . . but that [it] shall be available only as hereinafter set forth.'").

By contrast, Mayfair points to no statute that expressly states that sale of fur products shall be permitted in every city and county in the state. "[N]o inimical conflict will be found where it is reasonably possible to comply with both the state and local laws." *City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc.*, 56 Cal.4th 729, 743, 156 Cal.Rptr.3d 409, 416 (2013) ("*Riverside*"). With limited exceptions permitting sales of animal products, the Fish and Game Code is predominantly about conservation. West Hollywood's ban on the sale of fur products in town is no more inimical to the Code than:

- LA County's ban on the sale of guns on county property was inimical to state law allowing gun sales, *Great Western*, 27 Cal.4th at 866, 118 Cal.Rptr.2d at 755; or

- the City of Riverside's ban on medical marijuana dispensaries was inimical to state law aiming to ensure access to medical marijuana, *Riverside*, 56 Cal.4th at 753-54, 156 Cal.Rptr.3d at 506-07.

*Great Western* and *Riverside* held that there was no conflict between state law and these ordinances. Similarly, there is no conflict between state law and West Hollywood's ordinance.

### F.   Though Comprehensive and Detailed on the Conservation of Wildlife, the Fish and Game Code Does Not Preempt the Ordinance by Occupying the Field with Respect to Sales of Fur Products in Town

Mayfair contends that through the Fish and Game Code, the legislature has preempted the Ordinance by occupying the field. Mayfair points to various provisions of the Code, including provisions that permit some animal products to be sold under certain conditions. Opp. 16:9-21. But this is not enough. The sale of fur products is not so extensively covered as to "clearly indicate" that the field has become either exclusively a matter of state concern or one in which the state interest is so paramount it will not tolerate additional local action. *Riverside*, 56 Cal.4th at 743, 156 Cal.Rptr.3d at 416. The Code's program of conservation in the wild is not compromised by West Hollywood banning sales of fur products in town.

Mayfair does not dispute the City's contention that the adverse effects of the Ordinance on transient citizens is outweighed by the possible benefit to West Hollywood. The Ordinance is latest of many steps taken by the City over the past 25 years to make itself a community that is free from violence and cruelty with regard to animals. Simply put, this is an issue in which West Hollywood is deeply interested. The inconvenience of requiring those who want fur products to shop elsewhere pales in comparison.

**CITY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

G.     **The Ordinance is Not Void for Vagueness**

      1.     **The "Enhanced Clarity" Requirement is Not Applicable Because Unknowing Violations of the Ordinance Are Not Punishable through Criminal Sanctions**

Mayfair argues that the City's ordinance should be subject to an "enhanced clarity" requirement "because it imposes criminal sanctions for its violation." Opp. 17:17-18. Mayfair is wrong. While it is true that the degree of permissible indefiniteness narrows when a law invokes criminal sanctions and potentially affects fundamental rights, *U.S. v. Robel*, 389 U.S. 258, 275, 88 S.Ct. 419, 430, 19 L.Ed.2d 508 (1967), West Hollywood's fur ban does neither. The Ordinance unambiguously provides that violations of Chapter 9.51 (Sale of Fur Products) are subject to *administrative penalties* (fines assessed through administrative citations). WHMC § 1.08.010(e) and (f). As is quite common with municipal administrative penalty schemes, criminal penalties only become an option if the same person violates the same provision more than three times in a 12-month period. WHMC § 1.08.010(g). Therefore, there is no possibility of any person facing criminal sanctions (and the corresponding implications to one's liberty interest) for "unknowingly" violating the ordinance. Only if the same person violates the same provision four or more times in a given 12-month period is there even a possibility of criminal sanctions. By then, of course, an offender could not plausibly suggest that the violation was "unknowing" due to some alleged ambiguity in the ordinance. Because criminal sanctions are not even available unless the same person violates the same provision at least four times in a year, the public policy rationale behind the "enhanced clarity" requirement simply does not apply.[1] The fur ban is merely an economic

---

[1] Mayfair's reliance on *Humanitarian Law Project v. Reno*, 9 F.Supp.2d 1176, 1202 (C.D. Cal. 1998), is misplaced, to say the least. That case involved a challenge to the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal statute that, as the name implies, imposed severe criminal penalties for providing material support to any known terrorist organization. Unlike the AEDPA, unknowing violations of West Hollywood's fur products ordinance are not punishable through criminal sanctions.

11

1  regulation subject to more relaxed vagueness standard. *Village of Hoffman Estates v. The*
2  *Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362
3  (1982).

4      **2.      Mayfair Offers No Serious Opposition in Support of its Void for**
5              **Vagueness Claim**

6      In its opposition brief, Mayfair offer three reasons why it believes it has stated a
7  claim that the Ordinance is void for vagueness.  First, Mayfair insists that the ordinance is
8  unconstitutionally vague on its face because neither it nor the interpretive guidance
9  provided by the City in the form of FAQs defines the term "second-hand store" —a term
10 that govern exemptions to the Ordinance's general ban.[2]  Opp. 18:26-19:10.  In its
11 moving papers, the City offered the common-sense observation that a "second-hand
12 store" is a store "that deals predominantly in used goods" and Mayfair responds as
13 though that is some shocking revelation.  Not only is the City's observation consistent
14 with basic common sense—in and of itself enough to provide sufficient notice to business
15 people of ordinary intelligence and overcome a vagueness claim, *see McGowan v. State*
16 *of Md.*, 366 U.S. 420, 428, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961)—it is consistent
17 with a definition found elsewhere in the West Hollywood Municipal Code.  The Code
18 defines "secondhand dealer" as "any person whose business is primarily that of engaging
19 in the business of buying, selling, trading, taking in pawn, accepting for sale or
20 consignment, accepting for auctioning, or auctioning secondhand tangible personal

21

22 [2]Mayfair also argues that the term "private party" renders the ordinance vague.  However,
   the First Amended Complaint does not allege that the term "private party" is vague or
23 ambiguous.  A motion to dismiss for failure to state a claim tests the sufficiency of the
   complaint based on the face of the pleadings.  *Andrews Farms v. Calcot, Ltd.,* 527
24 F.Supp.2d 1239, 1248 (E.D. Cal. 2007).  The motion must be evaluated solely on the face
   of the complaint.  *Cohen v. Facebook, Inc.,* 798 F.Supp.2d 1090, 1094 (N.D. Cal. 2011).
25 Consequently, the City need not respond to supplemental allegations made in plaintiff's
   brief.  In any case, the suggestion that the term "private party" is so ambiguous as to
26 render the ordinance unconstitutionally vague is silly.  The term "private party" seller is
   used in common parlance to refer to one who sells a good on his or her own as opposed
27 to going through a traditional retail outlet.  For example, a private party seller of a used
   automobile as opposed to a used car dealer.
28

12

1  property." WHMC § 5.88.010(1).  Accordingly, Mayfair cannot credibly claim the term

2  "second-hand store" renders the Ordinance unconstitutionally vague.[3]

3       Second, Mayfair insists the terms "wearing apparel" and "fur" are vague.  Opp.

4  19:11-20:14.  The Ordinance defines "wearing apparel" as "any articles of clothing or

5  covering for any part of the body."  Mayfair contends the definition is "entirely vague"

6  because "[v]irtually *anything* could be used to cover any part of the body."  Opp. 19:17

7  (emphasis in original).  The argument fails for at least two reasons.  First, it is entirely

8  reasonable to presume that business people of ordinary intelligence in the industry

9  understand what the term "wearing apparel" encompasses.  Indeed, as the City pointed

10 out in its moving papers, Mayfair itself alleges that it is in the business of selling

11 "wearing apparel accessories," among other things.  Mem. 20:21-24; FAC 8:12.  Mayfair

12 cannot, on the one hand identify itself as a seller of "wearing apparel" and, on the other,

13 claim the term is so vague and ambiguous that a business person of reasonable

14 intelligence could not reasonably be expected to know its meaning.  Second, the

15 definition of "wearing apparel" used by the City precisely mirrors the definition of

16 "wearing apparel" set forth in the regulations implementing the Fur Products Labeling

17 _____

18 [3]Mayfair's reliance on *Contest Promotions, LLC v. City and County of San Francisco,*
2010 WL 1998780 (N.D. Cal., May 18, 2010, C 09-04434 SI), is misplaced.  There, the
19 plaintiff was in the business of operating contests in which patrons were invited to enter
local businesses to fill out entry forms.  To attract entries, plaintiffs placed signs outside
20 the business.  Like many cities, San Francisco has a sign ordinance that allows on-site
signs (signs advertising the business on the site) but prohibits off-site signs (signs
21 advertising good, services, etc., at a location other than that where the sign is located).
However, the San Francisco ordinance defined off-site sign as a sign "which directs
22 attention to a business, commodity, industry or other activity which is sold, offered or
conducted elsewhere than on the premises upon which the sign is located, or to which it
23 is affixed, and which is sold offered or conducted on such premises *only incidentally if at
all." Id.* at 4 (emphasis added).  The court recognized that the ordinance need only
24 provide people of ordinary intelligence a "reasonable opportunity to understand what it
says," but noted that it failed to define or even provide any guidance on the meaning of
25 "incidentally," leaving businesses to guess at its meaning.  Here, on the other hand, not
only is the term "second-hand store" in and of itself sufficiently certain for business
26 people of ordinary intelligence, the West Hollywood Municipal Code provides precise
guidance in the form of a definition for "secondhand dealer" found elsewhere in the
27 Code.  As the term itself reasonably implies, that definition is consistent with the
common sense notion that at second-hand store is one that deals primarily in second-hand
28 goods.  *See* WHMC § 5.88.010(1).

13

Act ("FPLA"). *See* 16 C.F.R. § 301.1, subd. (b). As a retailer of fur products, Mayfair is subject to (and is presumably familiar with) the FPLA. The definition of "wearing apparel" under the FPLA regulations has remained unchanged since 1952 and has never been held unconstitutionally vague despite the fact that Mayfair and many thousands of other retail establishments like Mayfair across the nation have been subject to it for more than 60 years. Mayfair's suggestion that virtually anything can be used to cover any part of the body, and therefore virtually anything can be considered "wearing apparel," is patently absurd and without merit.

With respect to the term "fur," Mayfair argues that the term is vague and that the City's FAQs fail to resolve the question of whether shearling constitutes "fur" under the Ordinance. Opp. 20:1-14. The argument is disingenuous, to say the least, considering that the definition of "fur" in the City's ordinance precisely tracks the definition of "fur" set forth in the FPLA and that shearling is considered to be fur under the FPLA. *Compare* WHMC § 9.51.020(a)(1) *with* 15 U.S.C. § 69, subd. (b); 16 C.F.R. § 301.9, subd. (b). As a retailer subject to the strict labeling requirements of the FPLA, Mayfair certainly knows that shearling is encompassed within this definition. Indeed, every shearling product Mayfair sells should be outfitted with FPLA-mandated labeling. Hence, a very simple rule of thumb for Mayfair and others in the industry: If it is fur for purposes of the FPLA, it is fur under the City's ordinance.[4]

---

[4] In its moving papers, the City pointed out that shearling is defined as "skin from a recently sheared sheep or lamb that has been tanned and dressed with the wool left on." Mem. 20:5-6. Mayfair insists that has left it more confused because animal skin that has been tanned and dressed "is the very definition of 'leather.'" Opp. 20:7-8. According to Mayfair, anything made of shearling should therefore fall into the ordinance's exception to the fur ban (which applies to skins with hair, fleece, or fur fibers attached "as are to be converted into leather"). Mayfair is getting a bit carried away with the word games. The referenced exception is obviously intended to avoid interfering with the process of manufacturing non-fur, leather goods. For example, the exception would allow for the sale of cowhide with the hair still attached when that hide is intended to be converted into leather (which involves removal of the hair and tanning and dressing). Shearling, and the shearling products that Mayfair sells, are obviously in their final state and are not "to be converted" into anything.

The third argument advanced by Mayfair in support of its vagueness claim centers on the Ordinance's application to internet-based transactions.  Opp. 20:15-23.  The City has already clarified the application of the Ordinance as it applies to internet transactions where a fur product is (1) ordered by a consumer outside the City, but shipped from a location in the City, and (2) ordered by a consumer inside the City, but shipped from a location outside of the City.  The City clarified that the ordinance would apply to the former (because it involves "distribution" from within the City), but not the latter (because the distributor is outside the City).  FAC Ex. 3.  Determined to identify an ambiguous scenario, Mayfair now insists that no one can possibly know whether the Ordinance applies if a person outside the City places an online order to purchase a fur clothing product through a store located in the City if the fur product is shipped from a site outside the City to the customer.  Opp. 20:18-23.

As the U.S. Supreme Court has noted, in the context of a vagueness challenge it will always be true that a litigant can conjure up hypothetical cases highlighting the imprecise nature of our language.  *Grayned v. City of Rockford*, 408 U.S. 104, 110 n.15, 92 S.Ct. 2294, 2300 n.15, 33 L.Ed.2d 222 (1972).  However, speculation about possible vagueness in hypothetical situations not before the court will not support a facial attack on a statute that is surely valid in the vast majority of its intended applications.  *Hill v. Colorado*, 530 U.S. 703, 733, 120 S.Ct. 2480, 2498, 147 L.Ed.2d 597 (2000).  In any case, the answer to Mayfair's hypothetical is very straightforward and flows naturally from the plain language of the Ordinance, which provides that is unlawful to "sell, import, export, trade, or distribute any fur product by any means anywhere within the City of West Hollywood."  FAC Ex. 1, WHMC § 9.51.020(b).  In the hypothetical, the sale is not consummated in the City of West Hollywood (it is consummated online), there

**CITY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

is no importing, exporting, or trading of a fur product, and there is no distribution[5] of a fur product within the City limits.  Mayfair obfuscates to save its complaint.

## H.   There Are No Fact Issues That Would Prevent the Complaint From Being Dismissed

Mayfair contends that its claims of preemption and for violation of equal protection may not be dismissed because there are "fact questions."  Opp. 24:28.  *See also* Opp. 14:25-15:7, 24:9.  There are no fact questions.  The resolution of issues regarding the preemption of a municipal ordinance by preexisting state law and its constitutionality "turns entirely on questions of law."  *Northern Cal. Psychiatric*, 178 Cal.App.3d at 99-100, 223 Cal.Rptr. at 611.  While this case and many of the other decisions cited by the City were decided on motions for summary judgment or after evidence had been taken, none held that a motion to dismiss could not be granted.  Where the allegations and reasonable inferences from them show there is no preemption, dismissal is appropriate.

Mayfair's equal protection claim should be dismissed based on the pleadings.  The City contends that there is a rational basis for banning the sale of fur clothing, but not banning the sale of fur furniture, in part because the City's law enforcement resources are limited.  Mem. 24:10-19.  Mayfair argues that this is not true, and that the Ordinance's classifications "create a much more difficult and expensive scheme for the City to enforce."  Opp. 24:6-7.  This is not the legal standard.  The City is not required to establish that the classification scheme is cheaper to enforce as a matter of fact.  *Merrifield v. Lockyer*, 547 F.3d 978, 989 (9th Cir. 2008) (on rational basis review, "[t]he State is not compelled to verify logical assumptions with statistical evidence").  If this were the test, legislative activity would become stuck in the mire of never ending

---

[5] As discussed in the FAQs released by the City, "distribute" generally means to "promote, sell, and ship or deliver to individual customers."  In the internet-based hypothetical posed by Mayfair, the fur product is not being promoted, sold, and shipped or delivered within the City limits.  Therefore, it is clearly not being "distributed" within the City.

16

1    economic studies.  Instead, the City need only show that it could have reasonably

2    concluded that the classification scheme it selected was rational.  *RUI One Corp. v. City*

3    *of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004).  The City could have reasonably

4    believed that a ban on more products and more sellers would have been more costly to

5    enforce.  Because of this, there is no fact question that needs to be resolved.

**I.      Because the Ordinance's Classifications Have a Rational Basis,**
**Mayfair's Equal Protection Claim Must Be Dismissed**

8         Mayfair contends that there is no rational basis for the Ordinance exempting fur

9    sales by non-profit entities, citing *City of Cleburne, Tex. v. Cleburne Living Center*, 473

10   U.S. 432, 105 S.Ct. 329, 87 L.Ed.2d 313 (1985).  *Cleburne*'s rationale does not apply

11   here.  At issue there was a city's exclusion of the intellectually disabled, then referred to

12   as "mentally retarded," from the community.  The court found that the exclusion was

13   based on irrational fears of the disabled.  A majority of the court joined a pair of

14   concurring opinions that recounted the long history of society's "grotesque" mistreatment

15   of this group.  473 U.S. at 454, 105 S.Ct. at 3262 ("the Court of Appeals correctly

16   observed that through ignorance and prejudice the mentally retarded 'have been subjected

17   to a history of unfair and often grotesque mistreatment.'") (Stevens, J., concurring); 473

18   U.S. at 461, 105 S.Ct. at 3266 ("the mentally retarded have been subject to a lengthy and

19   tragic history of segregation that can only be called grotesque") (Marshall, J., concurring)

20   (citations and internal quotation marks omitted).

21        West Hollywood's ordinance is cut from an entirely different piece of cloth.  The

22   Ordinance is not based on irrational prejudice against Mayfair, its owners, or indeed any

23   group of individuals.  It does not seek to exclude anyone from the West Hollywood

24   community.  Instead, it prohibits conduct, namely the sale of fur clothing.  Mayfair

25   argues that it is irrational to exempt non-profits from the Ordinance's prohibition,

26   notwithstanding the good work they do.  But if it is rational for the Internal Revenue

27   Code to treat non-profit entities differently from for profit entities for purposes of

28   taxation, surely it is rational for West Hollywood to do the same for purposes of

17

1  regulating the marketplace.  The same can be said for the other classifications made by

2  the Ordinance.  As one of the concurring opinions in *Cleburne* observed, rational basis

3  inquiry results "in the validation of most economic classifications."  473 U.S. at 453, 105

4  S.Ct. at 3261 (Stevens, J., concurring).

5       The rational basis supporting the Ordinance's classifications defeats Mayfair's

6  claim that this is "mere economic protectionism for the sake of economic protectionism"

7  under *Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008) ("*Merrifield*").  Opp. 24:10-23.

8  The court there acknowledged that "there might be instances when economic

9  protectionism might be related to a legitimate governmental interest and survive rational

10  basis review."  547 F.3d at 991 n.15.  But the facts in *Merrifield* were irrational to the

11  extreme.  The legislature regulated individuals in the business of pest control.  The court

12  found that the statute's exemption of certain categories of individuals was irrational.  It

13  wasn't just that the excluded individuals were *equally* suited to regulation as those

14  included.  Instead, the excluded individuals were *more* suited to regulation.  *Id.* at 992.

15  The other case cited by Mayfair is similarly extreme.  *See St. Joseph Abby v. Castille*,

16  712 F.3d 215, 225, 226 (5th Cir. 2013) (class exempt from regulation, not the class

17  regulated by the statute, "have been the problem for consumers" and "puts them at

18  greater risk of abuse").  Here Mayfair would have to show not only that there is no

19  rational basis for the Ordinance's classifications, but that the harms posed by fur sales in

20  West Hollywood are *more* pernicious when the fur is in furniture or a used product, or

21  sold by a non-profit.  This Mayfair cannot show.

22  **J.     The Court Is Not Required to Exercise Supplemental Jurisdiction Over**

23  **        Mayfair's State Law Claims**

24       Mayfair contends that the court should continue to exercise supplemental

25  jurisdiction over its state law claims.  It argues that dismissal would not be warranted by

26  considerations of economy, because: "By virtue of the City's Motion to Dismiss and all

27  the attendant briefing, this Court will have familiarity with the arguments, issues, and

28  relevant law pertinent to the state law claims."  Opp. 25:9-11.  Mayfair's argument

18

proves too much.  How else would the City have raised the issue if not in connection with a motion to dismiss?  By Mayfair's logic a court could never exercise its discretion to dismiss state law claims, because in considering the issue, it would have become too familiar with the claims to make dismissal economical.

## III.  CONCLUSION

For the forgoing reasons, the City respectfully requests that Mayfair's complaint be dismissed, without leave to amend.

Dated:        January 6, 2014                     Respectfully submitted,


CHRISTI HOGIN
GREGG KETTLES
GREGG KOVACEVICH
Attorneys for Defendant
City of West Hollywood

19

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1230 Rosecrans Avenue, Suite 110, Manhattan Beach, CA 90266.

4

5

On January 6, 2014, I served the foregoing documents described as:

6

**REPLY IN SUPPORT OF MOTION TO DISMISS;**

7

on the interested party or parties in this action by placing the original thereof enclosed in sealed envelopes with fully prepaid postage thereon and addressed as follows:

8

*PLEASE SEE SERVICE LIST ATTACHED*

9

10

☐ **VIA U.S.MAIL.**  I enclosed the above described documents in a sealed envelope or package addressed to the person(s) listed above or on the attached; caused such envelope with postage thereon fully prepared to be placed in the United States mail at Los Angeles, California.

11

12

13

*I am readily familiar with the Jenkins & Hogin, LLP's practice of collection and processing correspondence for outgoing mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon prepaid at Manhattan Beach, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.*
*in affidavit.*

14

15

16

☒ (TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")).  The foregoing documents will be served by the court via NEF and hyperlink to the document.  On November 15, 2013, I checked the CM/ECF docket for this case and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission.

17

18

19

☒ Service information continued on attached page.

20

21

☒ **FEDERAL.**  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service is made.

22

23

Executed this 6th day of January, 2014, at Manhattan Beach, California.

24

25

/s/
WENDY HOFFMAN

26

27

28

1

<u>**SERVICE LIST**</u>

2

*MAYFAIR HOUSE INC., v. THE CITY OF WEST HOLLYWOOD*
*CASE NO. CV-13-07112 GHK (RZx)*

3

4

KELLEY DRYE & WARREN LLP                 Attorneys for Plaintiff,
Michael J. O'Connor                      *Mayfair House Inc.*
David E. Fink

5

10100 Santa Monica Boulevard, 23rd Floor
Los Angeles, CA 90067-4008

6

Tel:  (310) 712-6100
Fax: (310) 712-6199

7

moconnor@kelleydrye.com
dfink@kelleydrye.com

8

9

KELLEY DRYE & WARREN LLP                 Attorneys for Plaintiff,
Laurence J. Lasoff                       *Mayfair House Inc.*
Ira T. Kasdan

10

Joseph D. Wilson
Washington Harbour, Suite 400

11

3050 K Street, N.W.
Washington, DC 20007

12

Tel:  (202) 342-8400
Fax: 202) 342-8451

13

jwilson@kelleydrye.com
Llasoff@kelleydrye.com

14

ikasdan@kelleydrye.com

15

Robert G Knaier                          Attorney for Movant,
Chapin Fitzgerald LLP                    *Animal Legal Defense Fund*

16

550 West C Street Suite 2000
San Diego, CA 92101

17

619-241-4810
Fax: 619-955-5318

18

Email: rknaier@cftriallawyers.com

19

Corey Allen Evans                        Attorney for Movant,
Evans and Page                           *The Humane society of the United States*

20

Spear Tower
One Marke Plaza, Suite 3600

21

San Francisco, CA 94105-1102
415-293-8592

22

Email: cevans@evansandpage.com

23

24

25

26

27

28