E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 13-7112-GHK (RZx) | Date | May 5, 2014 |
|---|---|---|---|
| Title | *Mayfair House, Inc. v. City of West Hollywood* | | |

| Presiding: The Honorable | **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     **(In Chambers) Order re:** Defendant's Motion to Dismiss (Dkt. 22)

        This matter is before us on Defendant City of West Hollywood's ("City" or "Defendant") Motion to Dismiss. We have considered the papers filed in support of and in opposition to this Motion, and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

## I.    Background

        On November 21, 2011, the West Hollywood City Council adopted Ordinance No. 11-877 (the "Ordinance"), codified as WHMC § 9.51.020, which, subject to certain exceptions, makes it "unlawful for anyone to sell, import, export, trade or distribute any fur product by any means anywhere within the City of West Hollywood." (FAC ¶¶ 2, 19; WHMC § 9.51.020(b) (2011).) The Ordinance specifically exempts the sale, importation, exportation, trade or distribution of: (1) "[f]ur products by a non-profit organization"; (2) " the pelt or skin of an animal that is preserved through taxidermy or for the purpose of taxidermy"; and (3) "[u]sed fur products by a private party (excluding a retail transaction), nonprofit organization or second-hand store, including a pawn shop." (*Id.* § 9.51.020(c)(1)-(3).) In enacting the Ordinance, the City found "the current sale of fur products in the City of West Hollywood [was] inconsistent with the city's goal to be a community that cares about animal welfare and the city's reputation as a Cruelty Free Zone for animals." (The purpose of the Ordinance is to "promote community awareness of animal welfare and, in turn, . . . foster a consciousness about the way we live in the world and create a more humane environment in the City." (FAC ¶ 25; WHMC § 9.51.010 (k)-(m).)

        The Ordinance provides the following definitions. "Fur" is defined as "any animal skin or part thereof with hair, fleece, or fur fibers attached thereto, either in its raw or processed state, but . . . not such skins as are to be converted into leather or which in processing shall have the hair, fleece, or fur fiber completely removed." (WHMC § 9.51.020(a)(1).) "Fur product" is defined as "any article of wearing apparel made in whole or part of fur, excluding dog or cat fur product to which Section 308 of the Tariff Act of 1930 applies." (*Id.* § 9.51.020(a)(2).) It further defines "wearing apparel" as "any

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7112-GHK (RZx) | Date | May 5, 2014 |
|---|---|---|---|
| Title | *Mayfair House, Inc. v. City of West Hollywood* | | |

articles of clothing or covering for any part of the body." (*Id.* § 9.51.020(a)(6).) "Used fur" is defined as "fur in any form which has been worn or used by an ultimate consumer." (*Id.* § 9.51.020(a)(5).)

The Ordinance went into effect on September 21, 2013. (FAC ¶¶ 2, 19; WHMC § 9.51.020(b).) First-time violators of the Ordinance are subject to a $200 penalty plus a $50 administrative fee.[1] (FAC, Ex. 2 (July 2, 2013 Letter to West Hollywood Business Owners from City's Code Compliance Mgr.), at 29; *see* WHMC § 1.08.010(e)-(g).) If a person commits four or more violations of the Ordinance in a twelve-month period, he or she is charged with an infraction or a misdemeanor. (FAC, Ex. 2 (July 2, 2013 Letter to West Hollywood Business Owners from City's Code Compliance Mgr.), at 29; *see* WHMC § 1.08.010(e)-(g).)

Before the Ordinance went into effect, the City published and sent to businesses a number of statements indicating how the Ordinance would be enforced. (FAC ¶¶ 28-30, Exs. 2-4.) In these statements, the City provided that "[t]he ban applies to shearling products" because "the skin for such products is tanned with the wool still attached." (*Id.*, Ex. 2 at 28, Ex. 3 at 31, Ex. 4.) It clarified that "wearing apparel" includes "shoes, boots, hats, and gloves," but does not include "purses, jewelry, and pocketbooks" or "[f]urniture." (*Id.*) The City also clarified that a blanket is not considered "wearing apparel" within the definition of "fur product" because "it is not typically worn by a person," but a "sleeved blanket" would constitute "wearing apparel" because it is "designed to be worn." (*Id.*, Ex. 3 at 32.) The City also explained how the Ordinance applied in the context of online sales. (*Id.*)

Plaintiff Mayfair House, Inc. ("Mayfair") operates a retail store in West Hollywood that sells high-end clothing products, including clothing products made wholly or partly of animal fur. (FAC ¶¶ 31-32.) For example, Plaintiff sells parkas that are trimmed with coyote fur and various shearling products, including earmuffs, gloves, slippers, and boots. (*Id.* ¶¶ 32-33.) Mayfair also operates a website through which it consummates online retail transactions. (*Id.* ¶ 34.) Plaintiff intends to continue to sell these products in its store and online. (*Id.* ¶¶ 31, 34.)

Plaintiff filed the instant lawsuit challenging the legality of the Ordinance on various federal and state law grounds. In its First Amended Complaint ("FAC"), Plaintiff seeks to invalidate the Ordinance based on the following claims: (1) that it is a void, *ultra vires* act under Article IV, § 20(a) of the California Constitution, which grants the State Legislature exclusive power to regulate fish and wildlife in the State (FAC ¶¶ 36-42); (2) that it is preempted by California's Fish & Game Code (FAC ¶¶ 43-53); (3) that it is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution (FAC ¶¶ 54-63); (4) that it violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution (FAC ¶¶ 54-80); and (5) that it violates 42 U.S.C. § 1983 (FAC ¶¶ 81-87). Defendant now moves to dismiss Plaintiff's FAC in its entirety.

---

[1] A second offense within a twelve-month period is punishable by a $400 penalty, and a third offense is punishable by an $800 penalty (plus administrative fee). (FAC, Ex. 2 (July 2, 2013 Letter to West Hollywood Business Owners from City's Code Compliance Mgr.), at 29; *see* WHMC § 1.08.010(e)-(g).)

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7112-GHK (RZx) | Date | May 5, 2014 |
|---|---|---|---|
| Title | *Mayfair House, Inc. v. City of West Hollywood* | | |

## II.    Legal Standard

To survive dismissal for failure to state a claim, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Although we must accept the allegations of the complaint as true and construe them in the light most favorable to the plaintiff, we need not accept as true legal conclusions "cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## III.    Discussion

### A.  Due Process Claim

Plaintiff brings a facial due process challenge to the Ordinance on the grounds that it is unconstitutionally vague. Plaintiff challenges the following terms as impermissibly vague: (1) "fur"; (2) "wearing apparel"; (3) "second-hand store"; and (4) "private party."[2] Plaintiff also contends that the Ordinance is unconstitutionally vague because it does not reasonably inform people to what extent it applies to internet transactions.

A statute may be void for vagueness if (1) "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S 703, 732 (2000). "Outside the First Amendment context, a plaintiff alleging facial vagueness must show that 'the enactment is impermissibly vague in all its applications.'" *Humanitarian Law Project v. U.S. Treasury Dept.*, 578 F.3d 1133, 1146 (9th Cir. 2009) (quoting *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003)); *see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). "[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hill*, 530 U.S. at 733 (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)). Moreover, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates*, 455 U.S. at 495. Thus, "if the [ordinance] is constitutional as applied to the individual asserting the challenge, the [ordinance] is facially valid." *United States v. Dang*, 488 F.3d 1135, 1141 (9th Cir. 2007).

---

[2] Plaintiff challenges the term "private party" for the first time in its Opposition. Defendant contends that this term should not be evaluated because a motion to dismiss must be evaluated solely on the face of the complaint. (Reply 12.) Because Defendant had the opportunity to address Plaintiff's arguments as to "private party" in its Reply, and because we determine it is not impermissibly vague, we address it in this Order.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7112-GHK (RZx) | Date | May 5, 2014 |
|---|---|---|---|
| Title | *Mayfair House, Inc. v. City of West Hollywood* | | |

"The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." *Hoffman Estates*, 455 U.S. at 498. An economic regulation, like the Ordinance at issue here, "is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Id.* Laws with civil penalties are also scrutinized less stringently than laws with criminal penalties.[3] *Id.* at 498-99. Moreover, in evaluating a facial challenge to a law, we must consider any limiting construction or administrative guidance that the enforcement agency has proffered. *Id.* at 498 n.5; *Grayned*, 408 U.S. at 110; *Ward v. Rock Against Racism*, 491 U.S. 781, 795-96 (1989). "Whether a[n] ordinance is unconstitutionally vague is a question of law," *United States v. Erickson*, 75 F. 3d 470, 475 (9th Cir. 1996), that may be resolved on a motion to dismiss. *See Vivid Entm't, LLC v. Fielding*, 965 F. Supp. 2d 1113, 1132 (C.D. Cal. 2013) (resolving void for vagueness claim on a motion to dismiss); *Porto v. City of Newport Beach*, 2011 WL 2470128, at *7-10 (C.D. Cal. May 20, 2011), *aff'd*, 509 F. App'x 665 (9th Cir. 2013) (same); *Nickerson v. Portland Police Bureau*, 2008 WL 4449874, at *4-5 (D. Or. Sept. 30, 2008) (same).

### 1. "Fur"

Plaintiff first argues that the term "fur" is vague because it is unclear whether shearling is covered by the Ordinance's definition. The Ordinance defines "fur" as "any animal skin or part thereof with hair, fleece or fur fibers attached thereto, either in its raw or processed state, but . . . not . . . such skins as are to be converted into leather or which in processing shall have the hair, fleece, or fur fiber completely removed." (WHMC § 9.51.020(a)(1).) By its definition, shearling is included within the Ordinance's proscription of "fur." Shearling is defined as "skin from a recently sheared sheep or lamb that has been tanned and dressed with the wool left on."[4] Accordingly, shearling is "animal skin . . . with hair, fleece, or fur fibers attached." In its Opposition, Plaintiff argues that the Ordinance's definition of "fur" is confusing because animal skin that has been tanned and dressed is the "very definition of leather," and thus "shearling" should fall into the exemption. (Opp'n 20.) This argument is disingenuous. Shearling products affected by the Ordinance, like those sold by Plaintiff, are clearly in their final state and will not be "converted into leather." Moreover, any alleged ambiguity was resolved by the City months before the Ordinance went into effect, when the City sent a letter to business owners that stated that "the ban applies to shearling products, as the skin for such products is tanned with the wool still attached." (FAC, Ex. 2 at 28.) Thus, the term "fur" is not unconstitutionally vague. The

---

[3] Plaintiff argues that the Ordinance should be held to the "enhanced clarity" standard applicable to criminal statutes because it imposes criminal sanctions. (Opp'n 17.) As Defendant argues, however, misdemeanor penalties are only possible after the Ordinance is violated four or more times in a 12-month period. (Reply 12.) Therefore, people who unknowingly violate the Ordinance would only be subject to administrative fines, not criminal sanctions. Accordingly, the policy reasons behind the enhanced clarity standard do not apply.

[4] All definitions for terms that are not defined in the Ordinance are from http://merriam-webster.com/.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7112-GHK (RZx) | Date | May 5, 2014 |
|---|---|---|---|
| Title | *Mayfair House, Inc. v. City of West Hollywood* | | |

Ordinance gives fair notice to people of ordinary intelligence as to what is and is not included in the definition of "fur."[5]

### 2. "Wearing Apparel"

Second, Plaintiff argues that the Ordinance does not reasonably inform a person what is meant by the term "wearing apparel" within the Ordinance's definition of "fur product." The Ordinance defines "wearing apparel" as "any articles of clothing or covering for any part of the body." (WHMC § 9.51.020(a)(6).) Here, the term "wearing apparel" is sufficiently clear in the vast majority of applications and it is not likely that people of ordinary intelligence would be confused about what the term encompasses. *See, e.g.*, *McGowan v. State of Md.*, 366 U.S. 420, 428 (1961). Moreover, the City's interpretive guidance provided to retailers clarifies what is and is not included in the definition of "wearing apparel."

In its FAC, Plaintiff argues that the term "wearing apparel" is vague because it is unclear whether it covers "blankets with sleeves" (FAC ¶ 58), and in its Opposition Plaintiff argues that it is unclear whether it covers "earmuffs," (Opp'n 19). Speculation about possible vagueness in hypothetical situations, like Plaintiff's example, does not render the Ordinance facially invalid. *See Hill*, 530 U.S. at 733. Even if such hypotheticals were enough to bring the clarity of the term into doubt, however, months before the Ordinance went into effect, the City clarified that while a standard blanket would not constitute "wearing apparel" a sleeved blanket would because it is "designed to be worn." (FAC, Ex. 3, at 31.) While the City did not address whether "earmuffs" constitutes "wearing apparel" the definition of "earmuffs" leaves little doubt. "Earmuffs" are defined as "a pair of ear coverings connected by a flexible band and worn as protection against cold or noises." Thus, by definition, it is a "covering for a[] part of the body," and falls within the definition of "wearing apparel." Accordingly, the term "wearing apparel" is not unconstitutionally vague.[6]

---

[5] The Humane Society, in its amicus brief, and Defendant, in its Reply, also argue that the term "fur" is not vague because it tracks the definition of fur under the Federal Fur Products Labeling Act ("FPLA"), and shearling is considered fur under the FPLA. (*See* Humane Society Amicus Brief at 13; Reply at 14.) As a retailer who sells shearling, Plaintiff is subject to the labeling requirement of the FPLA. Accordingly, Plaintiff and other retailers subject to the Ordinance would be on notice that shearling is covered under the definition of "fur."

[6] Plaintiff also submitted a Notice of Recent U.S. Supreme Court Decision, in which it asserted that the Supreme Court's recent decision in *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870 (2014), underscores its argument that the term "wearing apparel" is unconstitutionally vague. Specifically, Plaintiff argues that "[i]f the meaning of 'clothes' needs resolution by the Supreme Court due to varying potential interpretations," then the term "articles of clothing" within the Ordinance's definition of "wearing apparel" is also, on its face, "subject to different constructions and needs definitive meaning." (Notice 2.) Plaintiff's reliance on *Sandifer*, however, is misplaced.

In *Sandifer*, the Court considered the meaning of the phrase "changing clothes" in the FLSA. In

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7112-GHK (RZx) | Date | May 5, 2014 |
|---|---|---|---|
| Title | *Mayfair House, Inc. v. City of West Hollywood* | | |

### 3. "Second-Hand Store" and "Private Party"

Third, Plaintiff argues that the terms "second-hand store" and "private party" are unconstitutionally vague because they are not defined in the Ordinance or in the materials the City sent to businesses. Plaintiff's challenge to these terms likewise fails. When statutory terms are undefined, they are given their "ordinary and natural meaning." *Castro v. Terhune*, 712 F.3d 1304, 1312 (9th Cir. 2013). To determine the ordinary meaning of a term, courts employ "general usage dictionaries." *Id.* Webster defines "second-hand store" as a store that "deal[s] in secondhand merchandise." "Second-hand" is further defined as "having a previous owner" or "buying or selling things that have already been owned or used." "Private" is defined as "for the use of a single person or group," "not public," and "not relating to a person's official position or job." Both "second-hand store" and "private party" are common, easily-defined words such that people of ordinary intelligence would understand whether or not the exemption applies to them. Accordingly, they are not unconstitutionally vague.

### 4. Internet Transactions

Finally, Plaintiff argues that the Ordinance is vague to the extent it applies to internet transactions. (FAC ¶ 60.) First, the plain language of the Ordinance provides sufficient clarity as to its application to internet transactions. The Ordinance bans the sale, import, export, trade, or distribution of fur products "by any means anywhere within the City." (WHMC § 9.51.020(b).) Thus, any transactions, whether online or in a retail store, are treated the same so long as they take place within the City. Moreover, Defendant contends that the clarifications it provided business owners have resolved any ambiguities that may have existed about how the Ordinance affects online sales of fur products. (Mot. 21; FAC, Ex. 2 at 28 ("Businesses located within West Hollywood are prohibited from selling fur apparel online and shipping from a West Hollywood location."); Ex. 3 at 32-33 ("[A] retailer who ships a fur product from a location in the City would be in violation of the ordinance [, but] . . . if the fur product was shipped by a distributor from a location outside the City to the City, the ordinance would not apply to the distributor, since the distributor is outside of the City.").

In its Opposition, Plaintiff gives a new hypothetical, arguing that it is unclear whether the Ordinance applies if "a person outside the City consummates an online transaction with a local store located in the City to purchase a fur clothing product, which is shipped from a site outside the City to the customer." (Opp'n 20.) Based on the City's own interpretation, it appears that this hypothetical would fall outside the scope of the ban because the product is being shipped from outside the City.

---

interpreting the term "clothes," the Court rejected the argument that some specialized definition of "clothes" should apply in that context, and instead applied the "ordinary meaning" of the term based on a dictionary from the era of the FLSA's enactment. *Id.* at 877. Although not in the context of a vagueness challenge, the Court rejected petitioners' argument that the definition of "clothes" is "so vast as to capture all manner of marginal things—from bandoliers to barrettes to bandages." *Id.* at 878. Moreover, the Court rejected the interpretation of some circuit courts that "'clothes' means essentially anything worn on the body." *Id.* Rather, the Court noted that many accessories and tools are not "designed and used to cover the body," and that its definition allowed for such distinctions. *Id.* Thus, if anything, the Supreme Court merely said that the term clothes is susceptible to a common meaning.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7112-GHK (RZx) | Date | May 5, 2014 |
|---|---|---|---|
| Title | *Mayfair House, Inc. v. City of West Hollywood* | | |

However, we need not consider this hypothetical to determine the facial validity of the Ordinance. As the Supreme Court has noted, "[i]t will always be true that the fertile legal 'imagination can conjure up hypothetical cases in which the meaning of [disputed] terms will be in nice question.'" *Grayned*, 408 U.S. at 110, n.15. A person of ordinary intelligence would be able to determine how to conform his or her conduct to the Ordinance in the vast majority of contexts. Accordingly, Plaintiff has failed to assert a valid facial challenge to the Ordinance.

Plaintiff's void for vagueness claim is **DISMISSED with prejudice**.[7] The Ordinance is not unconstitutionally vague on its face because people of ordinary intelligence can understand what it prohibits, it does not invite arbitrary and discriminatory enforcement, and Plaintiff's conduct is clearly prohibited by the Ordinance.

### B. Equal Protection Claim

Plaintiff claims that the Ordinance violates the Equal Protection Clause because it unfairly targets clothing retailers like Mayfair. Specifically, Plaintiff argues that the Ordinance arbitrarily distinguishes between (1) used fur wearing apparel sold by "second-hand stores" and private parties on the one hand and retailers like Mayfair; (2) for-profit and nonprofit entities; and (3) sellers of "wearing apparel" and sellers of other fur products, like handbags, furniture, and home goods. (FAC ¶¶ 64-80.) Plaintiff further claims that the real motivation of the Ordinance is to protect discrete groups from economic competition and maintain the City's tax revenue from the Pacific Design Center and charity auctions. (*Id.* ¶¶ 71, 75-78.)

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985.) Plaintiff concedes that the Ordinance does not regulate fundamental rights or target suspect classes. (FAC ¶ 66.) Its equal protection challenge is therefore subject to rational basis review. *See RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004). Under this standard, we "must determine whether there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (quoting *FCC v. Beach Commnc'ns, Inc.*, 508 U.S. 303, 313 (1993)). An ordinance survives rational basis review so long as the relationship between a classification and "an asserted goal is [not] so attenuated to render the distinction arbitrary or irrational." *Cleburne*, 473 U.S. at 446.

In making this determination, we "need not determine the actual motive of the City Council in passing the Ordinance or engage in fact-finding with regard to the rationality of conceivable motives." *Fortuna Enters., L.P. v. City of Los Angeles*, 673 F. Supp. 2d 1000, 1013 (C.D. Cal. 2008); *see also*

---

[7] For the first time in its Opposition, Plaintiff also asserts an as-applied challenge to the Ordinance because it has since received a notice of violation. (Opp'n 21, Ex. 1.) In the FAC, Plaintiff alleges that it sells parkas trimmed with coyote fur, and shearling boots, earmuffs, gloves, and slippers. (FAC ¶¶ 31-33.) In light of the fact that we already found that the Ordinance is not unconstitutionally vague as to the products that Plaintiff sells, leave to amend would be futile.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7112-GHK (RZx) | Date | May 5, 2014 |
|---|---|---|---|
| Title | *Mayfair House, Inc. v. City of West Hollywood* | | |

*Beach Commnc'ns*, 508 U.S. at 315 ("Legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."). "Where there are 'plausible reasons' for legislative action, 'our inquiry is at an end.'" *RUI*, 371 F.3d at 1154 (quoting *Beach Commnc'ns*, 508 U.S. at 313-14). "We are not bound by the parties' arguments as to what legitimate state interests the classification seeks to further." *Teigen v. Renfrow*, 511 F.3d 1072, 1084 (10th Cir. 2007) (internal quotations omitted); *see also Gilmore v. Cnty. of Douglas*, 406 F.3d 936, 940 (8th Cir. 2005) ("[T]he district court was within its discretion to formulate a conceivable rational basis in this case."). Rather, we "must independently consider whether there is any conceivable rational basis for the classification, regardless of whether the reason ultimately relied on is provided by the parties or the court." *Teigen*, 511 F.3d at 1084. "In the context of a motion to dismiss under 12(b)(6), [we] accept[] all of the allegations in the complaint as true and the consider these 'facts' according to the deferential rational basis standard." *Id.* at 1083. To survive a motion to dismiss, a plaintiff must negate "any reasonably conceivable state of facts that could provide a rational basis for the challenged classification." *Bd. of Tr. of Univ. Of Alabama v. Garrett*, 531 U.S. 356, 367 (2001) (internal quotations omitted); *see Aleman v. Glickman*, 217 F.3d 1191, 1200-04 (9th Cir. 2000) (affirming district court's 12(b)(6) dismissal of equal protection claim because statutory classification had a rational basis).

When economic regulation is at issue, "the Equal Protection Clause allows States wide latitude." *Cleburne*, 473 U.S. at 440; *see also Beach Commnc'ns*, 508 U.S. at 313. "[A] legislature need not 'strike at all evils at the same time or in the same way.'" *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981) (quoting *Semler v. Oregon State Bd. of Dental Examiners*, 294 U.S. 608, 610 (1935)). "[R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting others." *Beach Commn'cns*, 508 U.S. at 316 (quoting *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955)). Legislatures are "accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude." *Merrifield v. Lockyer,* 547 F.3d 978, 989 (9th Cir. 2008) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)) (emphasis omitted)).

Here, the City Council made explicit findings that "animals that are slaughtered for their fur, whether they are raised on a fur farm or trapped in the wild, endure tremendous suffering." (WHMC § 9.51.010(g).) The City Council made it clear that the purpose of the Ordinance is to "promote community awareness of animal welfare and, in turn, . . . foster a consciousness about the way we live in the world and create a more humane environment in the city." (*Id.* § 9.51.010(k).) It further concluded that "the sale of fur products in the City of West Hollywood [was] inconsistent with the city's goal to be a community that cares about animal welfare and the city's reputation as a Cruelty Free Zone for animals." (*Id.* § 9.51.010(l).) The Ordinance is rationally related to the City's legitimate legislative goal, and Plaintiff's arguments to the contrary are unavailing.

## 1. Used Fur Exemption

First, Plaintiff asserts that it is irrational for the Ordinance to allow second-hand stores, nonprofits, and private parties to sell used fur, and not retailers like Mayfair. Plaintiff lacks standing to

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7112-GHK (RZx) | Date | May 5, 2014 |
|---|---|---|---|
| Title | *Mayfair House, Inc. v. City of West Hollywood* | | |

challenge this exemption because it does not allege that it sells or intends to sell used fur. *See Hightower v. City & Cnty. of S.F.*, 2013 WL 361115, at *10 (N.D. Cal. Jan. 29, 2013) (holding that plaintiffs, who argued that an age exemption for children under five in a public nudity ban violated the equal protection rights of children between five and fourteen, lacked standing to challenge the exemption because no plaintiff was a child between the ages of five and fourteen).[8]

### 2. Nonprofit Exemption

Second, Plaintiff argues that there is no rational basis for the Ordinance's exemption for new fur products sold by nonprofits. This argument also fails. The City states that the Ordinance is intended to "promote community awareness of animal welfare," foster the City's "goal to be a community that cares about animal welfare," and further the City's "reputation as a Cruelty Free Zone for animals." (WHMC § 9.51.010(k)-(m).) This is a legitimate interest, and there is no inconsistency with this interest and the nonprofit exemption.

Plaintiff's FAC makes no allegations that nonprofits are running retail stores that sell new fur products. Rather, Plaintiff contends that nonprofits have held charity fundraisers within West Hollywood at which fur products have been sold. (FAC ¶ 70.) There are many potential legitimate reasons for treating nonprofits differently than for-profit entities. The City may see the retail sale of fur as a more "acute" problem requiring more immediate attention than the sporadic sale of fur at the occasional charity auction. *See Beach Commn'cns*, 508 U.S. at 316. The City could also have rationally determined that it did not want to burden nonprofits with the costs of regulatory compliance given that it is not in the business of selling fur products as is the case with Plaintiff. Moreover, as Defendant argues, it is rational for the City to determine that in the legislative balance the harm caused by the sale of fur is outweighed by the good done by nonprofits. The City might wanted to avoid interfering with fundraisers and the ability of nonprofits to raise money.

Plaintiff's argument that the real reason behind the ban is "economic protectionism" is unpersuasive. In support of this argument, Plaintiff relies on two cases, *Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008) and *Saint Joseph Abby v. Castille*, 712 F.3d 215 (5th Cir. 2013). However, both of these cases are distinguishable. In *Merrifield*, the court declared a California pest control license exemption unconstitutional under the Equal Protection Clause. 547 F.3d at 989-92. The exemption differentiated between non-pesticide pest controllers based on what vertebrate animals they targeted. *Id.* The Court reasoned that the exemption was irrational because those who were most likely to interact with pesticides were those who were exempt from the licensing scheme, while those who were the least likely to interact with pesticides still had to obtain the license. *Id.* at 992. Thus, the license scheme "fail[ed] to meet the relatively easy standard of rational basis review." *Id.* at 991.

---

[8] Defendant appears to misperceive Plaintiff's argument as to why this exemption is unconstitutional as a challenge to the distinction between new and used fur. Plaintiff is not saying that there is no distinction between new and used fur, but rather that there is no rational basis to exclude retailers like Mayfair, which are not second-hand stores, private parties, or nonprofits, from the exemption. We need not reach the rationality of this classification, however, because Plaintiff has no standing to challenge this exemption.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7112-GHK (RZx) | Date | May 5, 2014 |
|----------|----------------------|------|-------------|
| Title | *Mayfair House, Inc. v. City of West Hollywood* | | |

The facts of *St. Joseph* are similarly extreme. In *St. Joseph*, a state board gave funeral homes the exclusive right to sell caskets. 712 F.3d 215 at 217. The state argued that the statute had a rational basis because it was designed to protect consumers. *Id.* The court, however, found that the regulation failed rational basis review because the class exempt from the regulation, the funeral directors, had been preying on consumers by bundling services and marking up casket prices. *Id.* at 225. Thus, the court found that the main purpose behind the statute was to ensure the funeral industry controlled intrastate casket sales and that it had no rational relation to either consumer protection or public health and safety. *Id.* at 223.

Plaintiff's economic protectionism argument does not comport with either *Merrifield* or *St. Joseph*. Unlike in *Merrifield*, in which the exemption was irrational because the pest controllers who were most likely to be exposed to pesticides were exempted from the licensing requirement, here, the exemption is not irrational because it does not exempt those who are most likely to sell fur. Rather, nonprofits are less likely to sell new fur because they are not in the business of regularly selling new fur, while retail businesses like Plaintiff are. *St. Joseph* is also readily distinguishable because Plaintiff does not argue that the exemption is really a farce to allow nonprofits to control the new fur market, and the Ordinance is rationally related to the City's interest in promoting animal welfare. Accordingly, the nonprofit exemption is supported by a rational basis and does not violate Plaintiff's right to equal protection.

### 3. Wearing Apparel Limitation

Finally, Plaintiff argues that there is no rational basis for the ban to apply only to "wearing apparel." This argument is also unpersuasive. Courts routinely reject the argument that the legislature did not go far enough in enacting an ordinance or statute. *See, e.g.*, *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981); *Beach Communc'ns*, 508 U.S. at 316; *RUI*, 371 F.3d at 1154.

The Ninth Circuit's opinion in *RUI* is instructive. In *RUI*, the Ninth Circuit rejected an equal protection challenge to Berkeley's living wage ordinance that targets only employers of a certain size within a certain zone of the city, the Marina. 371 F.3d at 1156. The stated purpose of the ordinance was to serve the public interest "by requiring large Marina employers to pay their employees a living wage because operating a business in the public trust land of the Marina is a privilege," and "the City expends considerable resources in maintaining and promoting the Marina, in turn affording Marina businesses significant financial benefits, a reasonable portion of which should be used to provide employees with appropriate wages and benefits." *Id.* at 1145. The plaintiff argued that the purported reasons for the law were not the real reasons motivating the ordinance, but rather it was motivated by a desire to help unionize hotels in the Marina. *Id.* at 1155. The court rejected these arguments and refused to conduct a more searching review of the legislative motives, finding that it was "entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Id.* (internal quotations omitted). The plaintiff also argued that the ordinance violated the Equal Protection Clause because it imposed the living wage requirement on Marina businesses and not other businesses in the city. *Id.* The court rejected this argument noting that "[s]uch legislative decisions are 'virtually unreviewable, since the legislature must be allowed leeway to approach a

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7112-GHK (RZx) | Date | May 5, 2014 |
|---|---|---|---|
| Title | *Mayfair House, Inc. v. City of West Hollywood* | | |

perceived problem incrementally.'" *Id.* (quoting *Beach Commnc'ns,* 508 U.S. at 316). Thus, it concluded that it was "certainly rational . . . for the City to treat Marina businesses differently from their competitors outside the Marina." *Id.* at 1156.

Similarly, in *Clover Leaf*, the Court upheld a state statute banning plastic nonreturnable milk containers. *Id.* at 461-70. The stated purpose of the ordinance included promoting environmentally superior alternatives and easing the state's solid waste disposal. *Id.* at 465, 469. The plaintiff challenged the statute on the grounds that it irrationally distinguished between plastic and nonplastic nonreturnables. *Id.* at 462-63. The Court denied the plaintiff's challenge relying on its precedent that a legislature may make incremental changes. *Id.* The Court explained that "[t]he Equal Protection Clause does not deny the State of Minnesota the authority to ban one type of milk container conceded to cause environmental problems, merely because another type, already established in the market, is permitted to continue in use." *Id.* at 466. Accordingly, the Court concluded that the statute had a rational basis. *Id.* at 470.

That the City did not choose to completely ban the sale of fur does not interfere with its goal of promoting the humane treatment of animals. As in *RUI* and *Clover Leaf*, the City is free to make incremental change, rather than adopt an entire ban on the sale of fur at once. The City may see fur clothing as a more "acute" problem requiring more immediate attention. *See Beach Commn'cns*, 508 U.S. at 316. Further, it could rationally believe that a broader ban at this time would be more difficult and expensive to enforce. Since the classifications imposed by the Ordinance are supported by a conceivable rational basis, the legislature's actual motive is irrelevant. *See RUI*, 371 F.3d at 1155. It is enough that there is a rational basis for these distinctions. Accordingly, Plaintiff's equal protection claim is **DISMISSED with prejudice.**

### C. Section 1983 Claim

Section 1983 does not provide an independent basis for relief; it merely provides a remedy for other constitutional wrongs. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979). Accordingly, because Plaintiff has not stated a claim for violations of equal protection and due process, its § 1983 claim is **DISMISSED with prejudice.**

### IV.    Conclusion

For the foregoing reasons, Plaintiff's due process, equal protection, and 1983 claims are **DISMISSED with prejudice and without further leave to amend due to futility.** Because all the claims over which we have original jurisdiction have been dismissed, we exercise our discretion to decline supplemental jurisdiction over Plaintiff's state law claims, which are **DISMISSED without prejudice** to their reassertion in state court. *See* 28 U.S.C. § 1367(c)(3).

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-7112-GHK (RZx) | Date | May 5, 2014 |
|---|---|---|---|
| Title | *Mayfair House, Inc. v. City of West Hollywood* | | |

**IT IS SO ORDERED.**

|  | -- | : | -- |
|---|---|---|---|
| Initials of Deputy Clerk | | Bea | |